1  Robert J. Herrington (SBN CA 234417)
   GREENBERG TRAURIG, LLP
2  1840 Century Park East, Suite 1900
   Los Angeles, California 90067
3  Tel.: 310.586.7700; Fax: 310.586.7800
4  herringtonr@gtlaw.com

5  Leanna C. Costantini (SBN CA 294028)
   GREENBERG TRAURIG, LLP
6  3161 Michelson Drive, Suite 1000
   Irvine, California 92612
7  Tel.: 949.732.6500; Fax: 949.732.6501
8  costantinil@gtlaw.com

9  Attorneys for Defendant
   Twin Hill Acquisition Company, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER POOLE, ROBIN ADAMS, MARY BARNES, GLORIA BARNETT, SARA BEITTER, DIANA BENTON, ALLISON BOLLMANN, HOLLY BOOKER, SANDRA BURNELL, CANDY CAHILL, MEGAN CARAWAY, JOANNE CHINO-MALONEY, JANET CONROY, LORI COOCEN, MARGARET COOK, TERRI CRIBBS, MARGUERITE D'AMICO, SHAWN DAVIS, CAMILLE DAYEKH, RITA DIZ, BONNIE DUBBS, ELIZABETH ELLISON, LISSETTE FIGUEROA, NANCY FLEMER, JACQUELINE FRANK, CAROL FREEMAN, MARILYN GONZALEZ, TYUANA GREEN, LORRAINE GROSSI, MARYANNE HALAMA, SANDRA HAYEN, WHITNEY HEDMAN, TERRI HEGWALD, ELIZABETH HENRY, STACEY HENRY, NANCY HUENERGARDT, CASEY HURST, CLAUDIA JACKSON, DEBRA JONES, KATHLEEN KELLY, JAZTON KENNEDY, BENITA KILCREASE, ROSLYN KIRTON, TRACY KOZO, REBECCA LESIEUTRE, TROY LIM, DEBORAH | CASE NO. 4:18-cv-2758<br><br>**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332(d) (CAFA)**<br><br>Complaint filed: September 27, 2017 |

NOTICE OF REMOVAL

| | |
|---|---|
| 1 | MARCANTONIO, MARTHA MASLA, MELISSA MCCULLOUGH, RHONDA |
| 2 | MCELRATH, LISA MENDEZ, CHRISTOPHER MICHAEL, BETH |
| 3 | MILES, SHIRLEY MOK, JULIE MOSTELLER, LAURIE NIEDOMYS, |
| 4 | KIM NIEPOKY, LAURIE NUNEZ, ALICIA OLSON, LINDA OSTROWSKI, |
| 5 | SUZANNE PATTILLO, LINDA PENBERTHY, MEGAN POSET, |
| 6 | ANTOINETTE PRICE, JOAN QUILICO, KAZIA ROBICHAUD, MARIA |
| 7 | RODRIGUEZ, DONNA ROGERS, CATHLEEN RUSK DELRIO, BRENDA |
| 8 | SABBATINO, KLEVIS SATA, VICKI SCHALLER, NANCY SCHNEIDER, |
| 9 | LIRON SHENKAR, TRACEY SILVER-CHARAN, NANCY SIMPSON, |
| 10 | ISABELLE SMITH, PETER SNEDDON, PATRICIA STACK, GRETCHEN |
| 11 | STUDIER, VIRGINIA SUMMERS, BYRON SUTHERLAND, CAROL |
| 12 | TARANTO, APRIL TESTER, CATHERINE ULRICH, MARIE |
| 13 | VALENZUELA, AMALIA VALLE REBAZA, KAREN VARLEY, JUAN |
| 14 | VELEZ, FRANCINE WASKOWICZ, AMANDA WHITEHOUSE-DUCKETT, JONNA WILLIS, PATTI WILSON, ALLISON WOOD, KRISTEN WRIGHT, LUCINDA YAPP, JAYEONG YOO, MICHAEL ZEITZ., |

Plaintiffs,

v.

TWIN HILL ACQUISITION COMPANY, INC., a California corporation; TAILORED BRANDS, INC., a corporation with principal corporate and executive offices in California; AND DOES 1 THROUGH 100;

Defendants.

**PLEASE TAKE NOTICE** that Defendant Twin Hill Acquisition Company, Inc. ("Twin Hill") hereby removes the above-captioned action, *Heather Poole, et al. v. Twin Hill Acquisition Company, Inc., et al.*, No. RG17876798 from the Superior Court of the State of California, County of Alameda to the United States District Court for the Northern District of California, pursuant to the Class Action Fairness Act (CAFA), codified in relevant part at 28 U.S.C. §§ 1332(d), 1446 and 1453. Twin Hill hereby provides a "short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).

## BACKGROUND

1. Plaintiffs commenced this action on September 27, 2017, by filing a Complaint in the Superior Court of California, Alameda County, Case No. RG17876798 (the "Poole Action"). The Poole Action is one of four pending cases initiated by a collective total of 328 plaintiffs in the Superior Court of California, Alameda County (collectively, the "State Court Actions").[1] The operative complaints in each of the State Court Actions involve identical general allegations and claims for relief.[2] The Plaintiffs are American Airlines employees who, in 2016, obtained various new uniform pieces distributed by Twin Hill. Plaintiffs allege they have experienced a "plethora of health problems" as a result of "wearing or being exposed" to the uniforms distributed by Twin Hill. (SAC ¶¶ 10, 13.) Plaintiffs assert three causes of action for (i) strict products liability (*Id.* ¶¶ 19-32), (ii) negligent products liability (*Id.* ¶¶ 33-38), and (iii) negligence (*Id.* ¶¶ 39-45) against Twin Hill and its parent company, Tailored Brands, Inc., in connection with Twin Hill's distribution of the uniforms. Plaintiffs seek to recover compensatory damages, including general damages for their alleged injuries and special damages for past and future medical expenses and lost earnings, as well as punitive damages. (*Id.* ¶¶ 30-32, 36-38, 40-45; Prayer for Relief.)

///

---

[1] The three other cases are *Melodie Agnello, et al., v. Twin Hill, et al.*, No. RG17880635, filed on October 30, 2017 (the "Agnello Action"), *Rosemary Mackonochie, et al. v. Twin Hill, et al.*, No. RG18902720, filed on April 27, 2018 (the "Mackonochie Action"), and *Alexandra Hughes, et al., v. Twin Hill, et al.*, No. RG18902727, filed on April 27, 2018 (the "Hughes Action"). Concurrently with the filing of this Notice of Removal, Twin Hill is filing notices of removals for each action.

[2] The initial Complaint filed in the Poole Action is attached hereto as **Exhibit A**. The First Amended Complaint (FAC) filed on April 10, 2018, and the Second Amended Complaint (SAC) filed on April 27, 2018, are attached hereto as **Exhibits B** and **C**, respectively.

## THIS COURT HAS JURISDICTION UNDER CAFA

2. Under CAFA, an action is removable as a mass action wherein: (i) it involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact (28 U.S.C. §§ 1332(d)(11)(B)(i)); (ii) the aggregate amount in controversy exceeds $5,000,000 and the claims of the individual plaintiffs each exceed the amount of $75,000 (*Id.* §§ 1332(a), (d)(2), (d)(11)(B)(i)); and (iii) any plaintiff is a citizen of a state different from any defendant (*Id.* § 1332(d)(2)(A)).

3. As a preliminary matter, Twin Hill denies that it has any liability to Plaintiffs and denies that Plaintiffs are entitled to recover damages and other relief requested in the Complaint. That said, based on the allegations as pled in the Complaint, which must be taken as true for purposes of removal, and for the reasons set forth below, all requirements of CAFA are satisfied.

### A. Plaintiffs Proposed a Joint Trial of the Claims of 100 or More Persons

4. To qualify as a mass action for CAFA removal, a plaintiff's proposal for a joint trial need not be explicit; "implicit proposals may trigger CAFA's removal jurisdiction." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1048 (9th Cir. 2015); *see Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1225 (9th Cir. 2014). A proposal for a joint trial must be a "voluntary," "affirmative," and "intentional" act "made to a court that can effect the proposed relief." *Briggs*, 796 F.3d at 1048 (internal quotation marks omitted). "Whether Plaintiffs' claims ultimately proceed to a joint trial is irrelevant. It is well settled that 'post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing.'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013).

5. A proposal for a joint trial occurs when 100 or more plaintiffs are named in a single complaint. *See Visendi*, 733 F.3d at 868 (plaintiffs proposed a joint trial when they "filed a single state-court complaint that named well over 100 plaintiffs"); *Ramirez v. Vintage Pharm., LLC*, 852 F.3d 324, 329 (3rd Cir. 2017) ("Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial."); *Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013) ("[P]laintiffs can propose a joint trial . . . by naming 100 or more plaintiffs in a single complaint."); *In re Abbott Labs., Inc.*, 698 F.3d 568, 572 (7th Cir. 2012) ("[O]ne complaint implicitly proposes one trial."); *Koral v. Boeing Co.*, 628

F.3d 945, 947 (7th Cir. 2011) ("[W]here a single complaint joins more than 100 plaintiffs' claims without proposing a joint trial, . . . the assumption would be that a single trial was intended – one complaint, one trial, is the norm." *See also Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 956 n.6 (9th Cir. 2009) (noting that in *Bullard v. Burlington N. Santa Fe Ry. Co.,* 535 F.3d 759 (7th Cir. 2008), "by filing a complaint on behalf of 144 residents injured by the leak, plaintiffs had proposed jointly trying the claims of one hundred or more people, triggering removal under CAFA").

6. The Plaintiffs in the State Court Actions have explicitly and implicitly proposed a joint trial of their claims. The Poole Action was initiated September 27, 2017, as a single action by 99 Plaintiffs. The Agnello Action was initiated on October 30, 2017, by another 99 plaintiffs. Twin Hill filed a demurrer to the original Complaints in the Poole and Agnello Actions on December 11, 2017, which the Court sustained with leave to amend in an Order dated February 20, 2018.

7. On April 10, 2018, Plaintiffs filed a single First Amended Complaint in the Poole Action naming a total of 325 Plaintiffs – including 197 Plaintiffs originally named in the Poole and Agnello Actions, as well as an additional 128 Plaintiffs currently named in the Mackonochie and Hughes Actions. (*See* FAC at 1-4.) The general allegations of the FAC allege identical facts for all 325 Plaintiffs. (*See id.* ¶¶ 1-18.) Plaintiffs' claims for relief in the FAC also allege identical legal theories. (*See id.* ¶¶ 19-45.) Plaintiffs' claim for damages in the FAC's prayer for relief are also alleged in singular language. (*See id.* at 16 ("Plaintiffs pray for judgment against defendants, and each of them, as follows: For the First Cause of Action for Strict Products Liability . . . . For the Second and Third Causes of Action for Negligent Products Liability and Negligence . . . .").) Most notably, the Poole FAC included a single jury request for all of their claims. (*See id.* at 18 ("Plaintiffs hereby demand a jury.").)

8. Since the filing of the FAC, Plaintiffs have reaffirmed their proposal for a joint trial. On April 10, 2018, the Plaintiffs in Poole signed a Joint Case Management Statement in which they explained, "The purpose of Plaintiffs listing the new plaintiffs on the FAC is to avoid filing demurrers, motions to strike, answers, hearings, etc." (Exhibit D at 469.) At a Case Management Conference on April 17, 2018, Plaintiffs' counsel requested that the Court allow them to file another amended complaint – not to renounce their proposal in the FAC for a joint trial – but to have separate case

numbers for groups of less than 99 in an effort to preclude removal jurisdiction under CAFA. (*See id.*) In the Case Management Order, the Court consolidated the Poole and Agnello cases for pre-trial purposes and designated the Poole Action as the lead case. (*Id.* at 476.) The Order also stated that "Plaintiffs will file 2d Amended complaint(s) in Poole, Agnello, and a third case involving new plaintif[]fs, which the court will relate to Poole and shall be subject to the same consolidation order." (*Id.*) On April 27, 2018, Plaintiffs filed a Second Amended Complaint in the Poole Action naming 98 Plaintiffs, a First Amended Complaint (erroneously titled the "Second Amended Complaint") in the Agnello Action naming 99 Plaintiffs, an initial Complaint in the Hughes Action naming 99 Plaintiffs, and an initial Complaint in the Mackonochie Action naming 32 Plaintiffs (the operative Complaints). Plaintiffs' allegations in the operative Complaints are virtually identical to their allegations in the Poole FAC.

9. Accordingly, Plaintiffs have proposed that the State Court Actions, which embrace the monetary relief claims of more than 100 plaintiffs, be tried jointly, and the first requirement of mass action removal is satisfied.

**B.     The Amount in Controversy is Satisfied**

10. To satisfy the amount-in-controversy requirement under CAFA, Defendants need only establish that Plaintiffs' claims exceed the jurisdictional amount by a preponderance of the evidence. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). The amount in controversy includes claims for monetary damages, attorney's fees if recoverable by statute or contract, and punitive damages. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).

11. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Assumptions that are "supported directly by, or reasonably inferred from, the allegations in the complaint" can be made. *Altamirano v. Shaw Indus., Inc.,* No. C–13–0939, 2013 WL 2950600 EMC, at *7 (N.D. Cal. June 14, 2013). *See also Behrazfar v. Unisys Corp.,* 687 F. Supp. 2d 999, 1004 (C.D. Cal.

2009) (finding by a preponderance of evidence that the amount in controversy was met, where calculations were "relatively conservative, made in good faith, and based on evidence whenever possible").

12. Both the individual $75,000 and aggregate $5,000,000 amount in controversy requirements for mass action removal are satisfied. Plaintiffs' first cause of action for strict products liability alleges that the uniforms "contained design and manufacturing defects, . . . which increased the likelihood of a serious injury or death from the chemicals found in the UNIFORMS when the UNIFORMS were being used in a reasonably foreseeable manner" and that Defendants were "aware of the danger of the UNIFORMS and the severity of the risk of injury or death to consumers, bystanders and users of the UNIFORMS." (SAC ¶¶ 22-23.) Plaintiffs allege that they were "injured and hurt in their health, strength and activity, sustaining injuries to their bodies, and shock and injury to their nervous system and person," causing them "great physical, mental and nervous pain and suffering." (*Id.* ¶ 30.) Plaintiffs also allege that their injuries "will result in some permanent disability." (*Id.*) Plaintiffs each seek compensatory damages, including "general damages in excess of Fifty Thousand Dollars ($50,000.00)," as well as past and future "hospital, medical, professional and incidental expenses" and loss of earnings. (*Id.* ¶¶ 31-32; FAC ¶¶ 31-32.) Thus, Plaintiffs' claim for general damages for their first cause of action for strict product liability puts at least **$16,400,000** in controversy ($50,000 x 328 total Plaintiffs).

13. Plaintiffs' strict products liability claims also seek punitive damages, which is also considered in determining the amount in controversy. *Gibson,* 261 F.3d at 945; *Haldiman v. Cont'l Cas. Co.*, 666 Fed. Appx. 612, 613–14 (9th Cir. 2016). It is recognized that punitive damages may not exceed a certain ratio based on the amount of compensatory damages. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 424–426 (2003); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 718 (2009). Courts in the Ninth Circuit have described a 1:1 ratio of punitive damages to compensatory damages as "conservative" for purposes of assessing the amount in controversy requirement. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *see also Guillen v. Kindred Healthcare Operating, Inc.*, No. EDCV1702196JAKFEMX, 2018 WL 1183354, at *5–6 (C.D. Cal. Mar. 7, 2018); *Zapata Fonseca v. Vigo Importing Co.*, No. 16–cv–02055–EJD, 2016 WL 6249006, at *2 (N.D. Cal. Oct. 26, 2016);

*Bayol v. Zipcar, Inc.*, No. 14–cv–02483–THE, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015). Using a "conservative" 1:1 ratio of punitive damages to compensatory damages in controversy, Plaintiffs' claim for punitive damages puts at least an additional **$16,400,000** (or $50,000 per Plaintiff) in controversy ($50,000 compensatory damages x 328 Plaintiffs). Thus, Plaintiffs' claims for compensatory and punitive damages for strict products liability claims alone puts a total of at least **$32,800,000** (or $100,000 per Plaintiff) in controversy ($16,400,000 total compensatory damages + $16,400,000 total punitive damages; or $50,000 individual compensatory damages + $50,000 individual punitive damages).

14. Plaintiffs' second and third causes of action for negligent products liability and negligence further demonstrates that the amount in controversy greatly exceeds CAFA's individual $75,000 and aggregate $5,000,000 amount in controversy requirements. Those claims allege that Defendants breached various alleged duties by "negligently, reckless, and/or careless failing to properly train, supervise and warn their employees, independent contractors and/or other foreseeable users of the risks associated with the use of the UNIFORMS" and by "negligently, recklessly, and/or carelessly altering, removing, modifying and/or replacing component parts of the UNIFORMS . . . thereby rending the UNIFORMS dangerous for use and/or bystanders including Plaintiffs. (SAC ¶¶ 41-42; *see id.* ¶ 35.) Plaintiffs allege that they were "injured and hurt in their health, strength and activity, sustaining injuries to their bodies, and shock and injury to their nervous system and person," causing them "great physical, mental and nervous pain and suffering." (*Id.* ¶¶ 36, 43.) Plaintiffs also allege that their injuries "will result in some permanent disability." (*Id.*) Plaintiffs each seek compensatory damages, including "general damages in excess of Fifty Thousand Dollars ($50,000.00)," as well as past and future "hospital, medical, professional and incidental expenses" and loss of earnings. (*Id.* ¶¶ 31-32, 36-37; *see also* Prayer for Relief.) Thus, Plaintiffs' claim for general damages for their second and third causes of action for negligent products liability and negligence puts at least **$16,400,000** in controversy in ($50,000 x 328 total Plaintiffs).

15. On the face of the Complaint, Plaintiffs' claims put an aggregate total of at least **$49,200,000** (or $150,000 per plaintiff) in controversy ($32,800,000 total damages for strict products liability claims + $ 16,400,000 total damages for negligent products liability and negligence claims; or

| | |
|---|---|
| 1 | $100,000 individual damages for strict products liability claim + $50,000 individual damages for |
| 2 | negligent products liability and negligence claims). |
| 3 | 16. Courts have also readily found that the amount-in-controversy requirement is satisfied, |
| 4 | even if a specific amount is not alleged in the Complaint, where, as here, Plaintiffs allege serious bodily |
| 5 | injuries. *See, e.g.*, *Campbell v. Bridgestone/Firestone, Inc.*, No. CIVF051499FVSDLB, 2006 WL |
| 6 | 707291, at *2 (E.D. Cal. Mar. 17, 2006) (apparent from the complaint that amount in controversy |
| 7 | exceeded $75,000 where plaintiffs (1) asserted strict products liability, negligence, and breach of |
| 8 | warranty claims against multiple defendants for severe injuries and (2) sought compensatory damages |
| 9 | for wage loss, hospital and medical expenses, general damages, and loss of earning capacity); *Bryant v.* |
| 10 | *Apotex, Inc.*, No. 1:12-CV-01377-LJOJLT, 2012 WL 5933042, at *4 (E.D. Cal. Nov. 27, 2012) (finding |
| 11 | amount in controversy was satisfied where plaintiff sought compensatory damages for injuries and |
| 12 | severe pain lasting six months, severe emotional distress, and punitive damages arising out of |
| 13 | administration of certain drugs); *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. |
| 14 | Ill. 2002) ("[C]ourts have routinely held that when plaintiffs allege serious, permanent injuries and |
| 15 | significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages |
| 16 | exceeded the jurisdictional amount"); *Purdiman v. Organon Pharms. USA, Inc.*, No. 2:08-CV-0006- |
| 17 | RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (concluding that the "amount of damages at |
| 18 | issue in this action, including past medical bills, the cost of future medical treatment, pain and suffering, |
| 19 | and lost wages, more likely than not exceed[ed] $75,000" where plaintiff alleged that she sustained |
| 20 | "permanent and debilitating" injuries as a result of using defendants' birth control medical device). |
| 21 | 17. Courts also consider "evidence of jury verdicts in cases involving analogous facts" to |
| 22 | determine the amount in controversy. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. |
| 23 | 2002); *see also Rodriguez v. Home Depot, U.S.A., Inc.*, No. 16-cv-01945-JCS, 2016 U.S. Dist. LEXIS |
| 24 | 94176, at *15-16 (N.D. Cal. July 19, 2016) ("The fact that the cited cases involve distinguishable facts is |
| 25 | not dispositive, as long as the jury verdicts in the cited cases amply demonstrate the potential for large |
| 26 | punitive damage awards in similar types of cases."). Compensatory and punitive damages well in |
| 27 | excess of the jurisdictional amount have been awarded in products liability cases in California, including |
| 28 | in cases involving allegations of exposure to harmful chemicals. *See, e.g.*, *Stewart v. Union Carbide* |

*Corp.*, 190 Cal. App. 4th 23, 27 (2010), disapproved on other grounds in *Webb v. Special Elec. Co., Inc.*, 63 Cal. 4th 167, 188 (2016); *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1207 (2006); *Jones v. John Crane, Inc.*, 132 Cal. App. 4th 990, 997 (2005); *Jose Adolfo Tellez, et al. v. Dow Chemical Company, et al.*, No. BC312852, 2007 WL 4234702 (Cal. Super.); *Grigg vs. Allied Packing and Supply Inc.*, No. RG12629580, 2013 WL 3972725 (Cal. Super.); *Evans vs. A.W. Chesterton Company*, No. BC418867, 2010 WL 2091229 (Cal. Super.).

18. Accordingly, the amount-in-controversy requirement is satisfied.

**C.    There is Minimal Diversity**

19. Diversity under CAFA exists if the citizenship of "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). A corporation is deemed to be a citizen of every state "by which it has been incorporated and . . . where it has its principal place of business." *Id.* § 1332(c)(1).

20. Plaintiffs allege that there are 79 Plaintiffs in the Poole Action (a collective total of 279 Plaintiffs in the State Court Actions) who are currently residents of states or nations other than the state of California. (SAC ¶ 2.) In contrast, Plaintiffs allege that Twin Hill is incorporated in the State of California and doing business in California. (*Id.* ¶ 3.) Accordingly, CAFA's minimal diversity requirement is satisfied.

**ALL OF THE OTHER REQUIREMENTS FOR REMOVAL ARE SATISFIED**

21. Plaintiffs filed and served the FAC in Poole proposing a joint trial of the claims of 100 or more persons on April 10, 2018. (*See* Ex. B.) This removal is timely under 28 U.S.C. § 1446(b)(3) because 30 days or less have passed since Plaintiffs served a copy of an amended pleading from which it could first be ascertained that the case is one which is removable. *See id.* ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.").

22. Venue properly lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 84(a) and 1441(a), because the Poole Action, as well as all the State Court Actions, were filed in Alameda County.

23. Pursuant to 28 U.S.C. § 1446(d), Twin Hill is filing a copy of this Notice of Removal with the clerk of the Superior Court of California, Alameda County and providing written notice of this removal to Plaintiffs by serving Plaintiffs' counsel.

24. In accordance with 28 U.S.C. § 1446(a), copies of all pleadings and orders filed in the Poole Action are attached collectively to this Notice as **Exhibit D**. In addition, the summons and initial complaint, as well as the subsequently filed FAC and SAC are attached separately at **Exhibits A-C**, respectively.

25. For purposes of mass action removal, Tailored Brands, Inc.'s consent to removal is not required. *See* 28 U.S.C. § 1453(b).

26. The undersigned counsel has read the foregoing and signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

WHEREFORE, the Poole Action is hereby removed to this Court from the Superior Court of the State of California, County of Alameda.

DATED: May 10, 2018    GREENBERG TRAURIG, LLP

By    */s/ Robert J. Herrington*
Robert J. Herrington
Leanna C. Costantini
Attorneys for Defendant
Twin Hill Acquisition Company, Inc.