**PROOF OF SERVICE**
(C.C.P. 1013A, 20015.5)

**STATE OF CALIFORNIA**
I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11999 San Vicente Boulevard, Suite 345 Los Angeles, CA 90049.

On **February 5, 2018** I served the foregoing documents described as: **PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING, LLC'S DEMURRER TO PLAINTIFFS' COMPLAINT** on the interested parties in this action.

☒    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐    **BY MAIL**

☐    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY ELECTRONIC MAIL**
To:

☒    **BY FEDERAL EXPRESS**

☐    **BY PERSONAL SERVICE** - I caused to be delivered such envelope by hand per the service list attached.

☐    **BY FACSIMILE** - I faxed a copy of the above-described document to the interested parties as set forth on the attached mailing list.

Executed on **February 5, 2018** at Los Angeles, California.

☒    **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Drue Balaban _____
Name

_Signature_

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
**PROOF OF SERVICE**

**Exhibit D**
**Page 358**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

<u>SERVICE LIST</u>
**HEATHER POOLE, ET AL v. TWIN HILL ACQUISTIION COMPANTY, INC. ET AL**
<u>CASE NO. RG17876798</u>

| | |
|---|---|
| Brian S, Kabateck, Esq.<br>**Kabateck Brown Kellner, LLP**<br>Engine Company No. 28 Building<br>644 South Figueroa Street<br>Los Angeles, CA 90017<br>Tel: (213) 217-5000<br>Fax: (213) 217-5010<br>Email: bsk@kbklawyers.com<br><br>*Co-Counsel for Plaintiffs* | Robert J. Herrington, Esq.<br>**Greenberg Trauring, LLP**<br>1840 Century Park East<br>Suite 1900<br>Los Angeles, CA 90067-2121<br>Tel: (310) 586-7700<br>Fax: (310) 586-7800<br>Email: herringtonr@gtlaw.com<br><br>*Counsel for Twin Hill Acquisition Company,*<br>*Inc. and Tailored Brands Purchasing, LLC* |

20648516

1  **BALABAN & SPIELBERGER, LLP**
   11999 San Vicente Blvd., Suite 345
2  Los Angeles, CA 90049
   Tel: (424) 832-7677
3  Fax: (424) 832-7702
   Daniel K. Balaban, SBN 243652
4  Andrew J. Spielberger, SBN 120231
   Kahren Harutyunyan, SBN 298449
5

6  **KABATECK BROWN KELLNER LLP**
   Engine Company No. 28 Building
7  644 South Figueroa Street,
   Los Angeles, CA 90017
8  Tel: (213) 217-5000
   Fax: (213) 217-5010
9  Brian S, Kabateck, SBN 152054

10

11 Attorneys for <u>Plaintiffs</u>

FILED
ALAMEDA COUNTY

FEB 05 2018

CLERK OF THE SUPERIOR COURT
By _____

12

13                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                      **FOR THE COUNTY OF ALAMEDA**

15

16 HEATHER POOLE, MARIE VALENZUELA,       **Case No.: RG17876798**
   TRACEY SILVER-CHARAN, PATTI WILSON,    **[Related Case No. RG 17880635]**
17 ANTOINETTE PRICE, TYUANA GREEN,
   PATRICIA STACK, BETH MILES,            ASSIGNED FOR ALL PURPOSES TO:
18 MARGUERITE D'AMICO, ELIZABETH          JUDGE BRAD SELIGMAN, DEPT. 23
   ELLISON, BONNIE DUBBS, MARGARET
19 COOK, JOANNE CHINO-MALONEY, DIANA      **PLAINTIFFS' OPPOSITION TO**
   BENTON, ROBIN ADAMS, VIRGINIA          **DEFENDANTS TWIN HILL ACQUISITION**
20 SUMMERS, TROY LIM, CATHLEEN RUSK       **COMPANY, INC. AND TAILORED BRANDS**
   DELRIO, SHIRLEY MOK, ELIZABETH         **PURCHASING LLC'S NOTICE OF MOTION**
21 HENRY, JAYEONG YOO, LUCINDA YAPP,      **AND MOTION TO STRIKE PUNITIVE**
   ALLISON WOOD, JONNA WILLIS, JUAN       **DAMAGES**
22 VELEZ, KAREN VARLEY, AMALIA VALLE
   REBAZA, CAROL TARANTO, BYRON           Date:  February 20, 2018
23 SUTHERLAND, PETER SNEDDON,             Time:  3:00 p.m.
   ISABELLE SMITH, NANCY SCHNEIDER ,      Dept.: 23
24 VICKI SCHALLER, KLEVIS SATA, BRENDA
   SABBATINO, DONNA ROGERS, MARIA
25 RODRIGUEZ, KAZIA ROBICHAUD, JOAN
   QUILICO, MEGAN POSET, LINDA            Action Filed:  September 27, 2017
26 PENBERTHY, SUZANNE PATTILLO, LINDA
   OSTROWSKI, ALICIA OLSON, LAURIE
27 NUNEZ, KIM NIEPOKY, LAURIE
   NIEDOMYS, JULIE MOSTELLER,
28 CHRISTOPHER MICHAEL, LISA MENDEZ,
   MARTHA MASLA, REBECCA LESIEUTRE,

                                          1

BY FAX

Exhibit D
Page 360

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1  TRACY KOZO, BENITA KILCREASE,
ROSLYN KIRTON, KATHLEEN KELLY,
2  CLAUDIA JACKSON, VICKIE ISAAC, CASEY
HURST, NANCY HUENERGARDT, STACEY
3  HENRY, TERRI HEGWALD, SANDRA
HAYEN, WHITNEY HEDMAN, MARYANNE
4  HALAMA, LORRAINE GROSSI,
JACQUELINE FRANK, CAROL FREEMAN,
5  NANCY FLEMER, LISSETTE FIGUEROA,
RITA DIZ, CAMILLE DAYEKH, TERRI
6  CRIBBS, LORI COOCEN, JANET CONROY,
CANDY CAHILL, HOLLY BOOKER, GLORIA
7  BARNETT, RHONDA MCELRATH,
MICHAEL ZEITZ, DEBRA JONES, MEGAN
8  CARAWAY, AMANDA WHITEHOUSE-
DUCKETT, SANDRA BURNELL, LIRON
9  SHENKAR, MELISSA McCULLOUGH,
MARILYN GONZALEZ, MARY BARNES,
10  KRISTEN WRIGHT, GRETCHEN STUDIER,
SARA BEITTER, APRIL TESTER, FRANCINE
11  WASKOWICZ, ALLISON BOLLMANN,
CATHERINE ULRICH, NANCY SIMPSON,
12  DEBORAH MARCANTONIO, JAZTON
KENNEDY, SHAWN DAVIS.
13
                    Plaintiffs,
14      vs.
15  TWIN HILL ACQUISITION COMPANY, INC.;
16  a California corporation, TAILORED BRANDS
PURCHASING, LLC; DOES 1 THROUGH 100
17
                    Defendant(s).
18

19      PLAINTIFFS oppose defendants TWIN HILL ACQUISITION COMPANY, INC., and

20  TAILORED BRANDS PURCHASING, LLC's ("DEFENDANTS") Motion to Strike Punitive

21  Damages for the following reasons:

22      1.      PLAINTIFFS did plead sufficient facts to support a claim for punitive damages.

23  (Complaint ¶8-12, 20-29)

24      2.      For the purpose of testing the sufficiency of a claim, the motion to strike admits the

25  truth of all material facts properly pled (i.e., all the ultimate facts alleged). *Aubry v. Tri-City Hosp.*

26  *Dist.* (1992) 2 C4th 962, 966-967; *Serrano v. Priest* (1971) 5 C3d 584, 591; *Adelman v. Associated*

27  *Int'l Ins. Co.* (2001) 90 CA4th 352, 359. Thus, no matter how unlikely or improbable, plaintiff's

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING
LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES

**Exhibit D
Page 361**

1  allegations must be accepted as true for the purpose of ruling on the demurrer or motion to strike. *Del*

2  *E. Webb Corp. v Structural Materials Co.* (1981) 123 CA3d 593, 604.

3        3.      Punitive damages may be awarded where a party alleges facts that a defendant acted

4  with "oppression, fraud, or malice." *Code Civ. Proc. § 3294(a).* Code of Civil Procedure section

5  3294 defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship

6  *in conscious disregard of that person's rights*. Code Civ. Proc. § 3294(c)(2). [*emphasis added*]

7  Furthermore, according to California Jury Instructions No. 3945 (CACI 3945), in order to obtain

8  punitive damages against an entity the PLAINTIFFS must show that 1) the conduct constituting

9  malice, oppression, or fraud was *committed by* the officers, directors, or managing agents of the

10  DEFENDANTS, who acted on behalf of the DEFENDANTS; *or* 2) that the conduct constituting

11  malice, oppression, or fraud *was* **authorized by** the officers, directors, or managing agents of the

12  DEFENDANT; *or* 3) that one or more officers, directors, or managing agents of the DEFENDANT

13  *knew of* the conduct constituting malice, oppression, or fraud and adopted or approved that conduct

14  after it occurred. (CACI 3945)

15        4.      PLAINTIFFS have properly and sufficiently pled that; 1) DEFENDANTS' conduct

16  constituted "malice" and "oppression"; *and* 2) that the "malicious" and "oppressive" conduct was

17  committed by the "officers, directors, or managing agents" of the DEFENDANTS; *and* 3) that such

18  "malicious" and "oppressive" conduct was authorized by the "officers, directors, or managing agents"

19  of the DEFENDANTS; *and* 4) that the DEFENDANTS "officers, directors, or managing agents"

20  knew of the "malicious" and "oppressive" conduct and adopted and approved the conduct after it

21  occurred.

22        5.      Specifically, in paragraphs 26 and 27, the PLAINTIFFS have pled that prior to the

23  subject incidents, *the officers, directors, employees and/or managing agents of the DEFENDANTS*

24  *knew* that the uniforms and garments designed, manufactured and distributed by the DEFENDANTS

25  ("UNIFORMS"), were substandard and *extremely dangerous and defective with the likely result of*

26  *serious bodily injury to the users* and consumers of such UNIFORMS, including the PLAINTIFFS.

27  (Complaint ¶26) The officers, directors, employees and/or managing agents of the DEFENDANTS

28

**Exhibit D**
**Page 362**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1  *knew, prior to the distribution* and even prior to the manufacturing of the UNIFORMS, of the

2  availability of *safer, affordable alternative designs and manufacturing processes* for the production,

3  inspection, and distribution of the UNIFORMS, which would have reduced or eliminated the risk of

4  severe injuries to its consumers, users and bystanders, including the PLAINTIFFS. (Complaint ¶26)

5  *Despite this knowledge*, the DEFENDANTS, by and through their officers, directors, employees

6  and/or managing agents, *failed to recall and/or replace* the UNIFORMS, issue safety bulletins to the

7  public, *advise or warn purchasers* or potential users, such as the PLAINTIFFS, by providing

8  warnings of the *severe risk of injury* from use of the UNIFORMS.  (Complaint ¶27) As such the

9  DEFENDANTS, through the decisions of their officers, directors, employees and/or managing agents,

10 *acted in conscious disregard of the rights and safety of consumers, users and/or bystanders*, by

11 failing to utilize available safer alternative materials, designs, adequately warn of the hazards, and/or

12 replace or recall these UNIFORMS, prior to the distribution of the millions of UNIFORMS, garments

13 and accessories to consumers, including but not limited to the PLAINTIFFS. (Complaint ¶27) The

14 DEFENDANTS, through their officers, directors and/or managing agents further authorized and/or

15 ratified the "malicious" and "oppressive" conduct known to have caused serious injuries to

16 consumers, users, and bystanders, including the PLAINTIFFS. (Complaint ¶28)

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28

4

**Exhibit D**
**Page 363**

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    I.    **INTRODUCTION**

3         This case arises out of the DEFENDANTS' design and distribution of the UNIFORMS, which

4    contained design and/or manufacturing defects, without any warnings, and which were capable of

5    causing, and in fact, did cause personal injuries to the users and consumers and bystanders thereof,

6    including the PLAINTIFFS, while used in a manner reasonably foreseeable, thereby rendering the

7    UNIFORMS unsafe and dangerous. After AMERICAN AIRLINES implemented a change of

8    uniforms for its worldwide workforce, including but not limited to flight attendants, pilots, ground

9    crews, maintenance crews and service agents in 2016, the AMERICAN AIRLINES employees using

10   the UNIFORMS began to experience a plethora of health problems, including, but not limited to:

11   dermatological injuries, respiratory injuries, neurologic injuries and allergenic/immunological injuries

12   including, but not limited to, skin rashes, allergenic skin reactions, ear, nose and throat irritation and

13   inflammation, nerve injuries, allergenic and immunological hypersensitivity, auto-immune

14   dysfunction and injuries and numerous other symptoms involving the dermatological, respiratory,

15   neurological and immunological systems.

16        Plaintiffs have alleged that DEFENDANTS were aware of the dangers of their products prior

17   to distributing them to AMERICAN AIRLINES but that, despite said knowledge, acted with a

18   conscious disregard of the safety of consumers by distributing Uniforms which DEFENDANTS knew

19   would cause injury to consumers.  Conscious disregard of the safety of others is a form of oppression

20   which provides a basis for an award of punitive damages.

21   II.    **PROCEDURAL BACKGROUND**

22        The PLAINTIFFS have filed a Complaint for 1) Strict Products Liability, 2) Negligent

23   Products Liability and 3) Negligence ("Complaint"). As part of the Complaint the PLAINTIFFS seeks

24   punitive damages against Defendants (define above) for design, manufacturing, fabricating,

25   distributing, selling, supplying, providing and/or advertising of the UNIFORMS.

26        DEFENDANTS filed the subject MOTION TO STRIKE.

27   //

28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

5

### III.    THE LAW

For the purpose of testing the sufficiency of the claim, the motion to strike admits the truth of all material facts properly pled (i.e., all the ultimate facts alleged). *Aubry v. Tri-City Hosp. Dist.* (1992) 2 C4th 962, 966-967; *Serrano v. Priest* (1971) 5 C3d 584, 591; *Adelman v. Associated Int'l Ins. Co.* (2001) 90 CA4th 352, 359. Thus, no matter how unlikely or improbable, plaintiff's allegations must be accepted as true for the purpose of ruling on the demurrer or motion to strike. *Del E. Webb Corp. v Structural Materials Co.* (1981) 123 CA3d 593, 604. The test is whether the complaint states any valid claim entitling plaintiff to relief. If the essential facts of some valid claim are alleged, the complaint is good against a general demurrer or motion to strike. *Quelimane Co., Inc. v. Stewart Title Guar. Co.* (1998) 19 C4th 26, 38-39, 77 CR2d 709, 715; *Adelman v. Associated Int'l Ins. Co.* (2001) 90 CA4th 352, 359, 108 CR2d 788, 792.

For pleading purposes, a Complaint can be alleged with less factual particularity when the pleading involves matters of which the defendant has superior knowledge. *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531. DEFENDANTS have superior knowledge at this stage in the litigation as to what they actually knew about the dangers of their uniform product. This knowledge issue will be vetted out in discovery. As demonstrated herein however, the operative COMPLAINT herein is sufficient to put Defendants on Notice that the PLAINTIFFS have alleged facts supporting punitive damages claim such that the DEFENDANTS have notice to mount a defense to said claims. Therefore, the MOTION TO STRIKE should be denied.

### IV.    THE STANDARD FOR PUNITIVE DAMAGES.

Punitive damages may be awarded where a party presents evidence that a defendant acted with "oppression, fraud, or malice." Code Civ. Proc. § 3294(a). Code of Civil Procedure section 3294 defines "oppression" as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. Code Civ. Proc. § 3294(c)(2). Furthermore, according to California Jury Instructions in order to obtain punitive damages, plaintiff must show one of the following:

//

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES

Exhibit D
Page 365

1.  That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of the DEFENDANT, who acted on behalf of the DEFENDANTS; [or]

2.  That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of the DEFENDANT; [or]

3.  That one or more officers, directors, or managing agents of the DEFENDANT knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

(CACI 3945)

Plaintiff does not have to prove that Defendant is an agent of pure evil. In interpreting the intent of Section 3294, the California Supreme Court agreed malice can be shown where a defendant has "conscious[ly] disregard[ed] the safety of others," and that punitive damages may be awarded where a plaintiff establishes that "the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Taylor v. Sup. Ct.* (1979) 24 Cal.3d 890, 895-96 (citing *G.D. Searle & Co. v. Sup. Ct.* (1975) 49 Cal.App.3d 22, 32) (emphasis added). See also *Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 329.

Under the statute, malice does not require actual intent to harm. Conscious disregard for the safety of another may be sufficient where the defendant is aware of the probable dangerous consequences of his or her conduct and he or she willfully fails to avoid such consequences. Malice may be proved either expressly through direct evidence or by implication through indirect evidence from which the jury draws inferences. *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1228.

While it is true that at trial plaintiffs have the burden of proving punitive damages with "clear and convincing evidence," (CACI Jury Instruction 3948), as the California Supreme Court explained, the issue of whether clear and convincing evidence exists to support a claim is normally a *question of fact*. *Crail v. Blakely* (1973) 8 Cal.3d 744, 750 (emphasis added). The instruction for clear and convincing evidence is found in CACI 201. It reads, "Certain facts must be proved by clear and

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING
LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES

Exhibit D
Page 366

1  convincing evidence, which is a higher burden of proof. This means the party must persuade you [at

2  trial] that it is highly probable that the fact is true." CACI 201

3       The PLAINTIFFS herein have properly and sufficiently pled that DEFENDANTS, by and

4  through their officers, directors, employees and/or managing agents, designed, tested, manufactured,

5  and distributed the UNIFORMS.  (Complaint ¶22) The UNIFORMS, contained design and

6  manufacturing defects, which increased the likelihood of a serious injury or death from the chemicals

7  found in the UNIFORMS. *Id.* The DEFENDANTS knew of the presence of toxic materials in the

8  UNIFORMS. (Complaint ¶11)

9       The PLAINTIFFS and others wearing these UNIFORMS and/or or exposed to them have

10 experienced a plethora of health problems, including, but not limited to: dermatological injury,

11 respiratory injury, neurologic injury and allergenic/immunological injuries including, but not limited

12 to, skin rashes, allergenic skin reactions, ear, nose and throat irritation and inflammation, nerve

13 injuries, allergenic and immunological hypersensitivity, auto-immune dysfunction and injuries and

14 numerous other symptoms involving the dermatological, respiratory, neurological and immunological

15 systems. (Complaint ¶10)

16      The PLAINTIFFS have pled that prior to the subject incidents, the officers, directors,

17 employees and/or managing agents of the DEFENDANTS knew that the uniforms and garments

18 designed, manufactured and distributed by the DEFENDANTS ("UNIFORMS"), were substandard

19 and extremely dangerous and defective with the likely result of serious bodily injury to the users and

20 consumers of such UNIFORMS, including the PLAINTIFFS.  (Complaint ¶26) The officers,

21 directors, employees and/or managing agents of the DEFENDANTS knew, prior to the distribution

22 and even prior to the manufacturing of the UNIFORMS, of the availability of safer, affordable

23 alternative designs and manufacturing processes for the production, inspection, and distribution of the

24 UNIFORMS, which would have reduced or eliminated the risk of severe injuries to its consumers,

25 users and bystanders, including the PLAINTIFFS. (Complaint ¶26) Despite this knowledge, the

26 DEFENDANTS, by and through their officers, directors, employees and/or managing agents, failed to

27 recall and/or replace the UNIFORMS, issue safety bulletins to the public, advise or warn purchasers

28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING
LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES

**Exhibit D**
**Page 367**

1   or potential users, such as the PLAINTIFFS, by providing warnings of the severe risk of injury from

2   use of the UNIFORMS.  (Complaint ¶27) As such the DEFENDANTS, through the decisions of their

3   officers, directors, employees and/or managing agents, acted in conscious disregard of the rights and

4   safety of consumers, users and/or bystanders, by failing to utilize available safer alternative materials,

5   designs, adequately warn of the hazards, and/or replace or recall these UNIFORMS, prior to the

6   distribution of the millions of UNIFORMS, garments and accessories to consumers, including but not

7   limited to the PLAINTIFFS. (Complaint ¶27) The DEFENDANTS, through their officers, directors

8   and/or managing agents further authorized and/or ratified the "malicious" and "oppressive" conduct

9   known to have caused serious injuries to consumers, users, and bystanders, including the

10  PLAINTIFFS. (Complaint ¶28)

11          Finally, the COMPLAINT does not allege that DEFENDANTS' acts, omissions,

12  authorization, ratification or approval *may have* caused the PLAINTIFFS' injuries. Nor do the

13  PLAINTIFFS allege DEFENDANTS *may have* known of the dangers associated with the defective

14  and dangerous UNIFORMS designed and manufactured by the DEFENDANTS.  The PLAINTIFFS'

15  Complaint is clear and definitive. The DEFENDANTS engaged in malicious and oppressive conduct,

16  in designing, manufacturing the UNIFORMS with toxic materials and distributing them to the

17  consumers, including the PLAINTIFFS. Furthermore, the COMPLAINT clearly alleges that the

18  DEFENDANTS' officers, directors and/or managing agents knew of the serious dangers associated

19  with the defective UNIFORMS but *in conscious disregard to the health and safety of the others*,

20  distributed the UNIFORMS to the consumers, including the PLAINTIFFS, without issuing warnings,

21  recalls or safety bulletins. As a result of the DEFENDANTS' malicious and oppressive conducts, that

22  of the DEFENDANTS' officers, directors and managing agents, the PLAINTIFFS suffered serious

23  injuries to.

24  **V.      CONCLUSION**

25          For the reasons discussed above the DEFENDANTS' MOTION TO STRIKE should be

26  denied.

27  //

28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1   DATED: February 5, 2018

BALABAN & SPIELBERGER, LLP

Daniel K. Balaban, Esq.
Andrew J. Spielberger, Esq.
Kahren Harutyunyan, Esq.
Attorneys for Plaintiff

PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING
LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES

Exhibit D
Page 369

BALABAN & SPIELBERGER, LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**PROOF OF SERVICE**
(C.C.P. 1013A, 20015.5)

**STATE OF CALIFORNIA**
I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 11999 San Vicente Boulevard, Suite 345 Los Angeles, CA 90049.

On **February 5, 2018** I served the foregoing documents described as: **PLAINTIFFS' OPPOSITION TO DEFENDANTS TWIN HILL ACQUISITION COMPANY, INC. AND TAILORED BRANDS PURCHASING LLC'S NOTICE OF MOTION AND MOTION TO STRIKE PUNITIVE DAMAGES** on the interested parties in this action.

☐     by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐     **BY MAIL**

☐     As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     **BY ELECTRONIC MAIL**
To:

☒     **BY FEDERAL EXPRESS**

☐     **BY PERSONAL SERVICE** - I caused to be delivered such envelope by hand per the service list attached.

☐     **BY FACSIMILE** - I faxed a copy of the above-described document to the interested parties as set forth on the attached mailing list.

Executed on February 5, 2018 at Los Angeles, California.

☒     **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Drue Balaban _____
Name

_____
Signature

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1
PROOF OF SERVICE

**Exhibit D
Page 370**

1
2
3
4

<center>SERVICE LIST<br>
**HEATHER POOLE, ET AL v. TWIN HILL ACQUISTIION COMPANY, INC. ET AL**<br>
<u>CASE NO. RG17876798</u></center>

5

| | |
|---|---|
| Brian S, Kabateck, Esq. | Robert J. Herrington, Esq. |
| **Kabateck Brown Kellner, LLP** | **Greenberg Trauring, LLP** |
| Engine Company No. 28 Building | 1840 Century Park East |
| 644 South Figueroa Street | Suite 1900 |
| Los Angeles, CA 90017 | Los Angeles, CA 90067-2121 |
| Tel: (213) 217-5000 | Tel: (310) 586-7700 |
| Fax: (213) 217-5010 | Fax: (310) 586-7800 |
| Email: bsk@kbklawyers.com | Email: herringtonr@gtlaw.com |
| | |
| *Co-Counsel for Plaintiffs* | *Counsel for Twin Hill Acquisition Company,*<br>*Inc. and Tailored Brands Purchasing, LLC* |

6
7
8
9
10
11

BALABAN & SPIELBERGER LLP<br>
11999 SAN VICENTE BOULEVARD, SUITE 345<br>
LOS ANGELES, CALIFORNIA 90049

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<center>2<br>
PROOF OF SERVICE</center>

20648501

1  **BALABAN & SPIELBERGER, LLP**
   11999 San Vicente Blvd., Suite 345
2  Los Angeles, CA 90049
   Tel: (424) 832-7677
3  Fax: (424) 832-7702
   Daniel K. Balaban, SBN 243652
4  Andrew J. Spielberger, SBN 120231
   Kahren Harutyunyan, SBN 298449
5
6  **KABATECK BROWN KELLNER LLP**
   Engine Company No. 28 Building
7  644 South Figueroa Street,
   Los Angeles, CA 90017
8  Tel: (213) 217-5000
   Fax: (213) 217-5010
9  Brian S, Kabateck, SBN 152054
10
11 Attorneys for <u>Plaintiffs</u>

**FILED**
**ALAMEDA COUNTY**

FEB 0 5 2018

CLERK OF THE SUPERIOR COURT
By Jania Fierro

12
13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
14                      **FOR THE COUNTY OF ALAMEDA**
15

16 HEATHER POOLE, MARIE VALENZUELA,        **Case No.: RG17876798**
   TRACEY SILVER-CHARAN, PATTI WILSON,     **[Related Case No. RG 17880635]**
17 ANTOINETTE PRICE, TYUANA GREEN,
   PATRICIA STACK, BETH MILES,
18 MARGUERITE D'AMICO, ELIZABETH           ASSIGNED FOR ALL PURPOSES TO:
   ELLISON, BONNIE DUBBS, MARGARET         JUDGE BRAD SELIGMAN, DEPT. 23
19 COOK, JOANNE CHINO-MALONEY, DIANA
   BENTON, ROBIN ADAMS, VIRGINIA           **PLAINTIFFS' OBJECTION TO**
20 SUMMERS, TROY LIM, CATHLEEN RUSK        **DEFENDANTS' REQUEST FOR JUDICIAL**
   DELRIO, SHIRLEY MOK, ELIZABETH          **NOTICE IN SUPPORT OF DEFENDANTS**
21 HENRY, JAYEONG YOO, LUCINDA YAPP,       **DEMURRER TO PLAINTIFFS'**
   ALLISON WOOD, JONNA WILLIS, JUAN        **COMPLAINT**
22 VELEZ, KAREN VARLEY, AMALIA VALLE
   REBAZA, CAROL TARANTO, BYRON
23 SUTHERLAND, PETER SNEDDON,              Date:  February 20, 2018
   ISABELLE SMITH, NANCY SCHNEIDER ,       Time:  3:00 p.m.
24 VICKI SCHALLER, KLEVIS SATA, BRENDA     Dept.: 23
25 SABBATINO, DONNA ROGERS, MARIA
   RODRIGUEZ, KAZIA ROBICHAUD, JOAN
26 QUILICO, MEGAN POSET, LINDA             Action Filed:  September 27, 2017
27 PENBERTHY, SUZANNE PATTILLO, LINDA
28 OSTROWSKI, ALICIA OLSON, LAURIE

1

BY FAX

Exhibit A
Page 372

1  NUNEZ, KIM NIEPOKY, LAURIE
   NIEDOMYS, JULIE MOSTELLER,
2  CHRISTOPHER MICHAEL, LISA MENDEZ,
   MARTHA MASLA, REBECCA LESIEUTRE,
3  TRACY KOZO, BENITA KILCREASE,
   ROSLYN KIRTON, KATHLEEN KELLY,
4  CLAUDIA JACKSON, VICKIE ISAAC, CASEY
   HURST, NANCY HUENERGARDT, STACEY
5  HENRY, TERRI HEGWALD, SANDRA
   HAYEN, WHITNEY HEDMAN, MARYANNE
6  HALAMA, LORRAINE GROSSI,
   JACQUELINE FRANK, CAROL FREEMAN,
7  NANCY FLEMER, LISSETTE FIGUEROA,
   RITA DIZ, CAMILLE DAYEKH, TERRI
8  CRIBBS, LORI COOCEN, JANET CONROY,
   CANDY CAHILL, HOLLY BOOKER, GLORIA
9  BARNETT, RHONDA MCELRATH,
   MICHAEL ZEITZ, DEBRA JONES, MEGAN
10 CARAWAY, AMANDA WHITEHOUSE-
   DUCKETT, SANDRA BURNELL, LIRON
11 SHENKAR, MELISSA McCULLOUGH,
   MARILYN GONZALEZ, MARY BARNES,
12 KRISTEN WRIGHT, GRETCHEN STUDIER,
   SARA BEITTER, APRIL TESTER, FRANCINE
13 WASKOWICZ, ALLISON BOLLMANN,
   CATHERINE ULRICH, NANCY SIMPSON,
14 DEBORAH MARCANTONIO, JAZTON
   KENNEDY, SHAWN DAVIS.
15
                    Plaintiffs,
16
          vs.
17
18 TWIN HILL ACQUISITION COMPANY, INC.;
   a California corporation, TAILORED BRANDS
19 PURCHASING, LLC; DOES 1 THROUGH 100
20                  Defendant(s).

21

22

23 **I.   OBJECTION TO REQUEST FOR JUDICIAL NOTICE**

24        Defendants' Request for Judicial Notice of The "Statement of Decision" from the Orange

25 County Superior Court case of *Afont v. Twin Hill Acquisition Company, Inc.*, which was attached as

26 Exhibit A to Defendant's Demurrer, should be denied for the following reasons:

27        1.       The Statement of Decision is ***irrelevant*** to the outcome of the instant Demurrer (which

28 merely seeks to determine if Plaintiffs have adequately pled any cause of action) as the parties are

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS DEMURRER TO
PLAINTIFFS' COMPLAINT
                                        **Exhibit D
                                        Page 373**

1  different and there is no res judicata or collateral estoppel which would apply to the instant action.

2  Plaintiffs case herein involves different plaintiffs, different injuries, different chemicals, different

3  medical general causation literature[1], different medical causation experts and different lawyers

4  presenting different legal theories.  There is *no probative value* from the Statement of Decision in the

5  *Afont* case as applied to the outcome of the instant Demurrer since the outcome of the Demurrer is

6  based on the adequacy of the pleadings in the Complaint—and has nothing to do with the Statement of

7  Decision in the *Afont* matter that has different plaintiffs, different injuries, different chemicals,

8  different medical general causation literature, different medical causation experts and different

9  lawyers presenting different legal theories.

10  **II.  LEGAL ARGUMENT**

11       Judicial notice is a substitute for formal proof. (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548,

12  1566.) As such, the items of which a court must/may take judicial notice are statutorily proscribed.

13  (*See* Evid. Code §§ 451 and 452.) *However, while a court may judicially notice a variety of matters,*

14  *only relevant material is subject to such excused burden, and the court should decline to judicially*

15  *notice material "that has no bearing on the limited legal question at hand."* (*Mangini v. R.J.*

16  *Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 (quoting *People v. Stoll* (1989) 49 Cal.3d 1136,

17  1144, fn. 5)). [*emphasis added*] Judicial notice is a judicial shortcut, a doing away with the formal

18  necessity for evidence because there is no real necessity for it. So far as matters of common

19  knowledge are concerned, it is saying that there is no need of formally offering evidence of those

20

21

22  ─────────────────────

23  [1] As an example, in *Afont*, the Superior Court Judge (Hon. William D. Claster) was provided with a Health Hazard Evaluation (HHE) from the National Institute of Occupational Safety and Health (NIOSH) which could not find any causal connection between the chemicals identified in the Twin Hill Uniforms provided to Alaska Airlines and the injuries suffered by employees of Alaska Airlines.  Yet, NIOSH recently issued an HHE for employees of American Airlines (such

24  as Plaintiffs herein) wherein NIOSH Concluded: "*It is possible that textile chemicals in the uniforms or the physical irritant properties of the uniform fabrics have caused skin symptoms among some American Airlines employees who*

25  *wore the uniforms.  Irritant and allergenic compounds were identified in some uniform garments, which could cause these skin symptoms.*"  Although there is plenty of medical literature that Plaintiff will provide to Defendants and this

26  Court during the discovery and evidentiary phases of this case which easily demonstrates Plaintiffs medical causation claim, the 1/10/18 HHE from NIOSH already gets Plaintiffs "over the General Causation hump" identified by Judge

27  Claster in the *Afont* case. [Defendants and the Court should realize that Plaintiffs experts will not be producing the same medical causation literature as the medical causation experts who testified in the *Afont* case. Different experts-different

28  literature—different causation evidence]

**Exhibit D**
**Page 374**

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1   things because practically everyone knows them in advance and there can be no question about them.

2   (*Varcoe v. Cuyler Lee* (1919) 180 Cal. 338, 33).

3   **III. OBJECTION TO STATEMENT OF DECISION AS IRRELEVANT TO THE**

4       **INSTANT DEMURRER**

5         **1.  STATEMENT OF DECISION FROM *AFONT V. TWIN HILL ACQUISITION***

6            ***COMPANY, INC.* CASE NO. 30-2013-00625538 (CAL. SUPER. CT. JUNE 9, 2016).**

7         Defendants request that the court take judicial notice of STATEMENT OF DECISION FROM

8   *AFONT V. TWIN HILL ACQUISITION COMPANY, INC.* case. However, the decision from another

9   case with different plaintiffs, different injuries, different chemicals, different medical general

10  causation literature, different medical causation experts and different lawyers presenting different

11  legal theories has no relevance to the issues raised by the Demurrer in the instant matter.

12        First, the Complaint outlines the basis for a Demurrer.  *Del E. Webb Corp. v Structural*

13  *Materials Co.* (1981) 123 CA3d 593.

14        Second, the doctrines of res judicata and collateral estoppel do not apply to the *Afont* case and

15  to the instant action. The Court cannot take judicial notice of the Statement of Decision to the

16  Defendants' Demurrer against the Plaintiffs of the current matter. Res judicata and collateral estoppel

17  require three common elements—none of which are present herein: "'(1) A claim or issue raised in the

18  present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding

19  resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being

20  asserted was a party or in privity with a party to the prior proceeding. [Citations.]' [Citation.]" (*People*

21  *v. Barragan* (2004) 32 Cal.4th 236, 253) Collateral estoppel also requires the additional elements that

22  the issue to be precluded was actually litigated and necessarily decided. (*Lucido v. Superior Court*

23  (2000) 51 Cal.3d at p. 341; *Taylor v. Hawkinson* (1957) 47 Cal.2d 893, 895–896, 306 P.2d 797.) The

24  "necessarily decided" requirement generally means only that the resolution of the issue was not

25  "'entirely unnecessary' to the judgment in the initial proceeding." (*Lucido*, supra, at p. 342, 272

26  Cal.Rptr. 767, 795 P.2d 1223.)

27

28

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

#### a. **Different Plaintiffs**

According to the *Afont* decision, *Afont* involved approximately 164 Alaska Airlines employees. None of the Plaintiffs in the instant matter were Alaska Airlines employees. There are *thousands* of American Airlines employees who have been injured by the uniforms manufactured and distributed by the Defendants ("Uniforms"). Out of these thousands of injured people, Plaintiff's counsel currently represents approximately 200 who have filed a Complaint. None of these Plaintiffs were involved in the *Afont* matter and no judicial determination has been made against their claims. Hence, the *Afont* decision has no application or relevance to the issues raised in the present Demurrer.

#### b. **Different Injuries**

Each individual—whether working for Alaska Airlines or American Airlines—has his/her own unique injury. Although the categories of injuries from the *Afont* case may overlap some of the types of injuries suffered by the Plaintiffs herein, the fact is that each person has his/her own medical history and medical condition.

#### c. **Different Chemicals**

The *Afont* decision details four categories of chemicals involved in the *Afont* matter: disperse orange dye 37/76, tributyl phosphate, formaldehyde and certain heavy metals such as cadmium, cobalt and chromium. Whereas in the instant matter the UNIFORMS have been tested by entities hired by TWIN HILL and by American Airlines and the test results show the presence of synthetic materials which contain, at least the following: formaldehyde, pentachlorophenol, monochlorophenols, tetrachlorophenols, trichlorophenols, toluene, cobalt, cadmium, captafol, chromium, copper, nickel, antimony, benzyl benzoate, hexyl cinnamic aldehyde, benzaldehyde.

#### d. **Different Medical Literature and Different Experts**

As indicated above, Plaintiffs will likely not be using any of the experts from the *Afont* matter (Dr. Davit Hewitt, Dr. Angela Harris, Dr. Robert Harrison and Dr. Kathleen Burns) and Plaintiffs certainly will have medical literature supporting their claim (which for reasons unknown to Plaintiffs were not cited by the prior experts for the plaintiffs).

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS DEMURRER TO PLAINTIFFS' COMPLAINT

**Exhibit D**
**Page 376**

IV. <u>CONCLUSION</u>

Plaintiffs request that the Court decline to take judicial notice of the Statement of Decision attached as Exhibit A to Defendants Demurrer and addressed in its Request for Judicial Notice in Support of its Demurrer as the Statement of Decision is irrelevant to the matters at issue in the instant Demurrer.

DATED: February 5, 2018

BALABAN & SPIELBERGER, LLP

Daniel K. Balaban, Esq.
Andrew J. Spielberger, Esq.
Kahren Harutyunyan, Esq.
Attorneys for Plainti

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS DEMURRER TO PLAINTIFFS' COMPLAINT

Exhibit D
Page 377

**PROOF OF SERVICE**
(C.C.P. 1013A, 20015.5)

**STATE OF CALIFORNIA**
I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11999 San Vicente Boulevard, Suite 345 Los Angeles, CA 90049.

On **February 5, 2018** I served the foregoing documents described as: **PLAINTIFFS' OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS DEMURRER TO PLAINTIFFS' COMPLAINT** on the interested parties in this action.

☐      by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐      **BY MAIL**

☐  As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐      **BY ELECTRONIC MAIL**
To:

☒      **BY FEDERAL EXPRESS**

☐      **BY PERSONAL SERVICE** - I caused to be delivered such envelope by hand per the service list attached.

☐      **BY FACSIMILE** - I faxed a copy of the above-described document to the interested parties as set forth on the attached mailing list.

Executed on **February 5, 2018** at Los Angeles, California.

☒      **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Drue Balaban _____          _____
Name                                                              Signature

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

SERVICE LIST
**HEATHER POOLE, ET AL v. TWIN HILL ACQUISTIION COMPANY, INC. ET AL**
CASE NO. RG17876798

Brian S, Kabateck, Esq.
**Kabateck Brown Kellner, LLP**
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010
Email: bsk@kbklawyers.com

*Co-Counsel for Plaintiffs*

Robert J. Herrington, Esq.
**Greenberg Trauring, LLP**
1840 Century Park East
Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700
Fax: (310) 586-7800
Email: herringtonr@gtlaw.com

*Counsel for Twin Hill Acquisition Company,*
*Inc. and Tailored Brands Purchasing, LLC*

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

**Exhibit D**
**Page 379**



20650366

CIV-120

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* 245201 | FOR COURT USE ONLY |
|---|---|

Anastasia K. Mazzella, Kabateck Brown Kellner, LLP
644 S. Figueroa St., Los Angeles, CA 90017
  TELEPHONE NO: 213-217-5000    FAX NO.: 213-217-5010
  E-MAIL ADDRESS: am@kbklawyers.com
  ATTORNEY FOR *(Name)*: Plaintiffs - Heather Poole, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
  STREET ADDRESS: 1225 Fallon St.
  MAILING ADDRESS:
  CITY AND ZIP CODE: Oakland, CA 94612
  BRANCH NAME: Rene C. Davidson

PLAINTIFF/PETITIONER: Heather Poole, et al.

DEFENDANT/RESPONDENT: Twin Hill Acquisition Company, Inc. et al.

**NOTICE OF ENTRY OF DISMISSAL AND PROOF OF SERVICE**
☐ Personal Injury, Property Damage, or Wrongful Death
  ☐ Motor Vehicle  ☐ Other
☐ Family Law
☐ Eminent Domain
☑ Other *(specify):* Mass tort

**FILED**
**ALAMEDA COUNTY**

**FEB 07 2018**

CLERK OF THE SUPERIOR COURT
By_____
_____ Deputy

CASE NUMBER:
RG17876798

**TO ATTORNEYS AND PARTIES WITHOUT ATTORNEYS:** A dismissal was entered in this action by the clerk as shown on the *Request for Dismissal.* (Attach a copy completed by the clerk.)

Date: Feb. 5, 2018

Anastasia K. Mazzella

(TYPE OR PRINT NAME OF  ☑ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)
                                 (SIGNATURE)

**PROOF OF SERVICE**

1. I am over the age of 18 and not a party to this cause. My residence or business address is:

2. ☒ I am a resident of or employed in the county where the mailing occurred. I served a copy of the *Notice of Entry of Dismissal* and *Request for Dismissal* by mailing them, in a sealed envelope with postage fully prepaid, as follows:
  a. ☐ I deposited the envelope with the United States Postal Service.
  b. ☐ I placed the envelope for collection and processing for mailing following this business's ordinary practice with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.
  c. Date of deposit:          d. Place of deposit *(city and state):*
  e. Addressed as follows *(name and address):* *SEE ATTACHED*

3. ☐ I served a copy of the *Notice of Entry of Dismissal and Request for Dismissal* by personally delivering copies as shown below:
  a. Name of person served:
  b. Address at which person served:
  c. On *(date):*          d. At *(time):*

4. ☐ I served a copy of the *Notice of Entry of Dismissal* and *Request for Dismissal* by electronically serving copies as shown below *(complete if electronic service is used based on a court order or agreement of the parties):*
  a. Name of person served:
  b. Electronic service address of person served:
  c. On *(date):*          d. At *(time):*
  e. Electronic service address from which I served the documents:
    ☐ Proof of electronic service is attached.

5. ☐ Proof of service on additional parties is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2-7-18

(TYPE OR PRINT NAME)                                (SIGNATURE OF DECLARANT)    Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CIV-120 [Rev. January 1, 2012]

**NOTICE OF ENTRY OF DISMISSAL
AND PROOF OF SERVICE**

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390
*www.courts.ca.gov*



**BY FAX**
Exhibit D
Page 380

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 245201 | FOR COURT USE ONLY |
|---|---|---|

NAME: Anastasia K. Mazzella
FIRM NAME: Kabateck Brown Kellner, LLP
STREET ADDRESS: 644 South Figueroa St.
CITY: Los Angeles    STATE: CA    ZIP CODE: 90017
TELEPHONE NO.: 213-217-5000    FAX NO.:
E-MAIL ADDRESS: am@kbklawyers.com
ATTORNEY FOR (Name): Plaintiffs - Heather Poole, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
 STREET ADDRESS: 1225 Fallon St.
 MAILING ADDRESS:
 CITY AND ZIP CODE: Oakland, CA 94612
 BRANCH NAME: Rene C. Davidson

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY

FEB 5 2018

CLERK OF THE SUPERIOR COURT
By: ERICA BAKER, Deputy

Plaintiff/Petitioner: Heather Poole, et al.
Defendant/Respondent: Twin Hill Acquisition Company, Inc., et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: RG 17876798 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) ☐ With prejudice    (2) ☒ Without prejudice
   b. (1) ☒ Complaint    (2) ☐ Petition
      (3) ☐ Cross-complaint filed by (name):    on (date):
      (4) ☐ Cross-complaint filed by (name):    on (date):
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other (specify):* Complaint as to defendant Tailored Brands Purchasing, LLC only

2. (Complete in all cases except family law cases.)
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. (This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).

Date: Feb. 5, 2018
Anastasia K. Mazzella
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross Complainant

(To be completed by clerk)
4. ☒ Dismissal entered as requested on (date): FEB 5 2018
5. ☐ Dismissal entered on (date):    as to only (name):
6. ☐ Dismissal not entered as requested for the following reasons (specify):

7. a. ☐ Attorney or party without attorney notified on (date):
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy

Date: FEB 5 2018    Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 (Rev. Jan. 1, 2013)

REQUEST FOR DISMISSAL

Code of Civil Procedure, § 581 et seq.; Gov. Code,
§ 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

Exhibit D
Page 381

CIV-110

| | CASE NUMBER: |
|---|---|
| Plaintiff/Petitioner: Heather Poole, et al. | RG 17876798 |
| Defendant/Respondent: Twin Hill Acquisition Company, Inc., et al. | |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**
If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

**Declaration Concerning Waived Court Fees**

1. The court waived court fees and costs in this action for *(name)*:

2. The person named in item 1 is *(check one below)*:
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action.  *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court  *(check one):*     Yes     No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

► _____

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)    (SIGNATURE)

**Exhibit D
Page 382**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

Heather Poole v. Twin Hill Acquisition Company, Inc. et al

Case No. RG 17876789

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On **February 5, 2018,** I served the foregoing document described as:

**REQUEST FOR DISMISSAL**

on the interested parties in the action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| ATTORNEY | ATTORNEY |
|---|---|
| Leanna Costantini, Esq.<br>Greenberg Traurig, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, CA 92612<br>Tel 949.732.6804<br>costantinil@gtlaw.com<br><br>Robert Herrington, Esq.<br>Greenberg Traurig LLP<br>1840 Century Park E Ste 1900<br>Los Angeles, CA 90067-7700<br>Tel (310) 586-7700<br>herringtonr@gtlaw.com<br>*Attorneys for Defendants* | Andrew J. Spielberger, Esq.<br>Daniel K. Balaban, Esq.<br>Balaban & Spielberger, LLP<br>11999 San Vicente Boulevard, Ste.345<br>Los Angeles, CA 90049<br>Tel: (424) 832-7677<br>andrew@dbaslaw.com<br>daniel@dbaslaw.com<br>*Attorneys for Plaintiffs* |

__  **BY E-MAIL,** I transmitted a true copy of said document(s) by e-mail, and no error was reported.

__X__  **MAIL** I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__  **BY FAX** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **February 5, 2018,** at Los Angeles, California.

_Amalia Najarro_
Amalia Najarro

**PROOF OF SERVICE**

PROOF OF SERVICE

Heather Poole v. Twin Hill Acquisition Company, Inc. et al

Case No. RG 17876789

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is 644 S. Figueroa Street, Los Angeles, California 90017·

On **February 7, 2018,** I served the foregoing document described as:

**NOTICE OF ENTRY OF DISMISSAL**

on the interested parties in the action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| ATTORNEY | ATTORNEY |
|---|---|
| Leanna Costantini, Esq.<br>Greenberg Traurig, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, CA 92612<br>Tel 949.732.6804<br>costantinil@gtlaw.com<br><br>Robert Herrington, Esq.<br>Greenberg Traurig LLP<br>1840 Century Park E Ste 1900<br>Los Angeles, CA 90067-7700<br>Tel (310) 586-7700<br>herringtonr@gtlaw.com<br>*Attorneys for Defendants* | Andrew J. Spielberger, Esq.<br>Daniel K. Balaban, Esq.<br>Balaban & Spielberger, LLP<br>11999 San Vicente Boulevard, Ste.345<br>Los Angeles, CA 90049<br>Tel:  (424) 832-7677<br>andrew@dbaslaw.com<br>daniel@dbaslaw.com<br>*Attorneys for Plaintiffs* |

__    **BY E-MAIL,** I transmitted a true copy of said document(s) by e-mail, and no error was reported.

X    **MAIL** I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__    **BY FAX** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Executed on February 7, 2018, at Los Angeles, California.**

_____
Amalia Najarro

---

PROOF OF SERVICE

20650426

**BALABAN & SPIELBERGER, LLP**
Daniel K. Balaban
Andrew J. Spielberger
Vanessa L. Loftus-Brewer
11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
Tel: (424) 832-7677
Fax: (424) 832-7702

**KABATECK BROWN KELLNER LLP**
Brian S. Kabateck
Anastasia Mazzella
Engine Company No. 28 Building
644 S. Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

*Attorneys for Plaintiffs*

FILED
ALAMEDA COUNTY

FEB 09 2018

CLERK OF THE SUPERIOR COURT
By _____
Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF ALAMEDA**

| | |
|---|---|
| HEATHER POOLE, et al., | CASE NO. RG17876798 |
| Plaintiffs, | ASSIGNED FOR ALL PURPOSES TO: HON. BRAD SELIGMAN, DEPARTMENT 23 |
| v. | **AMENDMENT TO COMPLAINT NAMING DOE 1 (FICTIOUS/INCORRECT NAME); [PROPOSED] ORDER** |
| TWIN HILL ACQUISITION COMPANY, INC.; a California corporation, TAILORED BRANDS PURCHASING, LLC; DOES 1 THROUGH 100, | |
| Defendants. | ACTION FILED: September 27, 2017 |

BY FAX

1

AMENDMENT TO COMPLAINT NAMING DOE 1

Exhibit D
Page 385

1    Upon filing the complaint in this case, plaintiffs Heather Poole, et al., being ignorant of

2  the true name of a defendant and having designated the defendant in the complaint by the

3  fictitious name of **DOE 1**, and having discovered the defendant's true name to be: **TAILORED**

4  **BRANDS, INC.,** amends the complaint by substituting the true name for the fictitious name

5  wherever it appears in the complaint.

6

7  DATED:  February 9, 2018                    KABATECK BROWN KELLNER LLP

8

9                                        By _____

10                                           Anastasia Mazzella
                                              Attorneys for Plaintiffs
11

12

13                              **[PROPOSED] ORDER**

14

15    THE COURT ORDERS the Amendment approved and filed.

16

17

18  DATED: _____        _____

19                                           HON. BRAD SELIGMAN, DEPT. 23

20

21

22

23

24

25

26

27

28

                                           2
                          AMENDMENT TO COMPLAINT NAMING DOE 1

**Exhibit D**
**Page 386**

**PROOF OF SERVICE**
Heather Poole v. Twin Hill Acquisition Company, Inc. et al
Case No. RG 17876789

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On **February 9, 2018,** I served the foregoing document described as:

**AMENDMENT TO COMPLAINT NAMING DOE 1 (FICTIOUS/INCORRECT NAME); [PROPOSED] ORDER**

on the interested parties in the action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| ATTORNEY | ATTORNEY |
|---|---|
| Leanna Costantini, Esq.<br>Greenberg Traurig, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, CA 92612<br>Tel 949.732.6804<br>costantinil@gtlaw.com<br><br>Robert Herrington, Esq.<br>Greenberg Traurig LLP<br>1840 Century Park E Ste 1900<br>Los Angeles, CA 90067-7700<br>Tel (310) 586-7700<br>herringtonr@gtlaw.com<br>*Attorneys for Defendants* | Andrew J. Spielberger, Esq.<br>Daniel K. Balaban, Esq.<br>Balaban & Spielberger, LLP<br>11999 San Vicente Boulevard, Ste.345<br>Los Angeles, CA 90049<br>Tel:  (424) 832-7677<br>andrew@dbaslaw.com<br>daniel@dbaslaw.com<br>*Attorneys for Plaintiffs* |

____   **BY E-MAIL**, I transmitted a true copy of said document(s) by e-mail, and no error was reported.

__X__   **MAIL** I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

____   **BY FAX** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Executed on February 9, 2018, at Los Angeles, California.**

_Amalia Najarro_
Amalia Najarro

**PROOF OF SERVICE**

**Exhibit D**
**Page 387**

*13648516*

Robert J. Herrington (SBN CA 234417)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
herringtonr@gtlaw.com

Leanna C. Costantini (SBN CA 294028)
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
costantinil@gtlaw.com

Attorneys for Defendants
Twin Hill Acquisition Company, Inc.

**FILED**
ALAMEDA COUNTY

FEB - 9 2018

CLERK OF THE SUPERIOR COURT
By _____
Deputy

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| HEATHER POOLE, et al., | CASE NO. RG17876798 |
| Plaintiffs, | ASSIGNED FOR ALL PURPOSES TO: JUDGE SELIGMAN DEPARTMENT 23 |
| v. | |
| TWIN HILL ACQUISITION COMPANY, INC.; a California corporation, TAILORED BRANDS PURCHASING, LLC; DOES 1 THROUGH 100, | **REPLY IN SUPPORT OF MOTION TO STRIKE PUNITIVE DAMAGES** |
| Defendants. | Date:  February 20, 2018 |
| | Time:  3:00 p.m.    **BY FAX** |
| | Dept:  23 |
| | Reservation No.: 1917470 |
| | ACTION FILED:    September 27, 2017 |

## I.    INTRODUCTION

Twin Hill's Motion[1] demonstrated that the request for punitive damages should be stricken for two reasons:

- Plaintiffs do not allege *facts*, as distinguished from conclusions, showing malicious, oppressive, or fraudulent conduct (Motion to Strike ("MTS") at 2-3); and

- the Complaint does not allege *facts* showing that any officer, director or managing agent of Twin Hill engaged in, ratified or knew about any malicious, oppressive, or fraudulent conduct. (MTS at 4-5.)

In response, Plaintiffs argue that they are entitled to rely on the doctrine of "lesser particularity," because Twin Hill supposedly has "superior knowledge" of these issues. (Opp. at 6:12-19.) But the case Plaintiffs cite, *Doe v. City of Los Angeles*, 42 Cal. 4th 531 (2007), held that the plaintiffs could *not* benefit from this doctrine because, as here, they did not allege facts that plausibly lead the plaintiff's to believe their allegations about defendant's knowledge was true. Plaintiffs also point to various allegations in the Complaint that they claim establish a basis for punitive damages. But as shown below, those paragraphs, when read separately or together, are conclusory and equivocal, alleging that unidentified Twin Hill "employees" "should have known" of some unidentified defect. Plaintiffs also ignore all the cases cited by Twin Hill holding that similarly vague allegations do not support a request for punitive damages. *See, e.g., Grieves v. Superior Court*, 157 Cal. App. 3d 159, 168 (1984) (reversing for failure to grant motion to strike punitives); *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1036 (1992) (same).

Plaintiffs also argue that ratification was alleged in the Complaint, but the allegations they point to are also conclusory and equivocal, failing to identify any individual (by name or position) who had knowledge, let alone an officer, director or managing agent. (*See* Opp. 8-9.) And the Complaint in essence admits that any misconduct could have been by a mere employee, rather than an officer, director or managing agent, alleging knowledge by Twin Hill's "officers, directors, *employees* and/or managing agents" (Compl. at 9:9, 9:14, 9:16, 9:24, 10:4 (emphasis added).)

---

[1] The Motion to Strike was filed by Twin Hill and Tailored Brands Purchasing LLC. Plaintiffs recently dismissed Tailored Brands from this lawsuit, so this Reply is filed on behalf of Twin Hill.

1    The Complaint does not allege facts showing malicious, oppressive, or fraudulent conduct or that

2    such conduct was engaged in, ratified, or known by any officer, director or managing agent of Twin Hill.

3    The Motion to Strike should be granted.

4    II.    **ARGUMENT**

5         A.    **The Opposition Confirms Plaintiffs have Not Alleged Malice, Oppression, or Fraud**

6         Twin Hill demonstrated that the punitive damages request should be stricken because Plaintiffs do

7    not allege *facts* showing a basis for this request. (MTS at 2-3.)  In response, Plaintiffs argue that they

8    only have to allege the "ultimate facts" (Opp. at 6:3), and insist that they have alleged enough, referring

9    the Court to paragraphs 10, 11, 22, 26, 27 and 28 of the Complaint.  (Opp. at 8-9.)  But these are all

10   general allegations and conclusions that fall short of providing facts showing that Twin Hill engaged in

11   malice, oppression, or fraud.  *See Pich v. Lightbourne*, 221 Cal. App. 4th 480, 496 (2013) ("[T]he

12   complaint must do more than plead general allegations, contentions, deductions, or conclusions of law.

13   Although the distinction between conclusions of law and ultimate facts 'is not at all clear and involves at

14   most a matter of degree,' the complaint must allege specific and sufficient facts to apprise the defendants

15   of the basis upon which plaintiffs seek relief.").[2]

16        Paragraph 10 alleges only that unidentified people wearing or exposed to Twin Hill's uniforms

17   have complained of a "plethora" of health issues.  Paragraph 11 alleges that Twin Hill and American

18   Airlines conducted unidentified testing of unidentified uniform pieces at some unidentified point in time

19   and found various "synthetic materials."  Paragraph 22 alleges, in conclusory fashion, that Twin Hill

20   designed, tested and distributed the uniforms, and that the uniform contained unspecified "design and/or

21   manufacturing defects."  These conclusory allegations do not provide a factual basis for a strict liability

22   claim, let alone a request for punitive damages.  *See Grieves*, 157 Cal. App. 3d at 166 ("The mere

23   allegation an intentional tort was committed is not sufficient to warrant an award of punitive damages.").

24

---

25   [2] Plaintiffs cite *Taylor v. Superior Court*, 24 Cal. 3d 890, 895-96 (1979), as the standard for "malice"
26   (Opp. at 7:10-15), but ignore that *Taylor* came down before amendments to section 3294, which now
     require "willful" and "despicable" conduct.  *See Lackner v. North*, 135 Cal. App. 4th 1188, 1211 (2006)
27   ("As amended, malice, based upon a conscious disregard of the plaintiff's rights, requires proof that the
     defendant's conduct is 'despicable' and 'willful.' The statute's reference to 'despicable conduct'
28   represents 'a new substantive limitation on punitive damage awards.'").

---

1    Plaintiffs also point to paragraphs 26, 27 and 28 as a basis for their punitive damages request, but

2    these allegations are conclusory and equivocal. They contain no concrete facts and instead attempt to

3    allege "knowledge" and "conscious disregard" by asserting that Twin Hill "knew, *or should have known*"

4    of unidentified defects and hazards. (Compl. at 9:11, 9:14, 10:11 (emphasis added).) "Should have

5    known" is, of course, a negligence standard, which does not support a request for punitives. And

6    equivocal, conclusory allegations like those here do not satisfy the pleading standard. *See Zumbrun v.*

7    *Univ. of S. California*, 25 Cal. App. 3d 1, 8 (1972) ("General and indefinite assertions of liability are not

8    sufficient compliance with the rules of pleading . . . Facts, not conclusions, must be pleaded."); *see also*

9    *Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 872 (1977) ("[T]he second count's conclusory

10    characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient

11    statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294.").[3]

12    **B.    The Doctrine of Lesser Particularity Does Not Help Plaintiffs**

13    Plaintiffs attempt to excuse their failure to plead facts by citing *Doe v. City of Los Angeles*, 42

14    Cal. 4th 531 (2007), and arguing that a Complaint "can be alleged with less factual particularity when the

15    pleading involves matter of which the defendant has superior knowledge." (Opp. at 6:12-13.) But

16    Plaintiffs fail to acknowledge that the Supreme Court's holding in *Doe* severely undercuts their position.

17    The case involved claims based on the defendant's alleged knowledge of prior sexual misconduct by a

18    third party. Although the Supreme Court acknowledged that, in some cases, a lesser pleading standard

19    (the doctrine of "lesser particularity") may allow plaintiffs to plead on information and belief, the Court

20    held that this principle was of no help to plaintiffs. *Id.* at 550-52. Reviewing plaintiff's allegations, the

21    Court concluded that the complaint failed to allege facts that plausibly lead the plaintiff's to believe their

22    allegations about defendant's knowledge was true. *Id.* at 551 ("[P]laintiff should be able to rely on the

23    doctrine of less particularity where he or she can plausibly allege that the nonperpetrator defendant

24    withheld or concealed evidence of its knowledge or notice of the perpetrator's past unlawful sexual

25    conduct with minors"). The Court also emphasized that "boilerplate allegations that defendants knew or

26

27    [3] *See also Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.*, 236 Cal. App. 4th 243, 262

28    (2015) ("[A]n allegation that something 'apparently' happened is speculative on its face. It has no place
     in a pleading, as it is pregnant with the admission that it may not have happened at all.").

4

1  were on notice of" of past unlawful conduct "would not be sufficient nor would allegations of

2  information and belief that merely asserted the facts so alleged without alleging such information that

3  'lead[s] [the plaintiff] to believe that the allegations are true.'" *Id.* at 552 n.5.

4        The same analysis applies here. Plaintiffs assert that Twin Hill supposedly has "superior

5  knowledge at this stage in the litigation as to what they actually knew about the dangers of their uniform

6  product" (Opp. at 6:14-15), but, they do not allege any facts showing why this would be the case and, as

7  in *Doe*, do not allege facts that plausibly lead the plaintiffs to believe their allegations about Twin Hill's

8  knowledge is true. Plaintiffs know what uniform garments they wore. They presumably have tested

9  those garments and know what they contain. And they know what their injuries were, with whom they

10 dealt at Twin Hill, and why they believe Twin Hill supposedly has "superior knowledge" about the as-

11 yet-unidentified "dangers" in the uniform. Plaintiffs do not explain why they failed to offer any of these

12 facts, and thus, as in *Doe*, Plaintiffs' cannot benefit from any "lesser" pleading standard.

13       Plaintiffs also ignore all the decisions Twin Hill cited where courts struck similarly vague

14 punitive damages allegations. In *Smith*, 10 Cal. App. 4th at 1036, for example, the complaint alleged

15 that:

16            [D]efendants . . . misrepresented and fraudulently concealed the true
             nature of the representation being afforded by . . . defendants and that
17            plaintiffs legal interests and rights were being protected, when in fact,
             they were not. The defendants' conduct . . . was intentional, knowing,
18            malicious, fraudulent, false and deceitful. Said acts and omissions were
             undertaken with a conscious and knowing disregard of the interests and
19            rights of plaintiff and to benefit the defendants ... financially, and were
             part and parcel of a scheme and plan to defraud plaintiff. Defendants'
20            conduct . . . was thus such as to constitute oppression, fraud or malice[.]

21 The court held that these allegations were "devoid of any factual assertions supporting a conclusion

22 petitioners acted with oppression, fraud or malice," and that defendant's motion to strike should have

23 been granted. *Id.* at 1042. The same is true here.

24 **C.    Plaintiffs' Opposition Confirms that Plaintiffs Have Not Alleged Ratification**

25       Twin Hill also demonstrated that the punitive damages request should be stricken because

26 Plaintiffs do not allege facts showing that Twin Hill authorized, ratified or had advance knowledge of any

27 malicious or oppressive conduct by an officer, director or managing agent of Twin Hill. (MTS at 4-5.)

28

**Exhibit D
Page 392**

1  Indeed, the Complaint does not identify *any* officer, director or managing agent at all.  In response,

2  Plaintiffs insist that the Complaint "clearly alleges" that Twin Hill's "officers, directors, and/or managing

3  agents" supposedly "knew of the serious dangers associated with the defective" uniforms. (Opp. at 9:19-

4  19.)  Yet Plaintiffs cite nothing to support this assertion.  Nor could they.  As shown, the Complaint is

5  conclusory and equivocal, variously alleging that Twin Hill "knew, or should have known," without

6  identifying any individual (by name or position) who had knowledge, let alone an officer, director or

7  managing agent.  The Complaint also vaguely alleges knowledge by Twin Hill's "officers, directors,

8  *employees* and/or managing agents" (Compl. at 9:9, 9:14, 9:16, 9:24, 10:4 (emphasis added)), in essence

9  admitting that any misconduct could have been by a mere employee, rather than an officer, director or

10 managing agent.  These allegations provide no basis for a punitive damages request, and Twin Hill's

11 Motion should be granted.  *See Grieves*, 157 Cal. App. 3d at 168 ("[W]e fail to see how any of those

12 allegations sets forth facts to show Hospital's advance knowledge, authorization or ratification. Also,

13 absent from the complaint is any assertion an officer, director or managing agent of Hospital was

14 personally responsible for any of the acts allegedly performed by Hospital.").

15 **III.    CONCLUSION**

16        For the foregoing reasons, Twin Hill respectfully requests that Plaintiffs' request for punitive

17 damages be stricken from the Complaint.

18

19 DATED: February 9, 2018                        GREENBERG TRAURIG, LLP

20

21                               By

22                                               Robert J. Herrington
                                                Leanna C. Costantini
23                                              Attorneys for Defendant
                                                Twin Hill Acquisition Company, Inc.
24

25

26

27

28

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE:**

     I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 3161 Michelson Drive, Suite 1000, Irvine, California 92612.

     On February 9, 2018 I served the **REPLY IN SUPPORT OF MOTION TO STRIKE PUNITIVE DAMAGES**, on the interested parties, addressed as follows:

BALABAN & SPIELBERGER, LLP       Attorney for Plaintiffs
Daniel K. Balaban
Andrew J. Spielberger
Vanessa L. Loftus-Brewer
11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
Tel: (424) 832-7677
Fax: (424) 832-7702

KABATECK BROWN KELLNER LLP       Attorneys for Plaintiffs
Brian S. Kabateck
Engine Company No. 28 Building
644 S. Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

☒  **[BY OVERNIGHT COURIER]**  I am readily familiar with the business practice of my place of employment in respect to the collection and processing of times for delivery by overnight courier. The foregoing sealed envelope was placed for collection and overnight delivery by 4:30 p.m. this date consistent with the ordinary business practice of my employment, so that it will be picked up this date with delivery charges fully prepaid at Irvine, California, and delivered the following business day in the ordinary course of business.

☐  **[BY E-MAIL]**  By transmitting via e-mail the document(s) listed above to the addresses set forth below on this date before 5:00 p.m.  This method of service was made pursuant to the agreement of counsel.

☒  **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 9, 2018 at Irvine, California.

Name: Alexis L. Kovacs

PROOF OF SERVICE

**Exhibit D
Page 394**

1   Robert J. Herrington (SBN CA 234417)
    GREENBERG TRAURIG, LLP
2   1840 Century Park East, Suite 1900
    Los Angeles, California 90067-2121
3   Telephone: 310.586.7700
    Facsimile: 310.586.7800
4   herringtonr@gtlaw.com
5
    Leanna C. Costantini (SBN CA 294028)
6   GREENBERG TRAURIG, LLP
    3161 Michelson Drive, Suite 1000
7   Irvine, California 92612
    Telephone: 949.732.6500
8   Facsimile: 949.732.6501
    costantinil@gtlaw.com
9
10  Attorneys for Defendant,
    Twin Hill Acquisition Company, Inc.
11

FILED
ALAMEDA COUNTY

FEB - 9 2018

CLERK OF THE SUPERIOR COURT
By _____ Deputy

12

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                          COUNTY OF ALAMEDA

16  HEATHER POOLE, et al.,                CASE NO. RG17876798

17          Plaintiffs,                   ASSIGNED FOR ALL PURPOSES TO:
                                          JUDGE SELIGMAN
18  v.                                    DEPARTMENT 23

19  TWIN HILL ACQUISITION COMPANY,        **REPLY IN SUPPORT OF DEMURRER TO**
20  INC.; a California corporation, TAILORED   **COMPLAINT**
    BRANDS PURCHASING, LLC; DOES 1
21  THROUGH 100;                          Date:   February 20, 2018
                                          Time:   3:00 p.m.
22          Defendants.                   Dept:   23
                                          Reservation No.: 1917122
23
24                                        ACTION FILED:    September 27, 2017
25
26
27
28
                                                        **BY FAX**

REPLY IN SUPPORT OF DEMURRER TO COMPLAINT

**Exhibit D**
**Page 395**

I.    **INTRODUCTION**

Twin Hill's Demurrer[1] established that the Complaint does not plausibly allege any claim because it fails to include even the most basic facts, including the injuries claimed by each Plaintiff, the condition and composition of the uniform garments each Plaintiff wore, and how those unidentified conditions supposedly caused the injuries claimed. The Opposition confirms that Plaintiffs' claims are conclusory, factually unsupported, and should be dismissed.

Plaintiffs' primary response is to point to generalized allegations about various "synthetic materials" in Twin Hill's "uniforms" and complaints by unidentified "others" about "adverse" health effects. (*See* Opp. at 7-10.) Plaintiffs argue that the "ultimate facts" support an inference of defect, injury, and causation (*Id.* at 2:9-12), but the allegations they point to are all general and conclusory, failing to show that the uniform garments they actually wore contained any injury-causing defect. *See Pich v. Lightbourne*, 221 Cal. App. 4th 480, 496 (2013) ("[T]he complaint must do more than plead general allegations, contentions, deductions, or conclusions of law. Although the distinction between conclusions of law and ultimate facts 'is not at all clear and involves at most a matter of degree,' the complaint must allege specific and sufficient facts to apprise the defendants of the basis upon which plaintiffs seek relief."). Plaintiffs here provide no facts – circumstantial or otherwise – to show that the various substances found in testing of unknown uniform garments were related to their unidentified "adverse health consequences."[2] The Demurrer should be sustained on this ground alone.

[1] The Demurrer was filed by Twin Hill and Tailored Brands Purchasing LLC. Plaintiffs recently dismissed Tailored Brands from this lawsuit, so this Reply is filed on behalf of Twin Hill.

[2] Plaintiffs assert that the Court may only consider the allegations in the Complaint, but then contradict themselves by quoting a recent Health Hazard Evaluation (HHE) of the uniforms conducted by the National Institute of Occupational Safety and Health (NIOSH). (Opp. at 1 n.1.) Plaintiffs, however, fail to attach the HHE and misleadingly quote just one sentence, when the entire report wholly undermines their case. NIOSH concluded that Twin Hill's uniforms were made in accordance with OEKO-TEX 100 Standard, the most stringent garment testing standard anywhere in the world. (*See* Exhibit B attached hereto at 14-16.) The Report also concludes that: "[E]vidence from the extensive garment testing does not identify a single chemical, an individual uniform component, or combinations that were responsible for the constellation of symptoms. The concentrations and types of chemicals were found to vary widely even in different sections of many of the individual uniforms tested, as well as across the multiple new uniform pieces." (*Id.* at 4.) *See also Miranda v. Bomel Const. Co.*, 187 Cal. App. 4th 1326, 1336 (2010) ("There can be many *possible* 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable

**Exhibit D
Page 396**

1    Plaintiffs argue that their generalized causation allegations are sufficient because they are "only

2 required to plead causation succinctly and generally using ultimate facts." (Opp. at 2:5-8.) But that is

3 not the law. The California Supreme Court has held that where, like here, "'the pleaded facts of

4 negligence and injury do not naturally give rise to an inference of causation, the plaintiff must plead

5 *specific facts* affording an inference the one caused the others . . . [and] . . . explaining *how* the conduct

6 caused or contributed to the injury." *Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal. 4th 71, 78 (1999)

7 (emphasis added); *see Berkley v. Dowds*, 152 Cal. App. 4th 518, 528 (2007) (dismissing negligence claim

8 where plaintiff failed to allege facts describing how defendants' alleged negligence caused personal

9 injury). Plaintiffs ignore this standard and provide no facts to show causation, "ultimate" or otherwise.

10 They do not identify what uniform pieces they wore or when, that those garments had the same

11 composition as what "others" wore, what injuries they suffered or when, or even that there was anything

12 wrong with the uniform garments they actually wore or were exposed to. Plaintiffs also fail to identify

13 any standards violated or *any* chemicals present in *their* uniform garments. Plaintiffs know what

14 garments they wore, what their alleged injuries are and when they occurred. And they have all the means

15 available to determine what chemicals, if any, were in their garments, and whether those chemicals relate

16 to their specific injuries. Plaintiffs fail to explain why they have alleged so little given the information

17 available to them, and what they have alleged does not state any claim.

18    Finally, Plaintiffs argue that, because the Complaint alleges that only one Defendant (Twin Hill)

19 supplied the uniforms, the additional pleading requirements set forth in *Bockrath*, 21 Cal. 4th at 79-81,

20 for cases involving alleged exposure to toxic chemicals do not apply. (Opp. at 2:22-3:2.) But this

21 argument misinterprets *Bockrath* and ignores the decision in *Oddone v. Superior Court*, 179 Cal. App.

22 4th 813, 820 (2009), which held that *Bockrath's* additional pleading requirements apply to toxic tort

23 cases, regardless of the number of defendants sued. Plaintiffs do not allege facts to (i) establish exposure

24 to each chemical alleged to have caused a specific illness, (ii) identify each uniform garment that

25 allegedly caused injury; (iii) show that toxins entered the Plaintiffs' bodies; (iv) identify each specific

26 illness allegedly suffered by each Plaintiffs; or (v) establish that each toxin was a substantial factor in

27

28 causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." (emphasis added)).

2

Exhibit D
Page 397

1    bringing about those illnesses.  Plaintiffs' claims therefore fail under *Bockrath* and *Oddone*.  Twin Hill's

2    demurrer should be sustained.

3    II.    **ARGUMENT**

4            Twin Hill demonstrated that the Complaint should be dismissed because Plaintiffs fail to allege

5    facts, as distinguished from conclusions, showing even the most basic elements of their claims, including

6    what uniform garments each wore (the "product"), what those garments supposedly contained (the

7    "breach" or "defect"), what injuries each Plaintiff claims to have suffered (the "injury"), and how the

8    garments caused those injuries ("causation").  (Demurrer at 4-7.)  In response, Plaintiffs cut and paste

9    allegations from the Complaint, adding bold and italics to random words (Opp. at 7-8), but these quotes

10   simply confirm Twin Hill's basic point that Plaintiffs are relying on conclusions, rather than facts.

11           Paragraph 10 of the Complaint alleges that unidentified "people" "have experienced a plethora of

12   health problems," but Plaintiffs do not say what "health problems" *they* suffered, and when or how those

13   unidentified health problems are related to Twin Hill's uniforms.  Plaintiffs quote paragraph 11, which

14   alleges that Twin Hill and American Airlines tested unidentified uniform garments and found "the

15   presence of synthetic materials," but they fail to allege what uniform garments each of them wore or what

16   was in those garments.[3]  Plaintiffs quote paragraph 13, which alleges that "Plaintiffs mentioned herein

17   have experienced adverse health consequences," but they never allege what those "adverse health

18   consequences" were, leaving the Court and Twin Hill to guess.  Plaintiffs also quote paragraphs 15 and

19   20 of the Complaint, which allege that Twin Hill's "uniforms" were "negligently manufactured" and

20   "contained design and/or manufacturing defects," but Plaintiffs never allege how Twin Hill "negligently"

21   manufactured anything or what the "design and/or manufacturing defects" supposedly were.  Plaintiffs

22   know what garments they wore, what those garments contained, and what injuries they are claiming.  But

23   they fail to explain why they did not provide any of these facts. *See* Cal. Civ. Prac. Procedure, Ultimate

24

25   [3] Plaintiffs appear to be operating under the unsupported and unalleged *assumption* that Twin Hill's
     "uniforms" are monolithic, when the NIOSH Report quoted in their Opposition confirms that the
26   uniforms are comprised of numerous different garment pieces, with a variety of different compositions.
     (*See* Ex. B at 4 ("[E]vidence from the extensive garment testing does not identify a single chemical, an
27   individual uniform component, or combinations that were responsible for the constellation of symptoms.
     The concentrations and types of chemicals were found to vary widely even in different section of many
28   of the individual uniforms tested, as well as across the multiple new uniform pieces.").)

**Exhibit D
Page 398**

1    facts, § 7:16 ("The particularity required in pleading facts depends on the extent to which the defendant

2    in fairness needs detailed information that can be conveniently provided by the plaintiff.").[4]

3    ## A.    The Opposition Confirms that the Complaint Does Not Allege any Defect

4           As demonstrated, the Complaint does not allege facts to show that Plaintiffs' garments were

5    defective in any way.  (Demurrer at 4-6.)  Plaintiffs argue that the defect alleged in the Complaint is the

6    presence of "specified chemicals in the uniforms (impurities)."  (Opp. at 3:15-16.)  But the Complaint

7    does not "specify" (or even allege) that *any* of these chemicals were in the garments *Plaintiffs wore*.  Nor

8    do Plaintiffs allege facts showing that the mere presence of chemicals constitutes a defect.  The closest

9    Plaintiffs come is paragraph 12, which alleges that these "chemicals can cause injury to human beings

10   either alone or in combination with each other."  But the same could be said for tap water, or the air in

11   Bay Area, or just about any consumer product.  They all contain "chemicals" that, at some level, may

12   "cause injury to human beings."  But that does not mean that any of these things are "defective."  Rather,

13   Plaintiffs must "affirmatively establish" the defect; "an inference of defect as a result of the accident is

14   not to be drawn."  *Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 565 (1978) (emphasis added); *see*

15   *also Hennigan v. White*, 199 Cal. App. 4th 395, 404 (2011) ("[A]n allergic reaction by itself does not

16   establish a product is defective[.]"); *Minder v. Cielito Lindo Rest.*, 67 Cal. App. 3d 1003, 1008 (1977)

17   ("We do not think that the mere fact that a person eats food in a restaurant, hotel or cafeteria and

18   thereafter becomes ill, is of itself sufficient to establish liability on the owner[.]").[5]  The Complaint

19   alleges no facts showing a defect; the Demurrer should be sustained.

20   _____

21   [4] *See also Dyer v. Northbrook Prop. & Cas. Ins. Co.*, 210 Cal. App. 3d 1540, 1542-43 (1989) (in
     assessing the sufficiency of a pleading, material and issuable facts properly pleaded in the complaint are
22   admitted, but "contentions, deductions or conclusions" are not); *C & H Foods Co. v. Hartford Ins. Co.*,
     163 Cal. App. 3d 1055, 1062 (1984) ("contentions, deductions or conclusions of fact or law alleged in the
23   complaint are not considered in judging its sufficiency" when challenged by demurrer); *see also Pich*,
     221 Cal. App. 4th at 496 ("Although the distinction between conclusions of law and ultimate facts 'is not
24   at all clear and involves at most a matter of degree,' the complaint must allege specific and sufficient
     facts to apprise the defendants of the basis upon which plaintiffs seek relief.").
25
     [5] Plaintiffs appear to concede that California law does not allow them to infer a defect based simply on an
26   alleged allergic reaction.  They nonetheless argue that their claims are proper because "the Complaint
     does not allege that Plaintiffs' injuries were solely caused by an (IGE mediated) allergic response."  (*See*
27   Opp. at 3:17-19.)  But Plaintiffs ignore that they *do not allege their injuries at all*.  Plaintiffs also ignore
     their allegations that unknown "people" have experienced a "plethora of health problems," including
28   allergic reactions.  (Compl. ¶ 10 ("Since the introduction of these UNIFORMS into the workforce, people

                                              4

1   Plaintiffs cite cases finding a defect based on circumstantial evidence, but those cases involved

2   injuries that were directly related to the design at issue and plaintiffs who provided far more in the way of

3   facts. (Opp. at 6.) For example, in *Campbell v. General Motors Corp.*, the plaintiffs alleged that a bus

4   "was defective in design because it lacked a particular safety device [a handrail] that would have

5   prevented the accident." 32 Cal. 3d 112, 120 (1982). The court noted that it was appropriate for the jury

6   to decide the question of whether the lack of a handrail rendered the bus defective because it was

7   undisputed that a handrail – which was *"designed to prevent the very injury that occurred"* – was not

8   present. *Id.* at 121 (emphasis added).

9   Similarly, the issue in *Grinnel v. Charles Pfizer & Co.*, was whether it was proper to infer that a

10  polio vaccine plaintiff ingested just before the plaintiff contracted polio was defective, despite that it was

11  undisputedly "impossible to prove that any individual case [of polio] was caused by vaccine." 274 Cal.

12  App. 2d 424, 436 (1969). The court observed that "it is clearly the law in California that the theory of

13  strict liability in tort is available in cases where the vaccinated individual contracts the disease the

14  vaccine *was designed to protect against."* *Id.* at 433 (emphasis added). There, the facts overwhelming

15  indicated that the vaccine was defective, including that: (i) if a person has polio is caused either by a

16  wild-virus strain or by a vaccine induced strain; (ii) if the vaccine is produced as it should be, it must be

17  free of virulent particles; (iii) testing of polio strains recovered from the plaintiffs did not disclose the

18  presence of a wild-virus strain but identified the infection as "vaccine-like"; (iv) the onset of plaintiff's

19  disease occurred within a month of ingesting the vaccine; and (v) each plaintiff's attending physicians

20  opined that the vaccine was the cause of his disease. *Id.* at 436-437.

21  Here, in contrast, Plaintiffs do not identify *any* safety feature that supposedly was missing from

22  their uniforms or any feature of the uniform garments that was defective. Again, the Complaint does not

23  even identify what garments Plaintiffs wore, what was in those garments, or what their alleged injuries

24  were. Plaintiffs know this information, but instead chose to rely on general allegations of chemicals

25

26  _____

27  wearing these UNIFORMS and/or those exposed to these UNIFORMS have experienced a plethora of
    health problems, including but not limited to: . . . *allergenic*/immunological injuries including, but not
    limited to, . . . *allergenic* skin reactions, . . . *allergenic* and immunological hypersensitivity . . . ."

28  (emphasis added)).)

1  present in unidentified "other" uniforms and injuries by unidentified "people." These allegations do not

2  state a claim.[6]

3        B.    **The Opposition Confirms that the Complaint Does Not Allege Causation**

4            1.    **The Complaint Alleges No Facts from which Causation can be Inferred**

5        Twin Hill also demonstrated that Plaintiffs' claims should be dismissed because they do not

6  allege facts showing how the uniforms garments caused or contributed to Plaintiffs' (unalleged) injuries,

7  as required to state a claim. (Demurrer at 6-7.) In response, Plaintiffs argue that their conclusory

8  allegations are sufficient because "Plaintiffs are only required to plead causation succinctly and generally

9  using ultimate facts." (Opp. at 2.) This argument is contrary to California law. As the California

10 Supreme Court has held, where "'the pleaded facts of negligence and injury do not naturally give rise to

11 an inference of causation, the plaintiff must plead *specific facts* affording an inference the one caused the

12 others.' That is, the plaintiff must allege facts, albeit as succinctly as possible, explaining *how* the

13 conduct caused or contributed to the injury." *Bockrath*, 21 Cal. 4th at 78 (emphasis added); *see Berkley*,

14 152 Cal. App. 4th at 528 (dismissing negligence claim where plaintiff failed to allege facts describing

15 how defendants' alleged negligence caused personal injury).

16       Plaintiffs ignore this standard, relying instead on cases involving ordinary personal injury claims

17 for which "it suffices to plead causation succinctly and generally." (Opp. at 2:5-7 (citing *Rannard v.*

18 *Lockheed Aircraft Corp.*, 26 Cal. 2d 149 (1945) (malpractice claims based on alleged negligent

19 diagnosis, operation, and treatment of medical condition); *Dunn v. Dufficy*, 194 Cal. 383 (1924)

20 (malpractice claims based on alleged negligent diagnosis and treatment of severed tendon).) Plaintiffs

21 also cite *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953 (1997), but that case does not justify

22 Plaintiffs' vague and conclusory allegations either. (Opp. at 2:5:8.) The Court held that a plaintiff "may

23 prove causation in *asbestos-related cancer* cases by demonstrating that the plaintiff's exposure to

24 defendant's asbestos-containing product in reasonable medical probability was a substantial factor in

---

25 [6] Plaintiffs also cite *Dimond v. Caterpillar Tractor Co.* (Opp. at 6:20-7:1.), but that case is irrelevant to
26 whether the Complaint sufficiently alleges a defect because the plaintiffs in that case "made out a prima
   facie case on that element and defendants d[id] not contend otherwise. Their sole contention is that the
27 nonsuit was properly granted because under the evidence the question whether the claimed defect was a
   proximate cause of plaintiff's injury was too speculative and conjectural to entitle plaintiff to go to the
28 jury." *Dimond*, 65 Cal. App. 3d 173, 180-181 (1976).

**Exhibit D
Page 401**

1    contributing to the aggregate *dose* of asbestos the plaintiff or decedent inhaled or ingested." *Rutherford*,

2    16 Cal. 4th at 976-77 (first emphasis added).  Unlike the asbestos-related cancer claims in *Rutherford*,

3    Plaintiffs' claims here are not based on any specific injury, only some unknown "adverse health

4    consequences." (*See* Compl. ¶ 13.)  And unlike the asbestos exposure in *Rutherford*, Plaintiffs here do

5    not allege whether or how they were exposed to any dose of any substance at all.  (*See id.*)

6        Plaintiffs' claims are far from "ordinary" personal injury claims, and they do not allege facts that

7    that "naturally give rise to an inference of causation." *Bockrath*, 21 Cal. 4th at 78.  The only "ultimate

8    facts" alleged in the Complaint are that: (1) Plaintiffs wore or were exposed to unidentified uniform

9    garments distributed by Twin Hill; (2) Plaintiffs experienced unidentified "adverse health consequences";

10    (3) testing of unknown uniform garments showed the presence of various synthetic substances; and (4)

11    those substances can in some unalleged way "cause injury to human beings either alone or in

12    combination with each other." (Compl. ¶¶ 10-13.)  These allegations do not give rise to any inference of

13    causation and are insufficient to state a claim.  *Compare Dimond*, 65 Cal. App. 3d at 184-85 (inferences

14    had "support in established facts and [wa]s a reasonable deduction or extension of that evidence") *with*

15    *Bockrath*, 21 Cal. 4th at 78 (dismissing products liability claims where plaintiff failed to allege facts

16    explaining how defendants' products cause cancer); *Berkley*, 152 Cal. App. 4th at 528 (dismissing

17    negligence claim where plaintiff failed to allege facts describing how defendants' alleged negligence

18    caused personal injury).

19        2.    *Bockrath's* **Pleading Requirements for Exposure to Toxic Chemicals Apply to**

20            **Plaintiffs' Claims**

21        Twin Hill also showed that, because Plaintiffs' claims are based on exposure to allegedly toxic

22    chemicals, California law requires them to (i) allege facts establishing exposure to each chemical alleged

23    to have caused a specific illness, (ii) identify each product that allegedly caused injury; (iii) allege that

24    toxins entered the plaintiff's bodies; (iv) allege each specific illness allegedly suffered by each plaintiff,

25    and (v) allege that each toxin was a substantial factor in bringing about those illnesses.  (Demurrer at 7

26    (citing *Bockrath*, 21 Cal. 4th at 79-81; *Oddone*, 179 Cal. App. 4th at 820, disapproved on other grounds

27    in *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1156 (2016)).)  Plaintiffs argue these additional pleading

28    requirements do not apply to their claims, relying on a quote from *Tellez-Cordova v. Campbell-*

1  *Hausfeld/Scott Fetzger Co.*, 129 Cal. App. 4th 577, 586 (2004). (*See* Opp. at 2:18-20 ("'*Bockrath* . . .

2  held only that a plaintiff who sues multiple defendants on speculation that their products may have

3  caused harm over time through exposure to toxins in them must match each toxin to a defendant.'"

4  (emphasis omitted)).) Plaintiffs contend that because they allege that "ONE Defendant, [Twin Hill]

5  distributed a product with specifically identified impurities/chemicals in it . . . . [t]he occasional

6  heightened pleadings requirements identified for multiple defendant toxic tort cases in *Bockrath* (supra)

7  does not apply." (Opp. at 2:22-24, 3:1-2.) But Plaintiffs are misreading *Bockrath* and ignoring the more-

8  recent decision in *Oddone*, which held that *Bockrath's* additional pleading requirements apply to toxic

9  tort cases, regardless of the number of defendants sued:

10      [*Bockrath*] provides standards by which the allegations of a complaint can be measured

11      when the plaintiff seeks to recover for injuries allegedly caused by his or her primary

12      exposure to allegedly toxic chemicals. . . . Although in *Bockrath* the plaintiff had named

13      multiple defendants, which is not true of the case before us, *the court's policy concerns*

14      *nonetheless apply to this case as well.*

15  *Id.* at 820-21.[7]

16      The policy concerns of "overbroad litigation" identified in *Bockrath* and *Oddone* apply equally

17  here. Plaintiffs' claims are based on the presence of various chemicals, which they vaguely allege "can

18  cause injury to human beings either alone or in combination with each other." (Compl. ¶ 12.) Plaintiffs

19  do not identify whether or how they were exposed to those chemicals, or how, if at all, those chemicals

20  contributed to their injuries. Rather, Plaintiffs' claims are based purely on speculation that their uniforms

21  may have caused harm over time through exposure to alleged toxins in them, in the hopes of learning

22  through discovery whether their speculation was well-founded. "The law cannot tolerate [such] lawsuits."

23  *Bockrath*, 21 Cal.4th at 81; *Oddone*, 179 Cal. App. 4th at 821. As the court in *Oddone* observed, the

24  pleading requirements set forth in *Bockrath* "are even more apropos," where, like here, "defendant's acts

25  [7] *Tellez-Cordova* also is distinguishable. There, the plaintiffs alleged that the action of defendant's tools

26  created an injury-causing dust, not that there were toxic chemicals in the tools supplied by defendants.
    *Tellez-Cordova*, 129 Cal. App. at 580. As the Court in *Tellez- Cordova* recognized, *Bockrath* "set forth

27  the pleading requirements when [] *suppliers* [of toxic substances] are sued." *Id.* at 587 (emphasis added).
    Plaintiffs here allege that Twin Hill supplied products that supposedly contained "toxic" substances, and,

28  therefore, must satisfy *Bockrath's* requirements.

1  and the claimed injury is more attenuated than in a primary exposure case." *Oddone*, 179 Cal. App. 4th

2  at 821; *see* Compl. ¶ 13 (alleging Plaintiffs' experienced "adverse health consequences as a result of

3  wearing *or being exposed to*" the uniforms supplied by Twin Hill (emphasis added)).) The Complaint

4  does not satisfy *Bockrath* and *Oddone* and should be dismissed for this additional reason.

5  **III.    CONCLUSION**

6      Plaintiffs' allegations are insufficient to establish a product defect, injury, or causation, and,

7  therefore, do not state a claim for strict products liability or negligence. Accordingly, Twin Hill

8  respectfully request that the Demurrer be sustained.

9

10 DATED: February 9, 2018                          GREENBERG TRAURIG, LLP

11

12                                               By _____

13                                                  Robert J. Herrington
                                                   Leanna C. Costantini

14                                                 Attorneys for Defendant Twin Hill Acquisition
                                                   Company, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEMURRER TO COMPLAINT                **Exhibit D
                                                          Page 404**

# Exhibit B

Exhibit D
Page 405



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**          Public Health Service

National Institute for Occupational
Safety and Health
1090 Tusculum Avenue
Cincinnati OH 45226-1998

January 10, 2018
HHE 2017-0034

James T. Johnson
Managing Director, Legal - Environmental
4333 Amon Carter Boulevard, MD5675
Fort Worth, Texas 76155

Dear Mr. Johnson:

This letter is in response to an employee request to the National Institute for Occupational Safety
and Health (NIOSH) at the Centers for Disease Control and Prevention (CDC) for a health
hazard evaluation (HHE) regarding symptoms attributed to uniforms introduced from May to
September 2016 among American Airline (AA) employees. In the course of this HHE, we
performed a number of activities and gathered substantial amounts of information to evaluate
employees' concerns. In this letter we present a summary of the information we reviewed and our
conclusions and recommendations. We include detailed information concerning background,
methods, findings, and literature review for this HHE in the Appendix to this letter.

### Information about AA Uniforms

During our evaluation, we learned that flight attendants must wear uniforms at all times when on
duty. In February 2015, Twin Hill, a subsidiary of Tailored Brands, was contracted by AA to
supply new uniforms to their 70,000 employees. The new uniform consisted of garments made of
wool blend fabric (53% wool, 45% polyester, 2% spandex) and non-wool blend (63% polyester,
33% viscose, 4% elastane). Garment linings were made of 94% polyester, 6% spandex; the wool
and non-wool blend female flight attendant single-breasted jackets were also available with
linings made of 100% polyester.

Employees began reporting symptoms they associated with touching or wearing the new Twin
Hill uniforms in May 2016. In response to the increase in symptoms, in August 2016, the
Association of Professional Flight Attendants (APFA) posted an internet form for reporting
complaints about the uniform. In October 2016, AA management offered employees two
options: (1) wearing the older uniform instead of the new Twin Hill uniform; or (2) purchasing
(with reimbursement) and wearing look-alike shirts and slacks from retail stores. AA
management also established a call center to handle concerns about the uniform. In March 2017,
AA offered a third "off-the-shelf" uniform supplied by Aramark. These uniforms included a
100% polyester jacket (with pant/skirt combination), 100% cotton shirts, and an acrylic/cotton
blend sweater.



Page 2 – Mr. James Johnson

In order to address concerns raised in the HHE request, we held conference calls, collected information by email, and reviewed documents including laboratory textile testing methods and results with representatives from AA, APFA, and Twin Hill Corporation. We consulted with

NIOSH chemists, private industry experts, medical experts, and representatives from the Hohenstein Textile Testing Institute (contracted by APFA), Intertek Chemicals and Materials, and Intertek Scientific and Regulatory Consultancy (both contracted by AA). APFA provided a de-identified database of employee symptom reports from August 11, 2016, through May 2, 2017, and updated summary information from this database. They also provided laboratory textile testing results. We reviewed AA Occupational Safety and Health Administration (OSHA) 300 logs for 2015 through April 2017, as well as a summary of AA Workers Compensation claims. We communicated directly with 50 AA employees who contacted NIOSH.

In order to determine whether one or more specific substances in the uniforms may have caused the reported symptoms, we evaluated: (1) the reported symptoms and health problems; and (2) information about the uniforms and fabrics. We reviewed reports of symptoms from several sources. Symptoms were reported related to the skin; the respiratory tract; the eyes; and the musculoskeletal, gastrointestinal, neurological, endocrine, and reproductive systems. We focused our evaluation on reported skin symptoms and reported respiratory symptoms since these were the most commonly reported symptoms. Reported skin problems included hives, rashes, blistering, itching, and other conditions. Reported respiratory problems included shortness of breath, wheezing, cough, congestion, and other respiratory conditions.

As stated above, uniform garments for flight attendants were available in both a wool blend and a non-wool blend. The types of garments and fabric contents of the Twin Hill uniforms are presented in Table 1.

Page 3 – Mr. James Johnson

Table 1. AA current uniform types and fabric content; lined garments made of poly wool blend or poly man-made fiber blend

| Uniform piece | Fabric composition | Lining |
|---|---|---|
| Men's jackets | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Men's jackets – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Women's jackets | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Women's jackets | 53% Wool / 45% Polyester / 2% Spandex | 100% Polyester |
| Women's jackets – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Women's jackets – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 100% Polyester |
| Men's vest | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Men's vest –nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Women's vests | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Women's vest – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Dress | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Dress – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Men's pant | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Men's pant – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Women's pant | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Women's pant – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Skirts | 53% Wool / 45% Polyester / 2% Spandex | 94% POLY/6%SPANDEX |
| Skirts – nonwool | 63% Polyester / 33% Viscose / 4% Elastane | 94% POLY/6%SPANDEX |
| Men's all weather coat | 100% Polyester | 94% POLY/6%SPANDEX |
| Women's all weather coat | 100% Polyester | 94% POLY/6%SPANDEX |
| Men's wool car coat | 64% Wool / 25% Polyester / 8% Polyamide / 3% Other Fibres | 94% POLY/6%SPANDEX |
| Women's topper coat | 53% Polyester / 44% Wool / 3% Elastane | 94% POLY/6%SPANDEX |
| Men's cardigan | 49% acrylic / 21% wool / 30% nylon | Unlined |
| Men's cardigan – nonwool | 80% acrylic / 20% nylon | Unlined |
| Men's heavy sweater – nonwool | 80% acrylic / 20% nylon | Unlined |
| Women's cardigan | 61% acrylic / 23% wool / 16% nylon | Unlined |
| Women's cardigan – nonwool | 80% acrylic / 20% nylon | Unlined |
| Women's heavy zip sweater | 60% acrylic / 25% wool / 15% nylon | Unlined |
| Women's heavy zip sweater – nonwool | 80% acrylic / 20% nylon | Unlined |

Men's and women's shirts and blouses of different styles and colors were unlined and made from 100% cotton with one exception. Women's twill shirts were made of 65% polyester and 35% cotton blend. The all-cotton alternative garments were also available to order, but Twin Hill reported receiving very few orders for these.

We obtained and reviewed fabric testing results from laboratories and toxicologists that have been involved in this issue. Uniform pieces were tested by companies contracted by AA, APFA, and Twin Hill. These private laboratories identified several potentially irritating or sensitizing

Page 4 – Mr. James Johnson

chemicals in the new and returned AA garments, but the chemical compounds were not found consistently across all garments thought to be related to dermal reactions. In our literature search, we found that, for most of the identified sensitizing agents, there is little data available in the scientific literature or within regulatory guidelines about the amount of dermal exposure necessary to cause sensitization or to cause a reaction in a sensitized individual. The results of the uniform samples testing did not reveal a pattern of chemical or metal contamination that would indicate a cause for the widespread reported symptoms.

We performed an extensive review of the scientific literature about exposures to low levels of chemical agents (including mixtures, and including textile-related exposures) and potential health effects from such exposures. For example, we learned that there is evidence in the literature that subthreshold concentrations of irritants can have an additive effect on the skin and that allergic contact dermatitis can occur with highly finished garments, such as uniforms. We also are aware of the difficulty of detecting newer textile allergens because chemicals used in textiles are not always declared. Garment testing may not identify these chemicals. Additionally, there is some evidence that skin exposure to certain chemical allergens (e.g., isocyanates and beryllium) may have the potential to cause sensitization of the respiratory tract, but conclusions related to these issues cannot be made due to lack of data. In the course of our research, we also learned that laundering garments several times reduces concentrations of water-soluble textile chemicals.

A minority of the reports describe occurrence of symptoms after working in close proximity or on the same aircraft with an employee who was wearing the uniform. We know that the chemicals identified in the uniforms have low volatility in the temperatures found on an aircraft and in normal indoor environments, and the levels of chemicals found in the garments would be unlikely to "off-gas" and lead to air concentrations that would cause symptoms.

## Conclusions

1. It is possible that textile chemicals in the uniforms or the physical irritant properties of the uniform fabrics have caused skin symptoms among some AA employees who wore the uniforms. Irritant and allergenic compounds were identified in some uniform garments, which could cause these skin symptoms.

2. As described fully in the Appendix,[*] the evidence from the extensive garment testing does not identify a single chemical, an individual uniform component, or combinations that were responsible for the constellation of symptoms. The concentrations and types of chemicals were found to vary widely even in different sections of many of the individual uniforms tested, as well as across the multiple new uniform pieces.

3. We cannot make a determination whether working in proximity to others wearing the new uniform would cause employees to experience symptoms because of the current limitations

[*] See pages 15-21 of the Appendix for a summary of our review of the laboratory testing.

Page 5 – Mr. James Johnson

involved in assessing work-related exposures (including limitations in the methods of testing the garments), and the inability to determine the precise significance of some of the reported symptoms. Based on our review of the analytical data and available literature regarding health and exposure to textiles, we think that proximity exposure is unlikely to result in symptoms.

## Recommendations

The actions taken (e.g., allowing employees multiple uniform choices) to address employee's symptoms attributed to uniform wear have been important steps in addressing those symptoms. We recommend the actions listed below to further address employee's symptoms.

1. Continue to offer the multiple choices of uniforms to the employees. Instruct employees who have developed symptoms when wearing the uniform to take advantage of any of the three alternative uniform choices.

2. Instruct employees to wash new clothing, before wearing them for the first time. Follow garment label instructions when laundering uniforms.

3. Encourage employees to report potential work-related health conditions to their supervisor.

4. Employees with persistent symptoms should be individually evaluated by an occupational medicine physician or a medical provider specializing in workplace illnesses. The Association of Occupational and Environmental Clinics has an online directory of such providers at http://www.aoec.org/directory.htm.

5. Employees with persistent rash should be evaluated by a dermatologist with expertise in occupational health and skin patch testing. The dermatologist may then decide if skin patch testing with textile chemical allergens and with pieces of the uniform is warranted.

6. Remove employees with physician-diagnosed health problems related to the uniform from exposure, and retain pay and benefits for these employees. Follow recommendations from the diagnosing physician concerning return-to-work for employees previously removed because of work-related exposures. In some cases of allergic asthma and allergic contact dermatitis, employees may need to be reassigned (with retention of pay and employment status) with work conditions in which exposure is minimal or nonexistent.

7. Conduct additional garment testing if a particular substance is identified to be related to the signs and symptoms that the flight attendants were experiencing. Further investigations into the sensitization potential of the garments may be warranted. Skin patch testing with uniform components should be guided by a professional with appropriate expertise, such as an occupational dermatologist as noted above.

Page 6 – Mr. James Johnson

This letter serves as a final report and concludes this health hazard evaluation. NIOSH recommends that employers post a copy of this letter for 30 days at or near work areas of affected employees. We are sending a copy of this letter to the Occupational Safety and Health Administration Region IV Office and the North Carolina Department of Health and Human Services.

Thank you for your cooperation with this evaluation. If you have questions, please call Loren Tapp at (513) 841-4404 or Kendra Broadwater at (513) 841-4543.

Sincerely yours,

Loren C. Tapp -S    Digitally signed by Loren C. Tapp
                     -S
                     Date: 2018.01.10 11:13:58 -05'00'

Loren C. Tapp, MD, MS
Medical Officer

Kendra Broadwater    Digitally signed by Kendra R.
                     Broadwater -S
                     Date: 2018.01.10 16:58:51 -05'00'

Kendra Broadwater, MPH, CIH
Industrial Hygienist
Hazard Evaluations and Technical
  Assistance Branch
Division of Surveillance, Hazard
  Evaluations and Field Studies

Attachments (1): Appendix

cc: Confidential employee requestors
    Marcy Dunaway, Vice President, APFA
    Gary Ckodre, Tailored Brands, Inc.
    Occupational Safety and Health Administration Region IV Office
    North Carolina Department of Health and Human Services






**DEPARTMENT OF HEALTH AND HUMAN SERVICES**    Public Health Service

National Institute for Occupational
Safety and Health
1090 Tusculum Avenue
Cincinnati OH 45226-1998

<u>HHE 2017-0034 Appendix</u>

The information in this Appendix: (1) presents details related to the background, methods, findings, and literature review for this Health Hazard Evaluation (HHE); and (2) supplements the discussion, conclusions, and recommendations in the body of the primary letter.

## BACKGROUND

As of 2016 American Airlines (AA) employed 120,000 people. Of these employees, the Association of Professional Flight Attendants (APFA) represents about 26,000 "mainline" flight attendants who work directly for AA. Other unions, including the Association of Flight Attendants (AFA), represent about 5000 flight attendants who work for regional carriers with which AA contracts services. For the purpose of this report, these flight attendants are not considered "mainline" AA employees. AA rolled out a new uniform for all of to their 70,000 customer-facing employees, which included "mainline" and regional flight attendants.  This evaluation focused on the "mainline" AA flight attendants who are represented by APFA.

*Information about AA Uniforms*
According to the negotiated contract between AA and APFA, flight attendants must wear the prescribed uniform at all times when on duty. The single exception is when flight attendants travel to their crew base or another city at the company's request. In February 2015, Twin Hill, a subsidiary of Tailored Brands, was contracted by AA to supply uniforms to their 70,000 employees. Between January and April 2016, Twin Hill representatives traveled to multiple airport locations to allow AA employees to try on garments and place orders. Employees were offered the option of ordering non-wool (cotton/synthetic blend or all-cotton) uniform components prior to the complete roll out. Some uniform orders were shipped from Twin Hill to AA employees beginning in May 2016. The first day employees wore the uniforms on the job was in late September 2016. The new uniform consisted of combinations of garments made of wool blend fabric (53% wool, 45% polyester, 2% spandex) and non-wool blend (63% polyester, 33% viscose, 4% elastane). Garment linings were made of 94% polyester, 6% spandex except for two garments with linings made of 100% polyester.

According to the employee requestors and APFA representatives, employees began reporting symptoms they believed to be related to touching or wearing the Twin Hill uniform shortly after uniforms were delivered beginning in May 2016. APFA began a webpage on August 11, 2016 which solicited reports of health effects potentially related to the new uniforms.

*Pre-distribution Wear Tests*
Wear test information was provided by Twin Hill and AA. From mid-December 2014 to mid-January 2015, 500 AA employees participated in a wear test with new uniforms manufactured by Twin Hill but designed by a different firm to provide feedback. After negative feedback on the



Page 2 – HHE 2017-0034 Appendix

design, AA terminated the contract with this first firm. From late September 2015 until late October 2015, a second wear test with uniforms designed by Twin Hill was conducted. The wear test survey focused on fit, function, construction, and style. Health symptom questions were not included. Seventy-eight AA employees wear-tested the uniforms including 21 pilots, 35 flight attendants, 14 customer service, and 8 premium service employees. Based on the survey results provided, AA male Flight Service employees had no complaints. Female Flight Service employees gave feedback on the fit and style of the serving garment. Both male and female pilots gave feedback on the thickness of the shirt fabric and on preference for the single-breasted jacket. AA was to explore the possibility of offering additional shirt fabrication mixes at or post rollout, and decided to move forward with the single-breasted jacket design. After the second wear test results, AA instructed Twin Hill to proceed with manufacturing the new uniforms.

*Uniform Alternatives*

In October 2016, AA offered an alternative to wearing the new uniform: employees could continue to wear their previous uniform instead of the new uniform. During this month, AA offered a second uniform alternative: employees were allowed to purchase look-alike replacement shirts and slacks from retail stores and be reimbursed by the company. Also in October 2016, AA established a call center as a resource for employees with concerns about the uniform to review uniform options and alternatives. In March 2017, AA offered a third uniform alternative for Flight Service (including flight attendants), Customer Service, and Premium Customer Service employees: an "off-the-shelf" uniform supplied by a different manufacturer. These uniforms included a 100% polyester jacket (with pant/skirt combination), 100% cotton shirts, and an acrylic/cotton blend sweater. These garments were available for order at the end of March 2017 with limited availability at that time, and with broader availability in the fall of 2017.

*Supply chain of garments*

Twin Hill provided a timeline of the AA Uniform Program and an overview of the Twin Hill supply chain, as it pertains to the AA program. They also provided supply chain information for all 260 types of garments produced for American Airline uniforms. The supply chain included the name of the garment piece, employee work group who it was available to, color, factory (that used the fabric to make uniform pieces), fabric composition, mill (that made the fabric), and if the mill was OEKO-TEX® certified.

According to Twin Hill records, the Twin Hill garments of concern were created, shipped, and handled per standard procedures, described below. Fabrics are produced at one of 14 independent, international fabric mills. Of the 14 mills, 12 have OEKO-TEX® Standard 100 [OEKO-TEX, 2018] certification (nine in China, one in Bulgaria, one in United Kingdom, one in France). This is an independent certification system for finished fabrics, designed to certify the absence of banned and harmful substances, to limit the concentrations of potentially harmful substances, and to deliver assurance of product safety. The remaining two mills (one in South Korea and one in Italy) self-certified as to their conformity with the absence of restricted chemicals and European Chemicals Agency (ECHA) substances of very high concern. OEKO-TEX® certificates for the 12 mills and the self-certification for the South Korean and Italian



**Page 3 – HHE 2017-0034 Appendix**

mills were provided by Twin Hill. Most of the OEKO-TEX® certificates stated that the fabrics manufactured in the mill, including the dyes and/or finishes used in the production of the fabric, are tested for substances according to OEKO-TEX® Standard 100. Dyes listed on the certificate include acid, metal complex, reactive, basic, and/or disperse dyes in different colors. Finishes listed on the certificate include water-repellent Teflon treatment, softening, antistatic, wrinkle-free, and wicking agents, as well as water-proof, oil-proof, and stain-proof agents.

After fabric inspection, fabrics are shipped from the fabric mills to separate independent factories to assemble garments. Twin Hill uses 12 factories: three in China, three in Vietnam, two in Bangladesh, two in Sri Lanka, one in Indonesia, and one in Hungary. Once assembled, the uniforms are packaged by the factories (without the use or addition of any chemicals) in plastic bags designed to be laid flat or in hanging bags, depending on the garment type. All plastic bags are sealed but contain at least one "breathing hole." These bags are then placed in sealed containers, and shipped to the U.S. from the factories according to the Customs-Trade Partnership Against Terrorism standards developed by U.S. Customs and Border Protection. The containers must remain sealed during transportation to their seaport (California) or airport (Dallas/Ft. Worth International Airport) destination unless opened and resealed by U.S. Customs agents. The containers are checked by U.S. Customs agents and then delivered by train or truck to the Twin Hill Distribution Center in Houston, Texas, where they are opened. Twin Hill employees organize the uniforms by size and style, scan the garment shipments into their tracking system and perform inspections and spot checks of individual garments. The garments are then stored until an order is received. Twin Hill reported that no chemicals are applied during the handling or storage processes. Twin Hill stated that, generally, the uniforms are shipped directly to AA employees after being placed inside boxes supplied by Houston Foam Plastics. Twin Hill reported it had not received any report or other information suggesting any contamination of the fabric mills, including structural damage, natural phenomenon, or other potentially compromising circumstances.

*Textile Chemicals, Regulations, and Certifications*
Textile finishing resins are used to reduce shrinking and wrinkling and to improve quality, texture, and appearance of the textile. Historically, exposure to formaldehyde from textile resins has contributed to skin problems. However, in recent years, formaldehyde concentrations in resins have been greatly reduced in response to these concerns and international regulations or guidelines that have been developed [GAO 2010; DeGroot and Maibach 2010]. Studies evaluating textile chemicals and finishing resins represent the bulk of studies done on textiles and dermatitis. Other types of textile treatments, such as non-dispersion dyes, have not been well characterized in the scientific literature.

The United States has not developed requirements pertaining to the chemical or metal contents of adult apparel. The OEKO-TEX® Standard 100, a voluntary standard placing limitations on certain chemical content in textiles, was developed by the International OEKO-TEX® Association in 1992. The chemicals in the OEKO-TEX® standard are partially based on the list of substances of very high concern established by the European Union's Registration, Evaluation, Authorization and Restriction of Chemicals (REACH) program. The REACH



**Page 4 – HHE 2017-0034 Appendix**

program issues an annual list of substances of very high concern. ECHA regulates how these chemicals can be used. As of 2017, 173 substances were included on the ECHA list of substances of very high concern.

In 2009, the American Apparel and Footwear Association (AAFA) published their Restricted Substance List, which has similar standards to the OEKO-TEX® 100 standards, and encouraged its members to voluntarily follow these textile parameters [DeGroot and Maibach 2010; Reich and Warshaw 2010]. Some individual companies, such as H&M, also publish the limit values and internal standards they apply to their finished products [H&M 2017].

## GENERAL INFORMATION CONCERNING ILLNESS CLUSTERS AND METHODS

Diseases and symptoms often appear to occur in clusters, which scientists define as an unusual concentration of cases in a defined area or time [CDC 1990]. The cases may have a common cause or may be the coincidental occurrence of unrelated causes. The number of cases may seem high, particularly among the group of people who have something in common with the cases, such as working in similar conditions.

In investigating a perceived excess of symptoms among employees of the same workplace, we begin by gathering data on workers with reported symptoms. To assess whether symptoms among employees could be related to occupational exposures, we consider the type of symptoms, the number of employees with symptoms, and the likelihood of exposure to agents potentially causing symptoms. These issues are discussed below as they relate to our evaluation.

We collected information on uniform symptoms from AA employees through telephone calls and emails. We held conference calls with representatives from AA, APFA, and Twin Hill Corporation to discuss the HHE request and ask for information pertaining to the request. AA provided results from the second wear test conducted prior to uniform rollout, Occupational Safety and Health Administration (OSHA) Form 300 Logs of Work-Related Injuries and Illnesses for years 2015, 2016, and 2017, OSHA 300A summary sheets for years 2015 and 2016, and a summary of workers' compensation claims related to uniforms filed from uniform roll out through July 28, 2017.

APFA provided a de-identified database of employee symptom reports from August 11, 2016, through May 2, 2017, and updated summary information from this database.

In order to learn more about whether or not a specific agent(s) was associated with the reported symptoms in employees, we reviewed fabric testing results from laboratories that conducted analyses on behalf of AA, Twin Hill, and APFA. We reviewed testing results from Hohenstein Textile Testing Institute (contracted by APFA), Intertek Chemicals and Materials, and Intertek Scientific and Regulatory Consultancy (both contracted by AA), and TÜV Rheinland (contracted by Twin Hill) concerning chemicals to which uniform wearers may be exposed.



**Page 5 – HHE 2017-0034 Appendix**

## RESULTS

*Review of AA OSHA Logs, Workers' Compensation Claims, and APFA Symptom Database Results*

There were no skin disorder entries documented on the 2015 OSHA logs. In 2016, each hub location documented at least one skin entry related to the uniform on their OSHA log, except for JFK, which had only one entry total that year. Total OSHA log entries (Appendix Table 1) in 2016 for all hubs included 87 skin disorder entries (8% of the total entries), of which 83 (95 % of 87) were reported to be related to the uniform. All but two of the skin entries reported to be related to uniforms in 2016 were reported on or after September 9, 2016. The other two entries were reported on June 28, 2016 and August 8, 2016. In the first four months of 2017, 13 skin disorder entries were reported; all reported to be related to the uniform. Respiratory conditions reported to be related to the uniform were entered in 2016 (n = 27) and 2017 (n = 18). Table 1 shows the number of injury and illness entries, by illness and injury category, for years 2015, 2016, and part of 2017.

Appendix Table 1.  Number of OSHA 300 injury and illness log entries for AA mainline flight attendants for years 2015, 2016, and January 1, 2017, through April 30, 2017; by injury and illness type

| Type of entries | Number of entries | | |
|---|---|---|---|
| | 2015 | 2016 | January through April 2017 |
| Total OSHA 300 Log entries: | 715 | 1,129 | 370 |
| Sprain/strain | 409 | 541 | 182 |
| Laceration/contusion/puncture | 125 | 249 | 93 |
| Hearing loss/ear pressure | 36 | 56 | 17 |
| Musculoskeletal disorders | 39 | 23 | 1 |
| Fractures | 29 | 42 | 13 |
| Concussions | 13 | 20 | 4 |
| **Skin disorders** | 0 | 87 | 13 |
| **From uniform** | 0 | 83 | 13 |
| Respiratory conditions | 14 | 68 | 39 |
| **From uniform** | 0 | 27 | 18 |
| Eye disorders, irritation | 5 | 9 | 2 |
| From uniform | 0 | 0 | 1 |
| Head/face reaction to uniform | 0 | 0 | 2 |
| Other | 45 | 34 | 4 |
| Total AA mainline flight attendants | 24,944 | 25,674 | 26,167 |



**Page 6 – HHE 2017-0034 Appendix**

AA provided a table of workers' compensation claims related to the uniforms filed through July 28, 2017 (Appendix Table 2). Among a reported 27,100 flight attendants, 592 claims were filed. No information was available concerning any further evaluation of these claims.

Appendix Table 2. Number of AA worker compensation claims related to uniforms, filed through July 28, 2017, by job type and symptom reported in claim.

| Job Type | Total claims filed (%)* | Skin-related only | Other symptoms only† | Both skin and other symptoms |
|---|---|---|---|---|
| Flight attendants (n~27,100) | 592 (2.1) | 196 | 192 | 204 |
| Pilots (n~16,400) | 10 (0.06) | 6 | 3 | 1 |
| Customer service (n~13,800) | 125 (0.9) | 61 | 22 | 42 |
| Total of all job types (n~57,300) | 727 (1.3) | 263 | 217 | 247 |

*Percent of employees in job type
†This includes respiratory, eye, nose, and throat symptoms, headaches, and other non-skin symptoms.

We reviewed the APFA de-identified database of employee uniform symptom reports from August 11, 2016, through May 2, 2017. The AFPA database was a compilation of reports received from the AFPA webpage initiated on August 11. The APFA database included multiple symptoms and illnesses that were reported to be related to the uniform. Reported skin problems included hives, rashes, blistering, itching, discoloration, bruising, open sores, sunburn-like rash, chemical-like rash, and swelling. Reported respiratory problems included shortness of breath, wheezing, cough, congestion, asthma, sore throat, sinusitis, and coughing up blood. Reported eye problems included irritation, excessive tearing, redness, infections, styes, conjunctivitis, swelling, bloodshot eyes, subconjunctival hemorrhage, spasms, and twitching. Reported musculoskeletal problems included joint pain, muscle aches and spasms, fibromyalgia, muscle fatigue, and muscle atrophy. Reported gastrointestinal problems included stomach discomfort or irritation, nausea, diarrhea, and vomiting. Reported neurological problems included insomnia, headaches/migraines, cognitive issues, and depression. Other reported symptoms or signs reported as related to the uniform included thyroid issues, weight gain or loss, irregular menstrual cycles, sleep disturbances, night sweats, excessive hair loss, palpitations, increased or decreased blood pressure, swollen lymph nodes, recurring sinus and bronchial infections, laryngitis, overall edema, fatigue and exhaustion. Skin symptoms and respiratory symptoms were the most commonly reported symptoms.



**Page 7 – HHE 2017-0034 Appendix**

The database included 3,686 reports of symptoms thought to be due to the new uniform; some employees reported more than one symptom. Of the 3,686 symptom reports, 796 reports stated medical attention was sought. Of these 796 reports, 511 were related to skin symptoms, 411 were related to respiratory symptoms, 165 were related to eye symptoms, and 204 were related to both skin and respiratory symptoms. Several employees reported more than one type of symptom. Symptoms reported to occur while not wearing the uniform, but in the proximity of others wearing the new uniform, were reported 47 times.

The APFA database included a comments section. Comments from employees who reported symptoms and sought medical attention were reviewed. Self-described rashes were reported in multiple locations on the body. However, several of the employees reported their rashes were in typical locations where textile dermatitis is commonly located, including in and around the axillae (armpits), front of thighs, neck and back, and waist. Many flight attendants reported skin itching and burning within a few seconds to a few hours of wearing the uniform. Also, there were many reports of itching and irritation in the location where the lining or undergarment was not covering the skin. Some employees noted that the sweaters caused itchy, red skin irritation within a few minutes of putting on the skin ("like glass shards," "cactus needles," "fiberglass"). Some employees reported that they had worn wool many times before and never had any problems, but that the sweater fabric was very irritating to them. Employees also reported that pants, dresses, and scarves were made from scratchy fabric. Several flight attendants reported seeing a dermatologist. To our knowledge, no employees were skin patch tested with pieces of uniform.

The records of reported symptoms that we reviewed showed that neither one specific uniform piece nor a group of uniform pieces with the same fabric content were consistently linked to symptoms. As of September 5, 2017, we have been updated that the APFA had received 4,638 symptom reports from 3,962 individual flight attendants.

*Individual communication with AA flight attendants*
We spoke with or communicated by email with 50 AA employees who contacted us. Of the 50 employees, 28 were flight attendants, 11 were customer service employees, one was a pilot, and ten did not give their job title. Of the 50 employees, 29 reported skin irritation, 13 reported respiratory symptoms, and nine reported eye symptoms after wearing the uniform. Some of the employees reported fatigue, flu-like body aches, and changes in thyroid function and menstrual patterns.

Eleven reported seeing a healthcare provider because of symptoms they believed were caused by wearing the uniform. We received medical records for two of the eleven employees and photos of physician office notes for an additional seven employees; most of the medical documentation we received was incomplete concerning occupational health issues. Three employees reported being diagnosed with multiple chemical sensitivity disorder; two provided physician notes confirming this diagnosis. Six reported a diagnosis of contact dermatitis; four provided physician notes confirming this diagnosis. Four of the six with contact dermatitis underwent skin patch testing. Of these, one provided physician notes stating the employee was allergic to a



Page 8 – HHE 2017-0034 Appendix

preservative which had been found in the uniform, but also found in many cosmetics and hygiene products; one provided physician notes stating the employee was allergic to chemicals in her uniform but no specific chemicals were listed, and two reported negative test results. No employees reported being skin patch tested to pieces of the uniform.

*Review of Laboratory Testing*

*Hohenstein garment testing*
Hohenstein Textile Testing Institute was contracted by the APFA to conduct analyses of several of the uniform pieces. The laboratory tested the pieces in October and November 2016 according to the parameters set forth by OEKO-TEX® Standard 100 and compared those results to the limits for product class II, where skin contact is expected.

Extractions from the 12 garments tested by Hohenstein were tested for pH, free and partially releasable formaldehyde, 25 banned azo colorants and selected aryl amines, 36 allergenic or carcinogenic colorants, nine heavy metals, nonylphenol, octylphenol, certain alkylphenolethoxylates, five chlorinated phenols, orthophenylphenol, and total pesticides. Samples from the 12 garments were digested and tested for total cadmium and lead.

The pH of the garments ranged from 5.9 to 6.7 within the OEKO-TEX® Standard 100 acceptable range of 4.0 to 7.5. Most chemicals were not detected in the samples. Some of the garments contained detectable levels of the following 12 substances: carbaryl (two garments), cadmium (two garments), captafol (one garment), chromium (three garments), formaldehyde (two garments), monochlorophenols (one garment), nickel (three garments), nonylphenol (one garment), nonylphenolethoxylates (two garments), pentachlorophenyl (two garments), tetrachlorophenol (two garments), and trichlorophenol (one garments). The concentration of one substance, cadmium (0.14 mg/kg), exceeded the OEKO-TEX® Standard 100 limit (0.1 mg/kg) in one uniform item; the remaining concentrations were below their respective limits within OEKO-TEX® Standard 100.

*TÜV Rhineland garment testing*
Twin Hill contracted TÜV Rhineland, an independent testing laboratory, to analyze the new uniforms for chemicals to which uniform wearers may be exposed. The laboratory tested the samples for (1) chemicals known or suspected to impact human health, (2) substances reported to be sensitizers in case reports or scientific literature and (3) agents reported by media outlets to be in the uniforms. The samples were tested for chemicals included in the list of "Substances of Very High Concern" as developed by ECHA under the REACH program and substances included in OEKO-TEX® Standard 100. Twin Hill contracted Ramboll Environ to summarize the testing data and evaluate the connection between the new uniforms and the reported symptoms. Ramboll Environ also reviewed the product list of dyes, finishing agents, and similar additives used to impart certain characteristics to textiles and which were offered on some of the Twin Hill contracted fabric mills' OEKO-TEX® certificates. The evaluations were conducted by toxicologists accredited by the American Board of Toxicology.



**Page 9 – HHE 2017-0034 Appendix**

TÜV Rhineland measured uniform extractions for pH, formaldehyde, chlorinated phenols, disperse dyes, and metals. They also analyzed the samples for the chemicals on the ECHA 2016 and 2017 Lists of Substances of Very High Concern. In order to be included on this list, a chemical must meet one or more of the following criteria: (1) Class 1 or 2 carcinogen, mutagen, or reproductive toxin, (2) persistent, bio-accumulative and toxic, and/or (3) another cause for concern (such as endocrine disruption). None of the 173 chemicals on these lists were measured at or above the screening limit of 0.1% (1000 ppm) or higher in the tested garments. However, these criteria do not necessarily speak to the allergenic or sensitizing capacity of the chemicals on the list.

The pH of the four garments tested ranged 4.9 to 6.4, within the OEKO-TEX® Standard 100 acceptable range. TÜV Rhineland sampled for nine extractable metals in 28 garment samples. Levels of extractable metals were found in three garments samples above their respective reporting limit: lead (two garments), chromium (one garment) and copper (two garments). An extracted chlorophenol was found at the reporting limit of 0.1 mg/kg in one sample. This is below the OEKO-TEX® limit of 0.5 mg/kg.

TÜV Rhineland sampled for 33 disperse dyes in 26 garment samples. One disperse dye was found in one garment above the reporting limit of 15 ppm. Disperse brown 1 was detected in the sample at 30 ppm. The OEKOTEX limit is 50 ppm. None of the substances reported exceeded their respective OEKO-TEX® limit value.

In response to concern voiced by AA employees, TÜV Rhineland included benzyl benzoate in their analyses. It was not detected in ten fabric samples at or above the reporting limit of 50 mg/kg. Benzyl benzoate is a common ingredient in personal care products, like some deodorants, and would not be expected to cause widespread, novel reactions for individuals who are not already sensitive to the compound. An ingredient review panel suggested that exposure up to 5000 ppm could generally be considered safe for human exposure [Cosmetic ingredient review (CIR) 2011].

*Intertek garment testing*
Intertek Chemicals and Materials, contracted by AA, screened a solvent extraction from garments for volatile and semi-volatile compounds, rather than measuring specific chemicals. The concentrations reported by Intertek were that within the extraction solvent. Depending on the extraction efficiency, the chemical content of the garment may be higher. Most established chemical limits in textiles are based on extraction concentrations with a minority based on digestion concentrations. They also digested uniform pieces to analyze for metal content, rather than analyzing an extraction. Their analyses included new uniform pieces, legacy uniform pieces, and garments from retail stores.

The formaldehyde levels across all of the new uniform pieces sampled ranged from below the limit of detection to 32 ppm. Intertek Chemicals and Materials assessed formaldehyde content using EPA method 8315A [EPA 1996]. Formaldehyde concentrations in 13 samples from four returned AA uniform pieces ranged 0.60 to 7.0 ppm. All measurements were below 75 ppm, the



**Page 10 – HHE 2017-0034 Appendix**

limit established for clothing by OEKO-TEX® Standard 100. These are the most conservative standards currently in use for formaldehyde in clothing.

Intertek Chemicals and Materials screened several AA garments for volatile and non-volatile chemicals. Garment samples were also digested and analyzed for total content of arsenic, cobalt, lead, chromium and antimony. Intertek Scientific and Regulatory Consultancy provided a technical opinion on the results of these analyses as to their irritation and sensitization potential. They cross-referenced the chemicals and metals found in the garments to twenty documents or databases that contain information about dermal or respiratory sensitizers. A subset of these sources included: the Cosmetic Ingredient Review (CIR) documents, ECHA Registered Substances [Database], Consumer Product Safety Commission Part 1500 hazardous substances and articles, Agency for Toxic Substances and Disease Registry toxicological profiles, and European Commission Scientific Committee on Cosmetic Products and Non-Food Products Intended for Consumers opinion statements.

The end result was a list of potentially irritating and/or skin sensitizing agents found in extractions from garments from unworn AA uniforms, worn AA uniforms, legacy US Airways uniforms and retail clothing. The list comprised 24 potentially skin sensitizing agents and 44 non-metallic potentially irritating agents. Twelve potential skin sensitizers were found in the unworn AA uniforms, and seven were identified in returned AA uniforms, which were worn and unworn. The garments analyzed from the new AA uniforms contained a wider variety of potential skin sensitizing compounds than the legacy US airways uniforms, returned AA uniforms, and unworn retail items. However, most of the potential sensitizers were found in a small minority of the pieces sampled. For example, eight of the 12 potential sensitizers were found in 1 of the 55 of the new uniform garments tested. Three metals with sensitizing potential (antimony, chromium, and cobalt) were identified in a majority of the samples in both categories (new and returned), as well as in US Airways legacy uniforms and retail garments. Intertek Chemicals and Materials also detected methylene diphenyl diisocyanate in an extraction from one of the new uniform garments tested. Intertek Chemicals and Materials tested up to 4 locations in a single uniform components. Concentrations of individual metals and chemicals were frequently inconsistent within individual single garments.

Intertek Chemicals and Materials looked specifically for benzyl benzoate, which was detected in US Airways legacy garments and in returned and unworn AA uniforms, since it had been highlighted as a potential cause of the symptoms. Intertek found benzyl benzoate in the legacy US Airways uniform as well as the new AA uniforms [Intertek 2016]. The International Fragrance Association has categorized benzyl benzoate as a weak skin sensitizer [IFRA 2007]. Related to this, a review from 1999 reported that one of 619 people tested exhibited allergy to a 20,000 ppm benzyl benzoate mixture, while in other studies, small fractions of allergy to fragrances were due to allergy to benzyl benzoate [European Union 1999].

Overall, Intertek Scientific and Regulatory Consultancy identified several potentially irritating or sensitizing chemicals in the new and returned AA garments, but the chemical compounds were not found consistently across all garments thought to be related to dermal reactions. For most of



**Page 11 – HHE 2017-0034 Appendix**

the identified sensitizing agents, there is little data available in the scientific literature or within regulatory guidelines about the amount of dermal exposure necessary to cause sensitization or to cause a reaction in a sensitized individual. This lack of data made evaluating the potential of sensitization for most chemicals and metals difficult.

Some chemicals detected by Intertek Chemicals and Materials were not uniquely identified and were labeled as "unknowns" or were listed as part of a larger class, such as "aromatics." These cannot be evaluated for irritation or sensitization potential since they are not identifiable. According to Intertek Scientific and Regulatory Consultancy representatives, the "unknowns" in each sample were not compared across samples to determine if each unique "unknown" peak was found in more than one sample and were not compared to fabric treatments, resins, dyes, or other additives used in the textile factories as listed on the safety data sheets.

## REVIEW OF LITERATURE

Skin symptoms are relatively common in the working population. Data from the 2010 National Health Interview Survey showed that the overall prevalence of dermatitis reported among 17,524 current/recent workers in the previous 12 months was 9.8%, with 5.6% of these cases being attributed to work by health professionals [Luckhaupt et al. 2013]. In the United States, a recent study found the prevalence of dermatitis in adults could be as high as 10%, while the prevalence of atopic dermatitis, which has an immunological/allergic/genetic component, could be 6% of US adults [Hanifin et al. 2007]. In 2015, Bureau of Labor Statistics (BLS) data showed an overall annual incidence rate of 2.3 cases of skin disorders per 10,000 workers and 1.3 cases of respiratory conditions per 10,000 workers [BLS 2017]. The numbers and rates in the BLS and NHIS surveys are not directly comparable because they rely on different information sources with different ascertainment methods and different case definitions. Additionally, because of BLS survey limitations, it has been estimated that the number of actual occupational skin diseases may be 10 to 50 times higher than that reported by the BLS (Mathias 1985).

Environmental stressors, including temperature, humidity, pressure, noise, vibration, and time-zone shifts, have been associated with the health and comfort complaints among flight attendants [Nagda and Koontz 2003]. Eye; ear, nose, throat; and respiratory symptoms are common among flight attendants. Studies of flight attendants and airline cabin crew found significantly higher rates of self-reported eye (10%–12%), nose (14%–16%), throat (7.5%), fatigue (18%), and hand skin symptoms (11%) when compared to other working women or to office workers [Whelan et al. 2003; Lindgren et al. 2002]. In addition, the self-reported prevalence of ever-diagnosed asthma was 8.2% and of current physician diagnosed asthma was 4.9% [Whelan et al. 2003]. Several other studies have also reported eye and respiratory symptoms among flight attendants [De Ree et al. 2000; Lee et al. 2000; Lindgren et al. 2000].

Possible causes of symptoms reported by the flight attendants include the cabin environment itself (e.g., cabin pressure and relative humidity), contaminants in the cabin air (e.g., ozone, pesticides, constituents of engine lubricating oils, and hydraulic fluids), and physiologic stressors



**Page 12 – HHE 2017-0034 Appendix**

(e.g, fatigue, cramped space, and disrupted circadian rhythms) [National Research Council 2001]. A recent study of 579 flight attendants found that sinonasal symptoms were associated with increasing number of working days per month and the number of international trips per month [Shargorodsky et al. 2016]. Respiratory symptoms can be associated with a multitude of other respiratory conditions, most common of which are allergic rhinitis and viral upper respiratory infections.

In 2015, the Swedish Chemicals Agency evaluated chemicals in textiles for risk to human health (and the environment) [Swedish Chemicals Agency 2015]. They found that about 10% of the identified 2,400 textile-related substances were considered to be of potential risk to human health and are expected to be present in the final garment at relatively high concentrations, including azo dyes and fragrance. They concluded that there are few scientific publications concerning harmful effects from exposures of hazardous substances in textile articles. The European Commission DG Enterprise and Industry contracted a consultant to evaluate the link between potentially sensitizing chemicals in textiles and allergic reactions among wearers. They surmised that dyes, finishing resins, and other additives can cause allergic reactions, but concluded that determining prevalence is difficult to determine due to lack of data [RPS Advies- EN Ingenieursbureau BV 2013].

Laboratory analyses showed measureable amounts of known irritants and sensitizers in a subset of uniform pieces. There is evidence in the literature that subthreshold concentrations of irritants can have an additive effect on the skin [Tur et al. 1995]. For example, if the skin is exposed to only one of these irritants, no visible changes are seen, but if exposed to several, the skin may develop an irritant response. One study noted that it is currently difficult to detect newer textile allergens because chemicals used in textiles are not always declared [Lisi et al 2014]. A review article on textile formaldehyde releasing finishes stated that the amounts of free formaldehyde in textiles has decreased drastically in recent years and are generally low [GAO report 2010; DeGroot and Maibach 2010]. However, if cured incorrectly (not heated to a certain temperature for a specific length of time), the finishing chemicals may not bind to the fabric fibers as they should and in certain conditions such as sweating, high heat, and high humidity, the chemicals may leach out [DeGroot and Maibach 2010]. Although the use of textile resins with lower formaldehyde release has resulted in a decrease in the occurrence of formaldehyde-associated textile allergic contact dermatitis, it is still commonly seen with highly finished garments such as uniforms [Mobolaji-Lawal and Nedorost 2015]. The concentration at which each textile chemical causes sensitization has not been established for most chemicals, even for known dermal sensitizers. The process of establishing such values would have to take into account (1) the environment in which individuals are exposed to the textiles containing the chemical, (2) the potency and exposure frequency of the chemical allergen; and (3) ranges of susceptibility to sensitization within the population [Kimber et al. 2012].

The prevalence of textile contact dermatitis in developed countries appears to be increasing [Lisi et al. 2014; Lazarov 2004]. Some think that textile contact dermatitis is underestimated because of the sometimes atypical clinical presentation and the few textile dyes and finishing chemicals included in standard patch test series. Textile dermatitis is hard to predict because of several

**Page 13 – HHE 2017-0034 Appendix**

factors including both individual and environmental factors. Individual factors include susceptibility to skin sensitization, immune function, the health of the skin barrier, and the capacity of absorption and reaction among individuals [Zhong et al. 2006; Kimber et al. 2012]. Those with a history of eczema or atopic dermatitis have an increased risk of developing allergic contact dermatitis. Environmental factors include exposure to irritant chemicals or physically irritating fibers and high temperatures and humidity causing increased sweating and leaching of chemicals out of fabrics resulting in increased skin exposure to chemicals.

Clothing dermatitis generally occurs in areas where clothing fits snugly, and the lesions are sometimes symmetrical [Rietschel et al. 2008]. Friction, warmth, and moisture tend to increase the appearance of clothing dermatitis. The clinical pattern is generally described as affecting the neck, major skin folds, and inner thighs. The areas protected by underclothing or the lining of a skirt or pants are often free of symptoms [Le Coz 2011]. Dermatitis from blouses and dresses typically involves the back. In addition, dress dermatitis affects the neck, elbows, and axillae (armpit), and can involve the forearms and wrists. Dermatitis from jackets affects the back of the hands, wrists, and forearms. Dermatitis from trousers occurs on the thighs and lower legs and on the back of the knees. Dermatitis from socks affects the feet and lower legs. Dermatitis from stockings or tights affects the lower legs, top of the feet and toes, and can also involve the back of the knees [Le Coz 2011].

One study concerning "sensitive skin" found that about 40% of the population reported having sensitive skin, defined as perceiving stinging, burning, pruritus, and tightness following various environmental stimuli [Draelos 1997]. Individuals with sensitive skin were found to have one or more of the following features: 1) heightened neurosensory input, 2) enhanced immune responsiveness, and/or 3) diminished skin barrier function such as a thinner stratum corneum or imbalance of lipid compounds in this skin layer [Berardesca 2017; Draelos 1997]. Those with sensitive skin may have an increased tendency for reacting to physical and chemical irritants touching their skin.

Skin patch testing is useful in determining whether someone has allergic contact dermatitis; however, there are limitations. There are a limited number of allergens that are included in skin patch test kits, including the specific series that includes textile allergens. If an individual is not tested to the pertinent allergen, no reactions are noted on evaluation and the individual might be erroneously considered to not have skin allergy. Patch testing with actual pieces of the uniform may be a better way of detecting allergic contact dermatitis. However, results may be falsely negative since the conditions that elicit leaching of dyes and resins from the fabric, such as sweating and friction, may not be the same when placing a piece of the textile on the skin of the back [Mobolaji-Lawal and Nedorost 2015].

Persistent postoccupational dermatitis (PPOD) can occur following allergic or irritant contact dermatitis. PPOD begins as a clear-cut occupational contact dermatitis. It initially gets better when removed from exposure, but with time, the capacity for resolution is lost and persistent dermatitis develops. Predictive factors for PPOD include duration of disease, inability to avoid causative agents, and age [Meding et al. 2005].



Page 14 – HHE 2017-0034 Appendix

Many skin disorders, including contact dermatitis, have been shown to have a significant impact on quality of life [Lan et al. 2008; Fowler et al. 2006; Cvetkovski et al. 2005; Kadyk et al. 2003]. Rapid identification and treatment of contact dermatitis is important in preventing longer-term symptoms.

There is little information reported in the literature about health effects that may develop from skin exposure to textile chemicals, other than contact dermatitis. There is some evidence in the literature that certain chemical allergens (e.g., isocyanates and beryllium) when encountered on the skin may have the potential to cause sensitization of the respiratory tract [Redlich 2010; Kimber 1996]. These findings suggest that there may be other chemicals that can be absorbed through the skin, react systemically, and lead to respiratory sensitization. A study by Elberling, et al. found a statistically significant association between eye and airway symptoms among allergy patients elicited by airborne chemicals, and contact dermatitis (positive patch test), but these symptoms were not related to positive skin prick test (immediate immune response) [Elberling et al. 2005]. Their findings suggest that individuals with contact allergy may have a predisposition to develop respiratory symptoms when exposed to airborne chemicals, which are common in airplane cabins.

A small minority of the reports we reviewed describe symptoms after working in close proximity or on the same aircraft with an employee who was wearing the uniform. We were not able to find scientific literature that addresses respiratory or dermal symptoms secondary to intermittent, close proximity to textiles worn by others.

## REFERENCES

Berardesca E [2017]. Chapter 45: Sensitive skin. In: Cosmetic Science and Technology: Theoretical Principles and Applications; Sakamoto K, Lochhead RY, Maibach HI, Yamashita Y, eds. Elsevier Inc., Cambridge, Massachussetts pp: 737–740. http://dx.doi.org/10.1016/B978-0-12-802005-0.00045-8.

BLS [2017]. Occupational injuries and illnesses in the United States. U.S. Department of Labor, Bureau of Labor Statistics. Available at: https://www.bls.gov/iif/oshsum.htm. Accessed November 20, 2017.

CDC (Centers for Disease Control) [1990]. Guidelines for investigating clusters of health events. MMWR 39(RR-11):1-16, https://www.cdc.gov/mmwr/preview/mmwrhtml/00001797.htm.

CIR [2011]. Amended Final Safety Assessment Benzyl Alcohol, and Benzoic Acid and its Salts and Benzyl Ester. https://online.personalcarecouncil.org/ctfa-static/online/lists/cir-pdfs/FR574.pdf.





**Page 15 – HHE 2017-0034 Appendix**

Cvetkovski RS, Rothman KJ, Olsen J, Mathiesen B, Iversen L, Johansen JD, Agner T [2005]. Relation between diagnoses on severity, sick leave and loss of job among patients with occupational hand eczema. Br J Dermatol *152*(1):93–98, http://onlinelibrary.wiley.com/doi/10.1111/j.1365-2133.2005.06415.x/abstract;jsessionid=782E4A1827ED31AFFEAF861B194680CD.f04t04.

De Ree H, Bagshaw M, Simons R, Brown A [2000]. Ozone and relative humidity in aircraft cabins on polar routes: measurements and physical symptoms. In *Air Quality and Comfort in Airline Cabins*, ASTM STP 1393, NL Nagda, ed. West Conshohocken PA: American Society of Testing Materials, pp 243–258.

DeGroot AC, Maibach HI [2010]. Does allergic contact dermatitis from formaldehyde in clothes treated with durable-press chemical finishes exist in the USA? Contact Dermatitis *62*(3):127–136, https://doi.org/10.1111/j.1600-0536.2009.01581.x.

Draelos ZD [1997]. Sensitive skin: perceptions, evaluation, and treatment. Am J Contact Dermat *8*(2):67–78, https://www.sciencedirect.com/science/article/pii/S1046199X97900002.

Elberling J, Linneberg A, Mosbech H, Dirksen A, Menne T, Nielsen NH, Madsen F, Frolund L, and Johansen JD [2005]. Airborne chemicals cause respiratory symptoms in individuals with contact allergy. Contact Dermatitis *52*(2):65–72, http://onlinelibrary.wiley.com/doi/10.1111/j.0105-1873.2005.00533.x/abstract.

EPA [1996]. "Method 8315A (SW-846): Determination of Carbonyl Compounds by High Performance Liquid Chromatography (HPLC)," Revision 1. https://www.epa.gov/homeland-security-research/epa-method-8315a-sw-846-determination-carbonyl-compounds-high-performance.

European Union [1999]. Scientific committee on cosmetic products and non-food products intended for consumers opinion concerning fragrance allergy in consumers. https://ec.europa.eu/health/archive/ph_risk/committees/sccp/documents/out98_en.pdf. Accessed October 2017.

RPS Advies- EN Ingenieursbureau BV [2013]. Study on the link between allergic reactions and chemicals in textile products. European Commission, DG Enterprise and Industry, VRM11.8088-Final Report (Draft no.7). Date: 7 January 2013.

Fowler JF, Ghosh A, Sung J, Emani S, Chang J, Den E, Thorn D, Person J, Duh MS [2006]. Impact of chronic hand dermatitis on quality of life, work productivity, activity impairment, and medical costs. J Am Acad Dermatol *54*(3):448–457, https://doi.org/10.1016/j.jaad.2005.11.1053.

GAO [2010]. Formaldehyde in textiles: while levels in clothing generally appear to be low, allergic contact dermatitis is a health issue for some people. Washington, DC: U.S. Government Accountability Office, http://www.gao.gov/products/GAO-10-875.

Exhibit B
Page 21
**Exhibit D**
**Page 426**

Page 16 – HHE 2017-0034 Appendix

H&M [2017]. H&M Chemical Restrictions 2017: Restricted Substances List. Global Product Compliance Department. http://sustainability.hm.com/content/dam/hm/about/documents/masterlanguage/CSR/Policies/H M%20Chemical%20Restrictions%202017_Apparel_Accessories_Footwear_Home%20Interior% 20Textile%20Products.pdf.

Hanifin JM, Reed ML, Drake LA, Koo J, Lebwohl MG, Leung DYM,McAlister RO, Pariser DM, Weiss ST [2007]. A population-based survey of eczema prevalence in the United States. Dermatitis *18*(2):82–91, http://journals.lww.com/dermatitis/pages/articleviewer.aspx?year=2007&issue=06000&article=0 0004&type=abstract.

Intertek. [2016]. Assessment of American Airlines Garments for Skin Irritation and Skin Sensitization Potential. Intertek Scientific and Regulatory Consultancy.

IFRA [2007]. IFRA Standard: benzyl benzoate. http://www.ifraorg.org/view_document.aspx?docId=23149. Accessed: October 2017

Kadyk DL, McCarter K, Achen F, Belsito DV [2003]. Quality of life in patients with allergic contact dermatitis. J Am Acad Dermatol *49*(6):1037–1048, http://www.jaad.org/article/S0190-9622(03)02112-1/fulltext.

Kimber I [1996]. The role of the skin in the development of chemical respiratory hypersensitivity. Toxicol Lett *86*(2–3):89–92, https://doi.org/10.1016/0378-4274(96)03678-8.

Kimber I, Travis MA, Martin SF, Dearman RJ [2012]. Immunoregulation of skin sensitization and regulatory T cells. Contact Dermatitis *67*(4):179–183, https://doi.org/10.1111/j.1600-0536.2012.02148.x.

Lan CC, Feng WW, Lu YW, Wu CS, Hung ST, Hsu HY, Yu HS, Ko YC, Lee CH, Yang YH, Chen GS [2008]. Hand eczema among University Hospital nursing staff: identification of high-risk sector and impact on quality of life. Contact Dermatitis *59*(5):301–306, http://onlinelibrary.wiley.com/doi/10.1111/j.1600-0536.2008.01439.x/pdf.

Lazarov A [2004]. Textile dermatitis in patients with contact sensitization in Israel: a 4-year prospective study. J Eur Acad Dermatol Venereol *18*(5):531–537, http://onlinelibrary.wiley.com/doi/10.1111/j.1468-3083.2004.00967.x/abstract.

Le Coz CJ [2011]. Contact dermatitis. In Johansen JD, Frosch PJ, Lepoittevin JP, eds. Contact Dermatitis. 5th ed. New York, NY: Springer-Verlag Berlin Heidelberg pp. 793–817.



Page 17 – HHE 2017-0034 Appendix

Lee SC, Poon CS, Li XD, Luk F, Chang M. [2000]. Questionnaire survey to evaluate the health and comfort of cabin crew. In: Nagda NL (ed) Air quality and comfort in airliner cabins, ASTM STP 1393. West Conshocken, PA, USA: American Society for Testing and Materials, 259–268.

Lindgren T, Norbäck D, Andersson K, Dammström BG [2000]. Cabin environment and perception of cabin air quality among commercial aircrew. Aviat Space Environ Med 71(8):774–782.

Lindgren T, Andersson K, Dammström BG, Norbäck D [2002]. Ocular, nasal, dermal and general symptoms among commercial airline crews. Int Arch Occup Environ Health 75(7):475–483, https://doi.org/10.1007/s00420-002-0330-8.

Lisi P, Stingeni L, Cristaudo A, Foti C, Pigatto P, Gola M, Schena D, Corazza M, Bianchi L [2014]. Clinical and epidemiological features of textile contact dermatitis: an Italian multicentre study. Contact Dermatitis 70(6):344–350, https://doi.org/10.1111/cod.12179.

Luckhaupt SE, Dahlhamer JM, Ward BW, Sussell AL, Sweeney MH, Sestito JP, Calvert GM [2013]. Prevalence of dermatitis in the working population, United States, 2010 National Health Interview Survey. Am J Ind Med 56(6):625–634, https://doi.org/10.1002/ajim.22080.
Mathias CG [1985]. The cost of occupational skin disease. Arch Dermatol 121(3):332–334.

Meding B, Wrangsjo K, Jarvholm B [2005]. Fifteen- year follow- up of hand eczema: Predictive factors. J Invest Dermatol 124(5):893–897, https://doi.org/10.1111/j.0022-202X.2005.23723.x.

Mobolaji-Lawal M, Nedorost S [2015]. The role of textiles in dermatitis: an update. Curr Allergy Asthma Rep 15(4):17, https://doi.org/10.1007/s11882-015-0518-0.

Nagda NL, Koontz MD [2003]. Review of studies on flight attendant health and comfort in airliner cabins. Aviat Space Environ Med 74(2):101–109.

National Research Council [2001]. The airliner cabin environment and the health of passengers and crew. Washington, DC: National Academy Press.

OEKO-TEX® [2018]. Standard 100 by OEKO-TEX®. https://www.oeko-tex.com/en/business/certifications_and_services/ots_100/ots_100_start.xhtml. Accessed January 2, 2018.

Redlich CA [2010]. Skin exposure and asthma – is there a connection? Proc Am Thorac Soc 7(2):134–137, http://www.atsjournals.org/doi/abs/10.1513/pats.201002-025RM.

Reich HC, Warshaw EM [2010]. Allergic contact dermatitis from formaldehyde textile resins. Dermatitis, 21(2):65–76, http://journals.lww.com/dermatitis/Abstract/2010/03000/Allergic_Contact_Dermatitis_from_Formaldehyde.1.aspx. Accessed November 20, 2017.



Page 18 – HHE 2017-0034 Appendix

Rietschel RL, Fowler JF, Fisher AA [2008]. Textile and shoes. In Rietschel RL, Fowler JF, eds. Fisher's Contact Dermatitis. 6th ed. Lippincott Williams & Wilkins, Philadelphia:339–369.

Shargorodsky J, Zheng L, Stillman F, Soong A, Nava-Acien A, Reh D [2016]. The association between airline flight and sinonasal symptoms. Int Forum Allergy Rhinol 6(4):437-444, http://onlinelibrary.wiley.com/doi/10.1002/alr.21647/abstract.

Swedish Chemicals Agency [2015]. Chemicals in Textiles – Risks to human health and the environment – report of a government assignment. Article No. 361 143. Report No. 3/15: https://www.kemi.se/en/global/rapporter/2015/rapport-3-15-kemikalier-i-textilier.pdf.

Tur E, Eshkol Z, Brenner S, Maibach HI [1995]. Cumulative effect of subthreshold concentrations of irritants in humans. Am J Contact Dermatitis 6(4):216–220, https://doi.org/10.1016/1046-199X(95)90045-4.

Whelan EA, Lawson CC, Grajewski B, Petersen MR, Pinkerton LE, Ward EM, Schnorr TM [2003]. Prevalence of respiratory symptoms among female flight attendants and teachers. Occup Environ Med 60(12):929–934, http://dx.doi.org/10.1136/oem.60.12.929.

Zhong W, Xing MMQ, Pan N, Maibach HI [2006]. Textiles and human skin, microclimate, and cutaneous reactions: an overview. Cutaneous and Ocular Toxicology 25(1):23–39, http://dx.doi.org/10.1080/15569520500536600.

<u>**PROOF OF SERVICE**</u>

**STATE OF CALIFORNIA, COUNTY OF ORANGE:**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 3161 Michelson Drive, Suite 1000, Irvine, California 92612.

On February 9, 2018 I served the **REPLY IN SUPPORT OF DEMURRER TO COMPLAINT; EXHIBIT B**, on the interested parties, addressed as follows:

BALABAN & SPIELBERGER, LLP               Attorney for Plaintiffs
Daniel K. Balaban
Andrew J. Spielberger
Vanessa L. Loftus-Brewer
11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
Tel: (424) 832-7677
Fax: (424) 832-7702

KABATECK BROWN KELLNER LLP               Attorneys for Plaintiffs
Brian S. Kabateck
Engine Company No. 28 Building
644 S. Figueroa Street
Los Angeles, CA 90017
Tel: (213) 217-5000
Fax: (213) 217-5010

☒    **[BY OVERNIGHT COURIER]** I am readily familiar with the business practice of my place of employment in respect to the collection and processing of times for delivery by overnight courier. The foregoing sealed envelope was placed for collection and overnight delivery by 4:30 p.m. this date consistent with the ordinary business practice of my employment, so that it will be picked up this date with delivery charges fully prepaid at Irvine, California, and delivered the following business day in the ordinary course of business.

☐    **[BY E-MAIL]** By transmitting via e-mail the document(s) listed above to the addresses set forth below on this date before 5:00 p.m. This method of service was made pursuant to the agreement of counsel.

☒    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 9, 2018 at Irvine, California.

Name: Alexis L. Kovacs

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Poole** | **No. RG17876798** |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Twin Hill Acquisition Company, Inc.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                    Honorable   Brad Seligman_____ , Judge

Cause called for Case Management Conference on February 20, 2018.

Document Registered: Miscellaneous Attendance Sheet

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 04/17/2018 at 03:00 PM in Dept. 23.

See CMO in Agnello RG17880635

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Minutes of     02/20/2018
Entered on     02/21/2018

Chad Finke  Executive Officer / Clerk of the Superior Court

By      S. Nebraca

Deputy Clerk

**Minutes**

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole | No. <u>RG17876798</u> |
| Plaintiff/Petitioner(s) | |
| | Case Management Order |
| VS. | |
| | Date: 02/20/2018 |
| | Time: 03:00 PM |
| Twin Hill Acquisition Company, Inc. | Dept: 23 |
| | Judge: Brad Seligman |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 04/17/2018 at 03:00 PM in Dept. 23.

See CMO in Agnello RG17880635

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated: 02/20/2018

facsimile

_____

Judge Brad Seligman



# ATTENDANCE SHEET
RG17876798

Poole *VS* Twin Hill Acquisition Company,

ALAMEDA COUNTY

FEB 2 0 2018

CLERK OF THE SUPERIOR COURT
By _____ Deputy

| COUNSEL'S NAME | CLIENT'S NAME |
|---|---|
| Andrew Spielberger | All π's |
| Rob Herrington | Twin Hill |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# CourtCall® Appearance Calendar

**February 2018**
**20** Tuesday

Same Day  Feb 20 2018 2:56PM

**23 Judge Brad Seligman**
***Alameda County Superior Court-Oakland***

**03:00 PM PT    Dial:    (866) 255-0268**

| Time | Case Information | Attorney Information | |
|---|---|---|---|
| | **Case #: RG16843856**<br>**Case Name:**<br>Wadsworth vs. Ng<br>**Proceeding Type:**<br>Case Management Conference | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Valor Legal LLP<br>(415) 913-9473 ext.<br>Orestes A. Cross<br>Defendant(s), Ng.<br>8911633 |
| | **Case #: RG17849163**<br>**Case Name:**<br>Laura S. Klemme vs. Ford Motor Company<br>**Proceeding Type:**<br>Case Management Conference | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Schnader Harrison Segal & Lewis LLP<br>(415) 364-6731 ext.<br>Charles F. Harlow<br>Defendant(s), Ford Motor Company<br>8411222 |
| | **Case #: RG17851208**<br>**Case Name:**<br>Geomar Rabanal vs. P.F. Chang's<br>**Proceeding Type:**<br>Case Management Conference | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Cooley LLP ( All Offices)<br>(858) 550-6000 ext. 6037<br>Darcie Tilly<br>Defendant(s), P.F. Chang's<br>8735538 |
| | **Case #: RG17876798**<br>**Case Name:**<br>Poole vs. Twin Hill Acquisition Co. Inc<br>**Proceeding Type:**<br>CMC/Motion | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Kabateck Brown Kellner LLP<br>(213) 217-5000 ext.<br>Anastasia K. Mazzella<br>Plaintiff(s), Heather Poole<br>8908746 |
| | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Greenberg Traurig, LLP<br>(949) 732-6500 ext.<br>Leanna Costantini<br>Defendant(s), Twin Hill Acquisition<br>Company, Inc.<br>8900599 |
| | **Case #: RG17880635**<br>**Case Name:**<br>Agnello vs. Twin Hill Acquisition<br>**Proceeding Type:**<br>CMC/Motion | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Kabateck Brown Kellner LLP<br>(213) 217-5000 ext.<br>Anastasia K. Mazzella<br>Plaintiff(s), Agnello<br>8908756 |

*Leanna Constatini*

Sandra Aquino ext. 182

**Exhibit D**
**Page 434**

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Poole** | **No. RG17876798** |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Twin Hill Acquisition Company, Inc.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                     Honorable   Brad Seligman                    , Judge

Cause called for Motion: February 20, 2018.

Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.   The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not.  The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions.  (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs.  Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.)  Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).   The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.   The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by a named defendant.  (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally.  (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards.  (Compare Oddone v. Superior Court (2009) 179 Cal. App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586.  On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement.  The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of

Exhibit D
Page 435

each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Minutes of    02/20/2018
Entered on    02/21/2018

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____

Deputy Clerk

---

**Minutes**

Balaban & Spelberger, LLP
Attn:  Spielberger, Andrew J.
11999 San Vicente Blvd
Suite 345
Los Angeles, CA   90049____

Greenberg Traurig LLP
Attn:  Costantini, Leanna
1840 Century Park East
#1900
Los Angeles, CA   90067-2121

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole<br><br>                                    Plaintiff/Petitioner(s)<br><br>                    VS.<br><br><br>Twin Hill Acquisition Company, Inc.<br>                                   Defendant/Respondent(s)<br>                              (Abbreviated Title) | No. <u>RG17876798</u><br><br>Order<br><br>Demurrer to Complaint<br>Sustained |

The Demurrer to Complaint was set for hearing on 02/20/2018 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.   The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not. The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions.  (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs.  Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.)  Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).   The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.   The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by

Exhibit D
Page 437

a named defendant. (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally. (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards. (Compare Oddone v. Superior Court (2009) 179 Cal. App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586. On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement. The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Dated: 02/20/2018

facsimile

_____
Judge Brad Seligman

---

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Poole** | **No. RG17876798** |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Twin Hill Acquisition Company, Inc.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                         Honorable    Brad Seligman                  , Judge

Cause called for Motion: February 20, 2018.

Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.   The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not. The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions. (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs. Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.) Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).  The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.   The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by a named defendant. (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally.  (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards.  (Compare Oddone v. Superior Court (2009) 179 Cal. App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586.  On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement.  The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of

Exhibit D,
Page 439

each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Minutes of      02/20/2018
Entered on      02/21/2018

Chad Finke  Executive Officer / Clerk of the Superior Court

By  _____
                                 Deputy Clerk

**Minutes**

Balaban & Spelberger, LLP
Attn:  Spielberger, Andrew J.
11999 San Vicente Blvd
Suite 345
Los Angeles, CA   90049____

Greenberg Traurig LLP
Attn:  Costantini, Leanna
1840 Century Park East
#1900
Los Angeles, CA   90067-2121

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Poole

Plaintiff/Petitioner(s)

VS.

Twin Hill Acquisition Company, Inc.

Defendant/Respondent(s)
(Abbreviated Title)

No. <u>RG17876798</u>

Order

Motion to Strike
Denied

The Motion to Strike was set for hearing on 02/20/2018 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.   The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not. The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions.  (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs.  Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.)  Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).   The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.   The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers

Exhibit D
Page 441

from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by a named defendant. (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally. (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards. (Compare Oddone v. Superior Court (2009) 179 Cal. App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586. On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement. The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.


Dated:  02/20/2018

_facsimile_

_____

Judge Brad Seligman

Superior Court of California, County of Alameda
Hayward Hall of Justice
Civil Division
24405 Amador Street
Hayward, CA   94544


To:   Greenberg Traurig LLP                          Date:  02/20/2018
      Attn:  Costantini, Leanna
      1840 Century Park East
      #1900
      Los Angeles, CA    90067-2121



Re:  No. RG17876798 - Poole    VS.  Twin Hill Acquisition Company, Inc.


Your request to file Out of State Commission has been rejected for the following
reason:

      Form SUBP-030 is required and $30.00 filing fee to file Commission to Take
      Deposition Outside California.




Chad Finke  Executive Officer / Clerk of the Superior Court

            By   *Alexander R. Rosenbo Jr.* digital
                 _____
                                    Deputy Clerk

20660126

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Leanna C. Costantini (CA Bar No. 294028)<br>Greenberg Traurig, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, CA 92612<br><br>TELEPHONE NO.: 949-732-6500   FAX NO. *(Optional):* 949-732-6501<br>E-MAIL ADDRESS *(Optional):* costantinil@gtlaw.com<br>ATTORNEY FOR *(Name):* Twin Hill Acquisition Company, Inc. | **FILED<br>ALAMEDA COUNTY**<br><br>FEB 26 2018<br><br>CLERK OF THE SUPERIOR COURT<br>By _Darnekia Chin_<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson

PETITIONER/PLAINTIFF: Poole, et al.

RESPONDENT/DEFENDANT: Twin Hill Acquisition Company, Inc.

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>RG17876798 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:

   Greenberg Traurig, LLP, 3161 Michelson Drive, Suite 1000, Irvine, CA 92612

3. On *(date):* 2/23/2018    I mailed from *(city and state):* Irvine, CA
   the following **documents** *(specify):*
   Order - Demurrer to Complaint Sustained, dated 2/20/2018
   Order - Motion to Strike Denied, dated 2/20/2018

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☐ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☑ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served:
   b. **Address** of person served:

   ☑ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2/23/2018

Alexis L. Kovacs
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)                              (SIGNATURE OF PERSON COMPLETING THIS FORM)

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005] | PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL<br>(Proof of Service) | Code of Civil Procedure, §§ 1013, 1013a<br>www.courtinfo.ca.gov |
|---|---|---|



BY FAX
Page 444

POS-030(P)

| SHORT TITLE: Poole, et al. v. Twin Hill Acquisition Company, Inc. | CASE NUMBER: RG17879798 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address *(number, street, city, and zip code)* |
|---|---|
| Daniel K. Balaban; Andrew J. Spielberger | Balaban & Spielberger, LLP 11999 San Vicente Blvd., Suite 345, Los Angeles, CA 90049 |
| Brian S. Kabateck | Kabateck Brown Kellner LLP, Engine Company No. 28 Building, 644 S. Figueroa Street, Los Angeles, CA 90071 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Balaban & Spelberger, LLP
Attn: Spielberger, Andrew J.
11999 San Vicente Blvd
Suite 345
Los Angeles, CA   90049____

Greenberg Traurig LLP
Attn: Costantini, Leanna
1840 Century Park East
#1900
Los Angeles, CA   90067-2121

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole<br><br>Plaintiff/Petitioner(s)<br><br>VS.<br><br>Twin Hill Acquisition Company, Inc.<br>Defendant/Respondent(s)<br>(Abbreviated Title) | No. RG17876798<br><br>Order<br><br>Demurrer to Complaint<br>Sustained |

The Demurrer to Complaint was set for hearing on 02/20/2018 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.  The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not. The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions.  (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs.  Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.)  Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).   The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.   The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by

---

Order



a named defendant. (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally. (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards. (Compare Oddone v. Superior Court (2009) 179 Cal.App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586. On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement. The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Dated: 02/20/2018

*facsimile*

Judge Brad Seligman

Balaban & Spelberger, LLP
Attn: Spielberger, Andrew J.
11999 San Vicente Blvd
Suite 345
Los Angeles, CA   90049____

Greenberg Traurig LLP
Attn: Costantini, Leanna
1840 Century Park East
#1900
Los Angeles, CA   90067-2121

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole | No. <u>RG17876798</u> |
| Plaintiff/Petitioner(s) | |
| VS. | Order |
| | Motion to Strike |
| Twin Hill Acquisition Company, Inc. | Denied |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

The Motion to Strike was set for hearing on 02/20/2018 at 03:00 PM in Department 23 before the Honorable Brad Seligman.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Poole v. Twin Hill, RG17-876798, and Agnello v. Twin Hill, RG17-880635, are related cases and this order concerns the motions in both cases.

MOTION NO. 1.  The demurrer of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC is SUSTAINED WITH LEAVE TO AMEND.

This is a demurrer, so the court accepts the facts as alleged and construes them in favor of plaintiffs.

The court GRANTS the request of defendants for judicial notice of the unpublished trial court decision after trial in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538. Defendants do not argue that the case has claim preclusion or issue preclusion effect, and it does not. The court considers the opinion for its legal analysis.

The court does not take judicial notice of the truth of factual conclusions in court opinions.  (Steed v. Department of Consumer Affairs (2012) 204 Cal.App.4th 112, 121.)

The complaints in each case are brought by approximately 50 plaintiffs.  Each complaint asserts that in or about September 2016 American Airlines changed is employee uniforms and that defendant manufactured or provided the new uniforms (para 8, 14.)  Each complaint alleges that the uniforms contained certain hazardous chemicals (para 11), and that the employees had reactions to the chemicals (para 10).  The complaints allege claims for strict products liability, negligent products liability, and negligence.

Defendants assert that the complaints fail to allege adequate facts.  The court's analysis is guided by Bockrath v. Aldrich Chemical Co., Inc. (1999) 21 Cal.4th 71.  In Bockrath a single plaintiff asserted tort claims against 55 manufacturers of 222 products to which he was allegedly exposed in workplace over 21-year period.  The court required the plaintiff to: (1) allege he was exposed to each of the toxic materials claimed to have caused a specific illness; (2) identify each product that allegedly caused the injury; (3) allege that as a result of the exposure, the toxins entered his body; (4) allege that he suffers

Exhibit D
Page 448



from a specific illness; (5) allege that each toxin was a substantial factor in bringing about, prolonging, or aggravating that illness; and (6) allege that each toxin he absorbed was manufactured or supplied by a named defendant. (Id. at 80) Bockrath distinguished its case from the standard negligence case where causation can be pled succinctly and generally. (Id. at 78.)

While this case involves a single manufacturer, that fact alone does not necessarily preclude application of the heightened Bockrath standards. (Compare Oddone v. Superior Court (2009) 179 Cal.App.4th 813, 820 with Tellez-Corova v. Campbell-Hausfeld/Scott Fetzger Co. (2004) 129 Cal.App. 4th 577, 586. On the other hand, unlike Bockrath, this case involves a single product (the uniforms).

The court adopts a modified Bockrath requirement. The complaint currently (1) alleges each plaintiff was exposed to the uniforms that allegedly contained toxic materials; (2) identifies the uniforms as the product that allegedly caused the injury; (3) alleges that as a result of the exposure, the toxins entered the body of each plaintiff; and (6) alleges that each toxin in the uniforms was manufactured or supplied by the named defendants. It is adequate to allege these generally for all plaintiffs.

The court orders that the complaint must in the text or as an exhibit to the complaint: (4) allege for each plaintiff that she or he suffers from a specific illness and identify the illness; and (5) allege for each plaintiff the specific toxin or toxins that the plaintiff alleges was a substantial factor in bringing about, prolonging, or aggravating the illness.

Each plaintiff should know his or her specific illness. Each plaintiff who has sought medical care should have a well-founded belief as to which toxin caused the injury. Bockrath stated, "plaintiffs may, and should, allege the ... facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited." Bockrath also stated:" The actual belief standard requires more than a hunch, a speculative belief, or wishful thinking: it requires a well-founded belief." (Id. at 82.)

Plaintiffs must file any First Amended Complaint on or before 3/23/18. The First Amended Complaints should omit Tailored Brands Purchasing, LLC, which was dismissed on 2/5/18, and may add Tailored Brands, Inc., which was added on 2/9/18.

MOTION NO. 2. The motion of defendants Twin Hill Acquisition Company, Inc. and Tailored Brands Purchasing, LLC to strike claims for punitive damages is DENIED.

The complaints allege generally that defendants were aware of the danger of the uniforms before September 2016. (para 23, 24, 26, 27.) These adequately support the claim for punitive damages at the pleading stage.

The court also notes that in Afont v. Twin Hill, Orange County Superior Court, Case No. 30-2013-006255538, the court conducted the trial in February 2016, suggesting that Defendants were aware of complaints and lawsuits before September 2016.

Defendants shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Dated: 02/20/2018

_facsimile_

Judge Brad Seligman

Exhibit D
Page 449

20677877

1   KABATECK BROWN KELLNER LLP
    Brian S. Kabateck (SBN 152054)
2   bsk@kbklawyers.com
    Anastasia K. Mazzella (SBN 245201)
3   am@kbklawyers.com
    Engine Company No. 28 Building
4   644 S. Figueroa Street
    Los Angeles, CA 90017
5   Tel: (213) 217-5000
    Fax: (213) 217-5010
6
    BALABAN & SPIELBERGER, LLP
7   Daniel K. Balaban (SBN 243652)
    Andrew J. Spielberger (SBN 120231)
8   Vanessa L. Loftus-Brewer (SBN 152054)
9   11999 San Vicente Blvd., Suite 345
    Los Angeles, CA 90049
10  Tel: (424) 832-7677
    Fax: (424) 832-7702
11
12  Attorneys for Plaintiffs

13  *Additional counsel on next page*

14



FILED
ALAMEDA COUNTY

MAR 2 9 2018

CLERK OF THE SUPERIOR COURT
By _____
      J. OLIVER, Deputy

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                          COUNTY OF ALAMEDA

17

18  HEATHER POOLE, et al.                    CASE NO. RG17876798

19          Plaintiffs,                      **STIPULATION TO EXTEND PLAINTIFFS'
                                             DEADLINE TO FILE FIRST AMENDED
20  v.                                       COMPLAINT; [PROPOSED] ORDER**

21  TWIN HILL ACQUISITION COMPANY,
    INC.; a California corporation; DOES 1   **Current Filing Deadline:**
22  THROUGH 100,                             March 23, 2018

23          Defendants.                      **New proposed response date:**
                                             April 6, 2018
24

25

26

27

28

                                         1

**Exhibit D
Page 450**

BY FAX

1 | Robert J. Herrington (SBN CA 234417)
GREENBERG TRAURIG, LLP
2 | 1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
3 | Telephone: 310.586.7700
Facsimile: 310.586.7800
4 | herringtonr@gtlaw.com

5 | Leanna Costantini (SBN CA 294028)
GREENBERG TRAURIG, LLP
6 | 3161 Michelson Drive, Suite 1000
Irvine, California 92612
7 | Telephone: 949.732.6500
Facsimile: 949.732.6501
8 | costantinil@gtlaw.com

9 | Attorneys for Defendant

10 |     Plaintiffs Heather Poole, et al. (collectively "Plaintiffs"), and Defendant Twin Hill Acquisition

11 | Company, Inc. ("Twin Hill"), respectfully request the Court allow Plaintiffs an extension of time, until

12 | and including April 6, 2018, to file a First Amended Complaint.

13 |     The parties, by and through their respective counsel, hereby stipulate and agree as follows:

14 |     WHEREAS, Plaintiffs filed this action on September 27, 2017, and the related action *Agnello et*

15 | *al. v. Twin Hill Acquisition Company, Inc. et al.*, No. RG17880635 on October 30, 2017;

16 |     WHEREAS, Defendant filed Demurrers and Motions to Strike as to the *Poole* and *Agnello*

17 | complaints, which were heard on February 20, 2018;

18 |     WHEREAS, on February 20, 2018, the Court entered an Order sustaining Defendant's Demurrer

19 | with leave to amend and ordering Plaintiffs to file their amended Complaint by March 23, 2018;

20 |     WHEREAS, Plaintiffs have been actively contacting their clients and preparing an exhibit listing

21 | over 300 plaintiffs (i.e., 198 original plaintiffs plus another 100-115 new plaintiffs who were retained

22 | since October 30, 2017) and their specific symptoms/illnesses; however, Plaintiffs need additional time to

23 | prepare the Consolidated First Amended Complaint given the scope of the project;

24 |     WHEREAS, Twin Hill agreed to a two-week extension for Plaintiffs to file their First Amended

25 | Complaint, making the current deadline to file April 6, 2018;

26 | ///

27 | ///

28 |

1    **WHEREFORE, IT IS HEREBY STIPULATED** between Plaintiffs and Defendant that:

2    Plaintiffs' deadline to file their First Amended Complaint is extended until and including April 6, 2018.

3

4    DATED: March 23, 2018              GREENBERG TRAURIG, LLP

5

6                                      By
                                          Leanna Costantini
7                                         Attorneys for Defendants

8

9    DATED: March 23, 2018              BALABAN & SPIELBERGER, LLP

10

11                                     By
                                          Anastasia K. Mazzella
12                                        Attorneys for Plaintiffs

13

14    **[PROPOSED] ORDER GRANTING EXTENSION OF TIME TO FILE FIRST AMENDED**

15                              **COMPLAINT**

16        Upon presentation of the Stipulation to Extend Deadline for Plaintiffs to File First Amended

17    Complaint, and good cause appearing therefore, **IT IS HEREBY ORDERED THAT:**

18        Plaintiffs shall have until and including **April 6, 2018**, to file their First Amended Complaint.

19

20    DATED: _____, 2018

21

22                                     _____

23                                     Judge of the Superior Court

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**
Heather Poole v. Twin Hill Acquisition Company, Inc. et al
Case No. RG 17876789

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On **March 23, 2018,** I served the foregoing document described as:

**STIPULATION TO EXTEND PLAINTIFFS' DEADLINE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER**

on the interested parties in the action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| ATTORNEY | ATTORNEY |
|---|---|
| Leanna Costantini, Esq.<br>Greenberg Traurig, LLP<br>3161 Michelson Drive, Suite 1000<br>Irvine, CA 92612<br>Tel 949.732.6804<br>costantinil@gtlaw.com<br><br>Robert Herrington, Esq.<br>Greenberg Traurig LLP<br>1840 Century Park E Ste 1900<br>Los Angeles, CA 90067-7700<br>Tel (310) 586-7700<br>herringtonr@gtlaw.com<br>*Attorneys for Defendants* | Andrew J. Spielberger, Esq.<br>Daniel K. Balaban, Esq.<br>Balaban & Spielberger, LLP<br>11999 San Vicente Boulevard, Ste.345<br>Los Angeles, CA 90049<br>Tel: (424) 832-7677<br>andrew@dbaslaw.com<br>daniel@dbaslaw.com<br>*Attorneys for Plaintiffs* |

___ **BY E-MAIL**, I transmitted a true copy of said document(s) by e-mail, and no error was reported.

_X_ **MAIL** I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepared at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___ **BY FAX** I transmitted a true copy of said document(s) by facsimile machine, and no error was reported. Said fax transmission(s) were directed as indicated on the service list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**Executed on March 23, 2018, at Los Angeles, California.**

_____
Amalia Najarro

*14963694*

1   KABATECK BROWN KELLNER LLP
    Brian S. Kabateck (SBN 152054)
2   bsk@kbklawyers.com
    Anastasia K. Mazzella (SBN 245201)
3   am@kbklawyers.com
    Engine Company No. 28 Building
4   644 S. Figueroa Street
    Los Angeles, CA 90017
5   Tel: (213) 217-5000
    Fax: (213) 217-5010
6
    BALABAN & SPIELBERGER, LLP
7   Daniel K. Balaban (SBN 243652)
    Andrew J. Spielberger (SBN 120231)
8   Vanessa L. Loftus-Brewer (SBN 152054)
    11999 San Vicente Blvd., Suite 345
9   Los Angeles, CA 90049
10  Tel: (424) 832-7677
    Fax: (424) 832-7702
11
12  Attorneys for Plaintiffs

13  *Additional counsel on next page*

14

**FILED**
ALAMEDA COUNTY

APR - 6 2018

CLERK OF THE SUPERIOR COURT
By _____
                              DEPUTY

15          SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                     COUNTY OF ALAMEDA

17

18  HEATHER POOLE, et al.            CASE NO. RG17876798    **FAX FILE**

19          Plaintiffs,             **STIPULATION TO EXTEND PLAINTIFFS'
                                     DEADLINE TO FILE FIRST AMENDED
20  v.                               COMPLAINT; [PROPOSED] ORDER**

21  TWIN HILL ACQUISITION COMPANY,
    INC.; a California corporation; DOES 1   **Current Filing Deadline:**
22  THROUGH 100,                     April 6, 2018

23          Defendants.             **New proposed response date:**
                                     April 10, 2018
24

25

26

27

28

1    **WHEREFORE, IT IS HEREBY STIPULATED** between Plaintiffs and Defendant that:

2    Plaintiffs' deadline to file their First Amended Complaint is extended until and including April 10, 2018.

3

4    DATED: April 6, 2018                    GREENBERG TRAURIG, LLP

5

6                                            By _____
                                                Leanna Costantini
7                                               Attorneys for Defendants

8

9    DATED: April 6, 2018                    BALABAN & SPIELBERGER, LLP

10

11                                           By _____
                                                Andrew J. Spielberger
12                                              Vanessa Loftus-Brewer
                                                Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>**[PROPOSED] ORDER GRANTING EXTENSION OF TIME TO FILE FIRST AMENDED**</u>

2    <u>**COMPLAINT**</u>

3       Upon presentation of the Stipulation to Extend Deadline for Plaintiffs to File First Amended

4    Complaint, and good cause appearing therefore, **IT IS HEREBY ORDERED THAT:**

5       Plaintiffs shall have until and including <u>**April 10, 2018**</u>, to file their First Amended Complaint.

6

7    DATED: _____, 2018

8

9

10                                         Judge of the Superior Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">4</div>

## PROOF OF SERVICE
(C.C.P. 1013A, 20015.5)

**STATE OF CALIFORNIA**
I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 11999 San Vicente Boulevard, Suite 345 Los Angeles, CA 90049.

On **April 6, 2018** I served the foregoing documents described as: **STIPULATION TO EXTEND PLAINTIFFS' DEADLINE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER** on the interested parties in this action.

☒ by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☒ **BY MAIL**

☒ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY ELECTRONIC MAIL**
To:

☐ **BY FEDERAL EXPRESS**

☐ **BY PERSONAL SERVICE** - I caused to be delivered such envelope by hand per the service list attached.

☐ **BY FACSIMILE** - I faxed a copy of the above-described document to the interested parties as set forth on the attached mailing list.

Executed on April 6, 2018 at Los Angeles, California.

☒ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Drue Balaban
Name

Signature

1

## SERVICE LIST
### HEATHER POOLE, ET AL v. TWIN HILL ACQUISTIION COMPANTY, INC. ET AL
2
### CASE NO. RG17876798

3
Brian S, Kabateck, Esq.                        Robert J. Herrington, Esq.
**Kabateck Brown Kellner, LLP**                **Greenberg Trauring, LLP**
4
Engine Company No. 28 Building                 1840 Century Park East
5
644 South Figueroa Street                      Suite 1900
Los Angeles, CA 90017                          Los Angeles, CA 90067-2121
6
Tel: (213) 217-5000                            Tel: (310) 586-7700
Fax: (213) 217-5010                            Fax: (310) 586-7800
7
Email: bsk@kbklawyers.com                      Email: herringtonr@gtlaw.com

8
*Co-Counsel for Plaintiffs*                    *Counsel for Defendants*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*14963197*

1 | KABATECK BROWN KELLNER LLP
Brian S. Kabateck (SBN 152054)
2 | bsk@kbklawyers.com
Anastasia K. Mazzella (SBN 245201)
3 | am@kbklawyers.com
Engine Company No. 28 Building
4 | 644 S. Figueroa Street
Los Angeles, CA 90017
5 | Tel: (213) 217-5000
Fax: (213) 217-5010
6 |
7 | BALABAN & SPIELBERGER, LLP
Daniel K. Balaban (SBN 243652)
8 | Andrew J. Spielberger (SBN 120231)
Vanessa L. Loftus-Brewer (SBN 152054)
9 | 11999 San Vicente Blvd., Suite 345
Los Angeles, CA 90049
10 | Tel: (424) 832-7677
Fax: (424) 832-7702
11 |
12 | Attorneys for Plaintiffs
13 | *Additional counsel on next page*

**FILED**
ALAMEDA COUNTY

APR 1 0 2018

CLERK OF THE SUPERIOR COURT
By _____
                          Deputy

14 |
15 |                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
16 |                        **COUNTY OF ALAMEDA**
17 |
18 | HEATHER POOLE, et al.          | CASE NO. RG17876798    **FAX FILE**
19 |        Plaintiffs,             | **STIPULATION TO EXTEND PLAINTIFFS'**
                                    | **DEADLINE TO FILE FIRST AMENDED**
20 | v.                             | **COMPLAINT; [~~PROPOSED~~] ORDER**
21 | TWIN HILL ACQUISITION COMPANY, |
INC.; a California corporation; DOES 1 | **Current Filing Deadline:**
22 | THROUGH 100,                   | April 6, 2018
23 |        Defendants.             | **New proposed response date:**
                                    | April 10, 2018
24 |
25 |
26 |
27 |
28 |

1
STIPULATION TO EXTEND PLAINTIFFS' DEADLINE TO FILE FIRST AMENDED COMPLAINT

Robert J. Herrington (SBN CA 234417)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
herringtonr@gtlaw.com

Leanna Costantini (SBN CA 294028)
GREENBERG TRAURIG, LLP
3161 Michelson Drive, Suite 1000
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
costantinil@gtlaw.com

Attorneys for Defendant

Plaintiffs Heather Poole, et al. (collectively "Plaintiffs"), and Defendant Twin Hill Acquisition Company, Inc. ("Twin Hill"), respectfully request the Court allow Plaintiffs an extension of time, until and including **April 10, 2018**, to file a First Amended Complaint.

The parties, by and through their respective counsel, hereby stipulate and agree as follows:

**WHEREAS**, Plaintiffs filed this action on September 27, 2017, and the related action *Agnello et al. v. Twin Hill Acquisition Company, Inc. et al.*, No. RG17880635 on October 30, 2017;

**WHEREAS**, Defendant filed Demurrers and Motions to Strike as to the *Poole* and *Agnello* complaints, which were heard on February 20, 2018;

**WHEREAS**, on February 20, 2018, the Court entered an Order sustaining Defendant's Demurrer with leave to amend and ordering Plaintiffs to file their amended Complaint by March 23, 2018;

**WHEREAS**, Plaintiffs have been actively contacting their clients and preparing an exhibit listing over 300 plaintiffs (i.e., 198 original plaintiffs plus another 100-115 new plaintiffs who were retained since October 30, 2017) and their specific symptoms/illnesses; however, Plaintiffs need additional time to prepare the Consolidated First Amended Complaint given the scope of the project;

**WHEREAS**, Twin Hill agreed to a two-week extension for Plaintiffs to file their First Amended Complaint, making the current deadline to file April 6, 2018;

**WHEREAS**, Twin Hill agreed to a further two business day extension for Plaintiffs to file their First Amended Complaint, making the current deadline to file April 10, 2018;

1

<u>PROOF OF SERVICE</u>
(C.C.P. 1013A, 20015.5)

2

3      **STATE OF CALIFORNIA**
       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen
4  years and not a party to the within action; my business address is 11999 San Vicente Boulevard, Suite
   345 Los Angeles, CA 90049.

5

       On **April 6, 2018** I served the foregoing documents described as: **STIPULATION TO EXTEND**
6  **PLAINTIFFS' DEADLINE TO FILE FIRST AMENDED COMPLAINT; [PROPOSED] ORDER**
   on the interested parties in this action.
7

8  ☒    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached
   mailing list.

9  ☒    **BY MAIL**

10

11     ☒    As follows:  I am "readily familiar" with the firm's practice of collection and processing
           correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on
           that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course
12         of business.  I am aware that on motion of the party served, service is presumed invalid if postal
           cancellation date or postage meter date is more than one day after date of deposit for mailing in
13         affidavit.

14  ☒    **BY ELECTRONIC MAIL**
         To:
15

16  ☐    **BY FEDERAL EXPRESS**

17  ☐    **BY PERSONAL SERVICE** - I caused to be delivered such envelope by hand per the service list
         attached.

18  ☐    **BY FACSIMILE** - I faxed a copy of the above-described document to the interested parties as set
   forth on the attached mailing list.

19

       Executed on April 6, 2018 at Los Angeles, California.
20

21  ☒    **(State)** I declare under penalty of perjury under the laws of the State of California that the above is
   true and correct.

22

   Drue Balaban
23 Name                                                    Signature

24

25

26

27

28

1

SERVICE LIST
HEATHER POOLE, ET AL v. TWIN HILL ACQUISTION COMPANY, INC. ET AL
2                              CASE NO. RG17876798

3      Brian S, Kabateck, Esq.                    Robert J. Herrington, Esq.
4      **Kabateck Brown Kellner, LLP**            **Greenberg Trauring, LLP**
       Engine Company No. 28 Building             1840 Century Park East
5      644 South Figueroa Street                  Suite 1900
       Los Angeles, CA 90017                      Los Angeles, CA 90067-2121
6      Tel: (213) 217-5000                        Tel: (310) 586-7700
       Fax: (213) 217-5010                        Fax: (310) 586-7800
7      Email: bsk@kbklawyers.com                  Email: herringtonr@gtlaw.com

8
       *Co-Counsel for Plaintiffs*                *Counsel for Defendants*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED BY FAX
ALAMEDA COUNTY

April 10, 2018

CLERK OF
THE SUPERIOR COURT
By Burt Moskaira, Deputy

CASE NUMBER:
RG17876798

1 | Robert J. Herrington (SBN CA 234417)
GREENBERG TRAURIG, LLP
2 | 1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
3 | Telephone: 310.586.7700
Facsimile: 310.586.7800
4 | herringtonr@gtlaw.com

5 | Leanna Costantini (SBN CA 294028)
GREENBERG TRAURIG, LLP
6 | 3161 Michelson Drive, Suite 1000
Irvine, California 92612
7 | Telephone: 949.732.6500
Facsimile: 949.732.6501
8 | costantinil@gtlaw.com

9 | Attorneys for Defendant, Twin Hill
Acquisition Company, Inc.
10 |
Additional counsel on next page
11 |

12 |

13 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14 | **COUNTY OF ALAMEDA**

15 |
HEATHER POOLE, et al.,
16 |
Plaintiffs,
17 |
v.
18 |
TWIN HILL ACQUISITION COMPANY,
19 | INC.; a California corporation; DOES 1
THROUGH 100,
20 |
Defendants.
21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

CASE NO. RG17876798

ASSIGNED FOR ALL PURPOSES TO:
JUDGE SELIGMAN
DEPARTMENT 23

**JOINT COMPLEX CASE MANAGEMENT
CONFERENCE STATEMENT**

Date:   April 17, 2018
Time:  3:00 p.m.
Dept:  23

1
JOINT COMPLEX CASE MANAGEMENT CONFERENCE STATEMENT

Exhibit D
Page 464

1 | BALABAN & SPIELBERGER, LLP
Daniel K. Balaban
2 | Andrew J. Spielberger
Vanessa L. Loftus-Brewer
3 | 11999 San Vicente Blvd., Suite 345
4 | Los Angeles, CA 90049
Tel: (424) 832-7677
5 | Fax: (424) 832-7702

6 | KABATECK BROWN KELLNER LLP
Brian S. Kabateck
7 | Anastasia Mazzella
Engine Company No. 28 Building
8 | 644 S. Figueroa Street
Los Angeles, CA 90017
9 | Tel: (213) 217-5000
Fax: (213) 217-5010
10 |

11 | *Attorneys for Plaintiffs*

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

2

JOINT COMPLEX CASE MANAGEMENT CONFERENCE STATEMENT

1    Plaintiffs Heather Poole, et al. and Defendant Twin Hill Acquisition Company, Inc. ("Twin
2  Hill"), submit this Complex Case Management Statement in preparation for the complex case
3  management conference scheduled for April 17, 2018.

4    **A.   FACTUAL SUMMARY**

5    **Plaintiffs' Statement**

6    Plaintiffs in the Poole Complaint (hereinafter "Plaintiffs") are and were actual employees of
7  American Airlines Inc. or of commuter airline companies that had working relationships with American
8  Airlines, Inc. In 2016, American Airlines implemented a mandatory change of uniforms for its workforce
9  of approximately 65,000 employees worldwide. These uniforms were manufactured and/or distributed by
10 Twin Hill Acquisition Company Inc. ("Twin Hill"). In or around September and/or October 2016,
11 American Airlines employees, including the 99 plaintiffs named in the Poole Complaint, began wearing
12 the uniforms. Almost immediately, people wearing the uniforms began experiencing (and reporting to
13 American Airlines) a plethora of health problems, including, but not limited to: dermatological injury,
14 respiratory injury, neurologic injury and allergenic/immunological injuries including, but not limited to,
15 skin rashes, allergenic skin reactions, ear, nose and throat irritation and inflammation, nerve injuries,
16 allergenic and immunological hypersensitivity, auto-immune dysfunction and injuries and numerous
17 other symptoms involving the dermatological, respiratory, neurological and immunological systems.
18 Twin Hill and American Airlines hired entities to test the subject uniforms, and the test results show the
19 presence of synthetic materials which contain, but are not limited to, at least the following toxic
20 chemicals: formaldehyde, pentachlorophenol, monochlorophenols, tetrachlorophenols, trichlorophenols,
21 toluene, cobalt, cadmium, captafol, chromium, copper, nickel, antimony, benzyl benzoate, hexyl
22 cinnamic aldehyde, benzaldehyde. It is well-documented that these chemicals can cause injury to human
23 beings either alone or in combination with each other. In this case, Plaintiffs suffered and continue to
24 suffer physical and emotional injuries caused by wearing, or being in proximity of other employees
25 wearing, the subject uniforms. Plaintiffs filed this mass action (i.e., mass tort) lawsuit on September 27,
26 2017 against Twin Hill and Tailored Brands Purchasing Inc. ("Tailored Brands") alleging that the
27 uniforms are defective in that they pose an unreasonable risk of physical harm to those who wear and/or
28 are exposed to them. Based on the foregoing facts, Plaintiffs filed claims for strict products liability,

3

1  negligent products liability and general negligence. Plaintiffs claim Twin Hill manufactured and
2  distributed the subject uniforms and is a wholly-owned subsidiary of Tailored Brands. The theory against
3  Tailored Brands is that it is a joint venture with Twin Hill (e.g., share in profits). However, the exact
4  nature and role of Tailored Brands in this action is subject to future discovery. Plaintiffs note that Twin
5  Hill was a defendant in a prior case involving toxicology claims by employees of Alaska Airlines. Twin
6  Hill prevailed based on a lack of toxicological medical causation evidence provided by Plaintiffs experts
7  in that case. Plaintiffs case herein is not a toxicology case and Plaintiffs in this case have significant
8  amounts of medical causation evidence to support Plaintiffs causation claims.

9      Although it is premature to provide an accurate estimate of damages suffered by each Plaintiff,
10  Plaintiffs seek monetary relief for past and future medical expenses, loss of earning capacity, in addition
11  to lost earnings, past, present and future (many Plaintiffs have filed but been denied Workers'
12  Compensation benefits), general damages in excess of $50,000 for pain and suffering, prejudgment
13  interest, punitive damages, cost of suit, and for such other relief the court may deem just and proper.

14      **Defendant's Statement**

15      American Airlines and Twin Hill are parties to a contract to supply uniforms to flight attendants
16  and other "above the wing" employees. The uniforms consist of several different garment options that
17  American Airlines employees could order, including garments made of a wool-blend fabric, a non-wool
18  blend and certain all-cotton options. Twin Hill uniforms are produced at mills that have OEKO-TEX
19  Standard 100 certifications, which is a voluntary, independent certification for finished fabrics. The
20  OEKO-TEX Standard 100 is the most stringent certification Twin Hill is aware of anywhere in the world,
21  and is designed to certify the absence of banned and harmful substances, to limit concentrations of
22  potentially harmful substances, and to deliver assurance of product safety. Many of the common clothing
23  items available for purchase at name-brand stores do not satisfy OEKO-TEX Standard 100.

24      Twin Hill began shipping uniforms in May 2016, and all employees began wearing the uniforms
25  on the job in late September 2016. After Twin Hill became aware of reports of American Airlines
26  employees with reactions that they claimed were attributable to the uniforms, Twin Hill conducted
27  additional extensive testing through an independent testing lab called TUV Rhineland. The lab tested
28  uniforms for chemicals known or suspected to affect human health, substances reported to be sensitizers

**Exhibit D**
**Page 467**

1   in scientific literature, as well as substances identified in media reports regarding the American Airlines

2   uniforms. Twin Hill also retained toxicologists accredited by the American Board of Toxicology to

3   evaluate the test results. The testing and toxicological evaluations did not identify any substances known

4   or suspected to affect human health and demonstrated that Twin Hill's uniforms fully comply with

5   OEKO-TEX Standard 100. The bottom line is that Twin Hill's uniforms are among the safest garments

6   anywhere in the world and could not be the cause of the health issues claimed by Plaintiffs.

7           Last year, Twin Hill prevailed at trial on a virtually identical set of claims asserted by

8   approximately 164 Alaska Airlines employees. After a trial on general causation, the Honorable William

9   Claster found that Twin Hill's uniforms are not capable of causing injury because the levels of any

10   chemicals or other substances identified in the uniform pieces were far too low to cause any adverse

11   health effect. *Afont v. Twin Hill Acquisition Company, Inc.*, Case No. 30-2013-00625538 (Cal. Super.

12   Ct. June 9, 2016). This case is an *Afont* redux. Plaintiffs are 198 out of approximately 65,000 American

13   Airlines employees who received uniforms supplied by Twin Hill in 2016.[1] As in *Afont*, Plaintiffs assert

14   claims for products liability and negligence based on vague allegations about reactions to uniforms that

15   Judge Claster found were not capable of causing injury.

16       **B.**    **PARTIES**

17       **Plaintiffs:**     There are 99 individual plaintiffs named in the instant Complaint entitled *Heather*

18   *Poole, et al. v. Twin Hill Acquisition Company Inc.*, et al., Case No. RG17876798, filed on September 27,

19   2017 (hereinafter "Poole" Complaint). For the sake of brevity, the parties will not list all 99 plaintiffs

20   here since they are already identified in the Complaint.

21           Plaintiffs' counsel does not anticipate naming additional plaintiffs to the Poole Complaint,

22   however, the Court should note that Plaintiffs' counsel filed a second complaint on behalf of 99

23   additional individuals on October 30, 2017, entitled *Melodie Agnello, et al. v. Twin Hill Acquisition*

24   *Company Inc., et al.*, Case No. RG17880635 ("Agnello" Complaint). Plaintiffs filed a Notice of Related

25

26

27   [1] There are 99 plaintiffs named in this action. Another 99 plaintiffs filed an identical lawsuit in this court
    on October 30, 2017. *See Agnello, et al. v. Twin Hill Acquisition Company, Inc., et al.*, Case No.
28   RG17880635.

**Exhibit D**
**Page 468**

1 Cases on November 3, 2017 to relate the Poole and Agnello cases, however, the Court has not issued an
2 order deeming the cases related.

3     On February 20, 2018, the Court sustained, with leave to amend, Defendant's Demurrers to the
4 Poole and Agnello complaints. The Court ordered Plaintiffs to file a First Amended Complaint. At the
5 CMC on the same date, the Court suggested Plaintiffs consolidate the cases into one amended complaint
6 to streamline the litigation. After receiving two extensions from defense counsel, Plaintiffs filed a First
7 Amended Complaint ("FAC"), jointly listing the Poole and Agnello plaintiffs on April 10, 2018. The
8 FAC lists an additional 126 individuals who were retained since the Agenello complaint was filed in
9 October. These new plaintiffs are adopting the allegations in the FAC, however, since the cases have not
10 been ordered consolidated, Plaintiffs believe these plaintiffs should be assigned new case numbers and
11 their cases related to the original Poole and Agnello actions. The purpose of Plaintiffs listing the new
12 plaintiffs on the FAC is to avoid filing multiple demurrers, motions to strike, answers, hearings, etc.
13 Plaintiffs' counsel intends to raise this issue with the Court at the CMC on April 17, 2018 for further
14 discussion and clarification on whether the new plaintiffs should be assigned separate case numbers
15 (perhaps in two groups of less than 100 plaintiffs). Once the parties have agreed on an operative
16 complaint, the parties can discuss establishing a master complaint and adding plaintiffs via Notice of
17 Adoption.

18     The FAC also names Tailored Brands, Inc. as a new defendant.

19     **Defendant:**   Plaintiffs' initial complaint named two defendants: (1) Twin Hill, which
20 distributed the subject uniforms, and (2) Tailored Brands Purchasing, LLC ("TBL"), which Plaintiffs
21 alleged on information and belief is the parent corporation of Twin Hill Acquisition Company. On
22 December 11, 2017, TBL filed a motion to quash service of summons for lack of personal jurisdiction.
23 Before the Court ruled on TBL's motion to quash, on February 7, 2018, Plaintiff voluntarily dismissed
24 TBL from the action and sought to amend the Complaint to add Twin Hill's parent company, Tailored
25 Brands, Inc. ("TBI"), as a defendant. In the Court's February 20, 2018 granting Twin Hill's demurrer to
26 the original complaint, the Court held that Plaintiffs may add TBI as a defendant in their amended
27 complaint. As of the time of this filing, Twin Hill is the only named defendant.

28 ///

C.     **PROPOSED STRUCTURE OF REPRESENTATION**

The parties do not anticipate a lead counsel or committee representation structure for this case. Plaintiffs in the Poole and Agnello cases, as well as the anticipated third and fourth complaints, are represented equally by the law firms of Kabateck Brown Kellner, LLP and Balaban & Spielberger LLP. Defendant Twin Hill is represented by the law firm of Greenberg Traurig, LLP.

D.     **DEADLINES AND LIMITS ON JOINDER AND AMENDED PLEADINGS**

At the moment, Plaintiffs do not anticipate adding any additional defendants to this case, and until discovery takes place, it is premature to set a deadline or limit on joinder of parties. As for amended pleadings, Plaintiffs filed the aforementioned FAC on April 10, 2018. Plaintiffs believe there is a window of at least nine months for additional plaintiffs to file timely claims. The Court should note that Plaintiffs reside in a variety of states which may have longer statutes of limitations for personal injury claims, and the parties have not yet addressed any choice or conflict of law issues.

E.     **PROPOSED LITIGATION SCHEDULE**

The Parties agree that the current stage of the litigation is too early to determine how the case should be scheduled. As such, the Parties request that scheduling be deferred until Defendants have filed answers to all of the Complaints in the related cases.

F.     **POTENTIAL EVIDENTIARY ISSUES**

The Parties anticipate that discovery will involve the exchange of potentially confidential or protected documents, such as Plaintiffs' medical records. The Parties will meet and confer in drafting a proposed confidentiality order to govern the exchange and handling of confidential or protected information.

G.     **PROCEDURAL POSTURE**

(1)     Unserved Parties – None at this time.

(2)     Unserved or unfiled Cross-Complaints – None at this time.

(3)     Related Actions pending any jurisdiction and the potential for coordination or consolidation:

- Second Filed Action in Alameda County: *Melodie Agnello, et al. v. Twin Hill Acquisition Company Inc.* (Case No. RG7880635). As stated above, Plaintiffs filed a Notice of Related Cases

7

**Exhibit D**
**Page 470**

1      on November 3, 2017 to relate the Poole and Agnello cases, however, the Court has not issued an

2      order deeming the cases related. The Parties agree that hearings, conferences, and other deadlines

3      for the Poole and Agnello cases, as well as any future related lawsuits, should be coordinated.

4      • Chicago, IL Class Action: Plaintiffs are informed and believe there is a putative class action filed

5      in the United States District Court for the Northern District of Illinois, Eastern Division, entitled

6      *Thor Zurbriggen v. Twin Hill Acquisition Inc.* (Case No. 1:17-cv-05648) filed by the law firm

7      Siprut PC on August 2, 2017. Plaintiffs' counsel has reached out to the Siprut firm in Illinois to

8      learn more about how that case might impact the California litigation.

9      (4)    Possible Jurisdiction or Venue Issues – None at this time

10      (5)    Status of Discovery – because the parties are still in the pleading phase, party discovery

11 has not commenced. Parties are working together to develop an efficient discovery plan and anticipate

12 discovery in the form of depositions, plaintiff fact sheets (or some other cohesive, efficient format for

13 defendants to obtain discovery from individual plaintiffs), document production, etc.

14      Twin Hill has begun pursuing third-party discovery from flight attendant unions known to have

15 information relevant to Plaintiffs' claims. Twin Hill served business records subpoenas on the

16 Association of Professional Flight Attendants (APFA) in Texas and Association of Flight Attendants-

17 CWA (AFA) in Washington DC, requesting documents regarding their testing of the uniforms,

18 complaints they received regarding the uniforms, as well as potential alternative causes of Plaintiffs'

19 alleged health symptoms. APFA served its responses on March 27, 2018, and produced documents on

20 March 29, 2018. AFA served its responses and document production on April 9, 2018. Twin Hill is in

21 the process of meeting and conferring with APFA and AFA's counsel regarding their responses.

22      (6)    Unresolved Law & Motion Matters –. There are no current law and motion matters

23 pending.

24      (7)    ADR – it is premature at this juncture to request or oppose any ADR proceedings.

25      (8)    Severance of Issues – it is premature to request any bifurcation or severance of issues for

26 trial;

27      (9)    Calendar Conflicts – the parties do not currently anticipate any calendar conflicts that may

28 affect setting a trial date.

1   **H.   STREAMLINING LITIGATION**

2   The Parties are continuing to discuss potential ways the litigation can be streamlined, which may

3   depend upon the outcome of Defendants' pending motions, as well as the amount and scope of any future

4   related lawsuits. The Parties agree that hearings, conferences, and other deadlines for this case should be

5   coordinated with the pending related matter, *Agnello v. Twin Hill*, No. RG17880635, as well as any

6   future related lawsuits. The Parties will work together to come up with a mutually agreeable protocol for

7   efficiently handling discovery, including the creation of a fact sheet tailored to the case, staggered

8   discovery deadlines, and a common depository for the release of Plaintiffs' medical records.

9   Further, the Parties agree that the use of an electronic case management system, such as

10  CaseAnywhere, for e-filing and scheduling would also assist in streamlining the litigation.

11

12

13

14  DATED: April 10, 2018                    GREENBERG TRAURIG, LLP

15

16                                          By

17                                          Leanna Costantini
                                            Attorneys for Defendant

18

19  DATED: April 10, 2018                    KABATECK BROWN KELLNER LLP & BALABAN &

20                                          SPIELBERGER

21

22                                          By

23                                          Anastasia Mazzella
                                            Attorneys for Plaintiffs

24

25

26

27

28

9
JOINT COMPLEX CASE MANAGEMENT CONFERENCE STATEMENT

**Exhibit D**
**Page 472**

1

## PROOF OF SERVICE

2

### STATE OF CALIFORNIA, COUNTY OF ORANGE:

3

4    I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 3161 Michelson Drive, Suite 1000, Irvine, California 92612.

5

6    On April 10, 2018 I served the **JOINT COMPLEX CASE MANAGEMENT CONFERENCE STATEMENT**, on the interested parties, addressed as follows:

7                                                    Attorney for Plaintiffs

BALABAN & SPIELBERGER, LLP
8    Daniel K. Balaban
Andrew J. Spielberger
9    Vanessa L. Loftus-Brewer
11999 San Vicente Blvd., Suite 345
10   Los Angeles, CA 90049
Tel: (424) 832-7677
11   Fax: (424) 832-7702

12

13   KABATECK BROWN KELLNER LLP            Attorneys for Plaintiffs
Brian S. Kabateck
14   Engine Company No. 28 Building
644 S. Figueroa Street
15   Los Angeles, CA 90017
Tel: (213) 217-5000
16   Fax: (213) 217-5010

17   ☒    **[BY MAIL]** By placing the document(s) listed above in a sealed envelope with postage thereon
18        fully prepaid, in the United States mail at Irvine, California addressed as set forth below. I am
         familiar with the firm's practice of collection and processing correspondence for mailing. Under
19        that practice it would be deposited with the U.S. postal service on that same day with postage
         thereon fully prepaid in the ordinary course of business.

20   ☐    **[BY E-MAIL]** By transmitting via e-mail the document(s) listed above to the addresses set forth
21        below on this date before 5:00 p.m. This method of service was made pursuant to the agreement
         of counsel.

22   ☒    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
23        above is true and correct.

24   Executed on April 10, 2018 at Irvine, California.

25

26                                                Name: Alexis L. Kovacs

27

28

1

LA 133306430v1

Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Poole** | **No. RG17876798** |
| Plaintiff/Petitioner(s) | |
| **VS.** | **Minutes** |
| **Twin Hill Acquisition Company, Inc.** | |
| Defendant/Respondent(s) | |
| **(Abbreviated Title)** | |

Department    23                          Honorable   Brad Seligman_____, Judge

Cause called for Case Management Conference on April 17, 2018.

Document Registered: Miscellaneous Attendance Sheet

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management
Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 05/15/2018 at 03:00 PM in Dept. 23.

Parties to discuss discovery plan.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in
compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-
110,  no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED
TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A
RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

OTHER ORDERS

1. The court relates this case to Agnello RG17880635, and consolidates these cases for pre-trial purposes.
The Poole case shall be the lead case and all CMC Statements and motions shall be filed under this case
number.
2. Plaintiffs will file  2d Amended complaint(s) in Poole, Agnello, and a third case involving new
plaintifrfs, which the court will relate to Poole and shall be subject to the same consolidation order.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-
represented parties, and file proof of service.

Minutes of    04/17/2018
Entered on    04/18/2018

Chad Finke  Executive Officer / Clerk of the Superior Court

By            [signature]  digital

**Minutes**

Deputy Clerk

**Exhibit D**
**Page 475**

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole<br><br>                    Plaintiff/Petitioner(s)<br><br>                    VS.<br><br><br>Twin Hill Acquisition Company, Inc.<br><br>                    Defendant/Respondent(s)<br>                    (Abbreviated Title) | No. <u>RG17876798</u><br><br>Case Management Order<br><br>Date:  04/17/2018<br>Time:  03:00 PM<br>Dept:  23<br>Judge:  Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 05/15/2018 at 03:00 PM in Dept. 23.

Parties to discuss discovery plan.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110,  no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

OTHER ORDERS

1. The court relates this case to Agnello RG17880635, and consolidates these cases for pre-trial purposes.  The Poole case shall be the lead case and all CMC Statements and motions shall be filed under this case number.
2. Plaintiffs will file  2d Amended complaint(s) in Poole, Agnello, and a third case involving new plaintifrfs, which the court will relate to Poole and shall be subject to the same consolidation order.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.


Dated:  04/17/2018

                                                    facsimile

                                                    _____
                                                    Judge Brad Seligman

A.S.   20909343

# ATTENDANCE SHEET
RG17876798
Poole v. Twin Hill Acquisition

FILED
ALAMEDA COUNTY

APR 1 7 2018

CLERK OF THE SUPERIOR COURT
Deputy

| COUNSEL'S NAME | CLIENT'S NAME |
|---|---|
| Andrew Spielberger | Poole, et al (π's) |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# CourtCall® Appearance Calendar

**April 2018**                                                      1st Revision  Apr 17 2018 11:23AM

**17** Tuesday

**23  Judge Brad Seligman**

**_Alameda County Superior Court-Oakland_**

03:00 PM PT      Dial:    (866) 255-0268

| Time | Case Information | Attorney Information | |
|------|------------------|---------------------|---|
| | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | WFBM, LLP<br>(714) 634-2522 ext. 3610<br>Katie A. Stricklin<br>Defendant(s), Wyeth Pharmaceuticals Inc.<br>8971081 |
| | **Case #: RG17876798**<br>**Case Name:**<br>Poole vs. Twin Hill Acquisition Co. Inc<br>**Proceeding Type:**<br>Case Management Conference | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Kabateck Brown Kellner LLP<br>(213) 217-5000 ext.<br>Anastasia K. Mazzella ✓<br>Plaintiff(s), Heather Poole<br>9021303 |
| | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Greenberg Traurig, LLP<br>(310) 586-7700 ext.<br>Robert J. Herrington ✓<br>Defendant(s), Twin Hill Acquisition Co. Inc<br>9010360 |
| | | Firm:<br>Phone:<br>Contact:<br>For:<br><br>CCID: | Greenberg Traurig, LLP<br>(949) 732-6500 ext.<br>Leanna Costantini   /<br>Defendant(s), Twin Hill Acquisition Company, Inc.<br>8913877 |
| | **Case #: RG17879706**<br>**Case Name:**<br>Englander vs. Wal-Mart Stores Inc.<br>**Proceeding Type:**<br>Complex Determination | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Troutman Sanders LLP<br>(949) 622-2737 ext.<br>Michael McCarthy<br>Defendant(s), Wal-Mart Stores<br>9022549 |
| | **Case #: RG17883040**<br>**Case Name:**<br>DiPirro vs. 99 High Tide Collective<br>**Proceeding Type:**<br>Complex Determination | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Nelson Hardiman LLP<br>(310) 203-2800 ext.<br>Aaron C. Lachant<br>Defendant(s), 99 High Tide<br>9022458 |
| | | Firm:<br>Phone:<br>Contact:<br>For:<br>CCID: | Bush & Henry<br>(707) 321-5028 ext.<br>David Bush ✓<br>Plaintiff(s), Michael DiPirro<br>8997783 |

**Exhibit D**
**Page 478**

21142158

1  **BALABAN & SPIELBERGER, LLP**
   11999 San Vicente Blvd., Suite 345
2  Los Angeles, CA 90049
   Tel: (424) 832-7677
3  Fax: (424) 832-7702
4  Daniel K. Balaban, SBN 243652
   Andrew J. Spielberger, SBN 120231
5  Vanessa L. Loftus-Brewer, SBN 265213

6  **KABATECK BROWN KELLNER LLP**
   Engine Company No. 28 Building
7  644 South Figueroa Street,
   Los Angeles, CA 90017
8  Tel: (213) 217-5000
   Fax: (213) 217-5010
9  Brian S, Kabateck, SBN 152054
10
   Attorneys for <u>Plaintiffs</u>
11

12            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
13
14                    **FOR THE COUNTY OF ALAMEDA**
15

16  HEATHER POOLE, et al.,                    **Case No.: RG17876798**
17                Plaintiffs,                  ASSIGNED FOR ALL PURPOSES TO:
                                               JUDGE BRAD SELIGMAN, DEPT 23
          vs.
18
    TWIN HILL ACQUISITION COMPANY, INC.;      **NOTICE OF RULING RE CASE**
19  a California corporation, TAILORED BRANDS  **MANAGEMENT ORDER AND MINUTES**
    PURCHASING, LLC; DOES 1 THROUGH 100
20                                                        **BY FAX**
21                Defendant(s).
                                               Action Filed:  September 27, 2017
22
23
24
25
26
27
28

                                    1

FILED
ALAMEDA COUNTY

APR 26 2018

CLERK OF THE SUPERIOR COURT
By _____
                        Deputy

BALABAN & SPIELBERGER, LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1  **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2     **PLEASE TAKE NOTICE** that on April 17, 2018, Judge Brad Seligman of the Alameda

3  County Superior Court issued a Case Management Order. A true and correct copy of the order is

4  attached hereto as **Exhibit 1.**

5     **PLEASE TAKE FURTHER NOTICE** that on April 18, 2018, the Clerk of the Alameda

6  County Superior Court entered Minutes of the Case Management Conference on April 17, 2018. A

7  true and correct copy of the minutes is attached hereto as **Exhibit 2.**

8

9     Plaintiff was ordered to give notice of the Court's order and minutes.

10

11  DATED: April 25, 2018

**BALABAN & SPIELBERGER, LLP**

12

13

14                    Daniel K. Balaban, Esq.
                    Andrew J. Spielberger, Esq.
15                   Vanessa L. Loftus-Brewer, Esq.
                    Attorneys for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin)* BALABAN & SPIELBERGER LLP 11999 SAN VICENTE BOULEVARD, SUITE 345 LOS ANGELES, CALIFORNIA 90049

# EXHIBIT 1



## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Poole | No. <u>RG17876798</u> |
|                Plaintiff/Petitioner(s) | Case Management Order |
| VS. | Date: 04/17/2018 |
| Twin Hill Acquisition Company, Inc. | Time: 03:00 PM |
|              Defendant/Respondent(s)<br>       (Abbreviated Title) | Dept: 23 |
| | Judge: Brad Seligman |

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 05/15/2018 at 03:00 PM in Dept. 23.

Parties to discuss discovery plan.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

OTHER ORDERS

1. The court relates this case to Agnello RG17880635, and consolidates these cases for pre-trial purposes. The Poole case shall be the lead case and all CMC Statements and motions shall be filed under this case number.
2. Plaintiffs will file 2d Amended complaint(s) in Poole, Agnello, and a third case involving new plaintifrfs, which the court will relate to Poole and shall be subject to the same consolidation order.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Any delay in the trial, caused by non-compliance with any order contained herein, shall be the subject of sanctions pursuant to CCP 177.5.

Dated: 04/17/2018

facsimile

_____
Judge Brad Seligman

# EXHIBIT 2



Superior Court of California, County of Alameda
Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| **Poole** | No. RG17876798 |
| Plaintiff/Petitioner(s) | |
| VS. | **Minutes** |
| **Twin Hill Acquisition Company, Inc.** | |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

Department    23                    Honorable   Brad Seligman            , Judge

Cause called for Case Management Conference on April 17, 2018.

Document Registered: Miscellaneous Attendance Sheet

ORDER re: CASE MANAGEMENT

The Court has ordered the following at the conclusion of a judicially supervised Case Management Conference.

FURTHER CONFERENCE

A further Case Management Conference is scheduled for 05/15/2018 at 03:00 PM in Dept. 23.

Parties to discuss discovery plan.

Plaintiff and Defense Counsel shall file Updated Case Management Statements (preferably joint) in compliance with CRC § 3.725, preferably on pleading paper rather than on Judicial Council Form CM-110, no later than five (5) court days prior to the CMC. PARTIES ARE STRONGLY ENCOURAGED TO SERVE COURTESY COPIES ON THE COURT BECAUSE OF DELAYS IN SCANNING AS A RESULT OF BUDGET SHORTFALLS IN ALAMEDA COUNTY.

OTHER ORDERS

1. The court relates this case to Agnello RG17880635, and consolidates these cases for pre-trial purposes. The Poole case shall be the lead case and all CMC Statements and motions shall be filed under this case number.
2. Plaintiffs will file  2d Amended complaint(s) in Poole, Agnello, and a third case involving new plaintifrfs, which the court will relate to Poole and shall be subject to the same consolidation order.

NOTICES

Counsel for Plaintiff(s) must forthwith serve a copy of this order on all counsel of record and self-represented parties, and file proof of service.

Minutes of     04/17/2018
Entered on     04/18/2018

Chad Finke  Executive Officer / Clerk of the Superior Court

By _____  digital

---

Minutes

M12108748
**Exhibit D**
**Page 484**

Deputy Clerk

Minutes

Exhibit D
Page 485

1

**PROOF OF SERVICE**
(C.C.P. 1013A, 20015.5)

2

3   **STATE OF CALIFORNIA**
    I am employed in the County of Los Angeles, State of California. I am over the age of
4   eighteen years and not a party to the within action; my business address is 11999 San Vicente
    Boulevard, Suite 345 Los Angeles, CA 90049.

5

    On **April 25, 2018** I served the foregoing documents described as **NOTICE OF RULING RE**
6   **CASE MANAGEMENT ORDER AND MINUTES** on the interested parties in this action.

7   ☒   by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the
    attached mailing list.

8

9   ☒   **BY MAIL**

10      ☒   As follows:  I am "readily familiar" with the firm's practice of collection and processing
        correspondence for mailing.  Under that practice it would be deposited with U.S. postal service
11      on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary
        course of business.  I am aware that on motion of the party served, service is presumed invalid
12      if postal cancellation date or postage meter date is more than one day after date of deposit for
        mailing in affidavit.

13

    Executed on **April 25, 2018** at Los Angeles, California.
14

15      ☒   **(State)** I declare under penalty of perjury under the laws of the State of California that the
    above is true and correct.

16

17   Lexi Brenza
     Name                                              Signature

18

19                                  SERVICE LIST
20   **HEATHER POOLE, ET AL v. TWIN HILL ACQUISTIION COMPANY, INC. ET AL**
                             CASE NO. RG17876798

21

22   Brian S, Kabateck, Esq.                    Robert J. Herrington, Esq.
     **Kabateck Brown Kellner, LLP**            **Greenberg Trauring, LLP**
23   Engine Company No. 28 Building             1840 Century Park East
     644 South Figueroa Street                  Suite 1900
24   Los Angeles, CA 90017                      Los Angeles, CA 90067-2121
     Tel: (213) 217-5000                        Tel: (310) 586-7700
25   Fax: (213) 217-5010                        Fax: (310) 586-7800
     Email: bsk@kbklawyers.com                  Email: herringtonr@gtlaw.com

26   *Co-Counsel for Plaintiffs*                *Counsel for Defendants*

27

28

                                      1
                              PROOF OF SERVICE

BALABAN & SPIELBERGER LLP
11999 SAN VICENTE BOULEVARD, SUITE 345
LOS ANGELES, CALIFORNIA 90049

1  Robert J. Herrington (SBN CA 234417)
2  GREENBERG TRAURIG, LLP
   1840 Century Park East, Suite 1900
3  Los Angeles, California 90067-2121
   Telephone: 310.586.7700
4  Facsimile: 310.586.7800
   herringtonr@gtlaw.com
5
6  Leanna C. Costantini (SBN CA 294028)
   GREENBERG TRAURIG, LLP
7  3161 Michelson Drive, Suite 1000
   Irvine, California 92612
8  Telephone: 949.732.6500
   Facsimile: 949.732.6501
9  costantinil@gtlaw.com
10
   Attorneys for Defendant
11 Twin Hill Acquisition Company, Inc.
12
13                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
14                         **COUNTY OF ALAMEDA**
15
16 HEATHER POOLE, et al.,                    CASE NO. RG17876798
17         Plaintiffs,                       ASSIGNED FOR ALL PURPOSES TO:
                                             JUDGE SELIGMAN
18 v.                                        DEPARTMENT 23
19 TWIN HILL ACQUISITION COMPANY,            **NOTICE OF CASE MANAGEMENT**
   INC.; a California corporation, TAILORED  **CONFERENCE**
20 BRANDS, INC., a corporation with principal
   corporate and executive offices in California;
21 DOES 1 THROUGH 100,                       Date:  June 12, 2018
                                             Time:  3:00 p.m.
22         Defendants.                       Dept:  23
23
24                                           ACTION FILED:    September 27, 2017
25
26
27
28

**Exhibit D**
**Page 487**

1    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE THAT**, the Case Management Conference originally schedule for

3    May 15, 2018 at 3:00 p.m. has been reset to June 12, 2018 at 3:00 p.m.

4

5    DATED:  May 9, 2018                          GREENBERG TRAURIG, LLP

6

7                                    By _____
                                        Robert J. Herrington
8                                        Leanna C. Costantini
                                        Attorneys for Defendant
9                                        Twin Hill Acquisition Company, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit D**
**Page 488**

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA**

3

**COUNTY OF ORANGE**

4

     I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **1840 Century Park East, Suite 1900, Los Angeles, California.**

5

6

     On May 9, 2018, I served the **NOTICE OF CASE MANAGEMENT CONFERENCE**, on the interested parties, addressed as follows:

7

8

Daniel K. Balaban, Esq.                      Co-Counsel for Plaintiffs
Andrew J. Spielberger, Esq.

9

Vanessa L. Loftus-Brewer, Esq.
Kahren Harutyunyan, Esq.

10

BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345

11

Los Angeles, CA 90049
Telephone No.: 424.832.7677

12

Facsimile No.: 424.832.7702

13

14

Brian S. Kabateck, Esq.                      Co-Counsel for Plaintiffs
Anastasia K. Mazzella, Esq.

15

KABATECK BROWN KELLNER LLP
Engine Company No. 28 Building

16

644 South Figueroa Street
Los Angeles, CA 90017

17

Telephone No.: 213.217.5000
Facsimile No.: 213.217.5010

18

19

20

☒   **[BY MAIL]** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth below. I am familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business.

21

22

23

☒   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24

25

Executed on May 9, 2018 at Los Angeles, California.

26

27

Cheryl D. Beatty

28